UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>(1) SHELLEY M. RICHMOND JOSEPH and<br>(2) WESLEY MACGREGOR,<br><br>Defendants | Criminal No. 19CR10141<br><br>Violations:<br><br>Count One: Conspiracy to Obstruct Justice<br>(18 U.S.C. § 1512(k))<br><br>Count Two: Obstruction of Justice; Aiding and Abetting<br>(18 U.S.C. § 1512(c)(2); 18 U.S.C. § 2)<br><br>Count Three: Obstruction of a Federal Proceeding; Aiding and Abetting<br>(18 U.S.C. § 1505; 18 U.S.C. § 2)<br><br>Count Four: Perjury<br>(18 U.S.C. § 1623) |

## INDICTMENT

At all times relevant to this Indictment:

### Introduction

1.  The United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE") was the federal governmental agency charged with enforcing federal immigration law in the United States. ICE's duties included conducting federal removal proceedings, which encompassed, among other things, identifying, apprehending, and initiating the removal process of aliens in the United States, who were subject to Immigration Court or other administratively issued final orders of removal.

1

2.      The Newton District Court ("NDC" or "Courthouse") was a District Court within Middlesex County, Massachusetts, that had two courtrooms, a clerk's office, a probation office, and a lockup facility, which was situated on the bottom level of the Courthouse. The NDC had one to two assigned District Court Judges presiding over court matters, which included certain criminal, civil, housing, juvenile, and other types of cases under Massachusetts state or local laws.

3.      Defendant Shelley M. Richmond JOSEPH was appointed as a Massachusetts District Court Judge on or about November 6, 2017, and was thereafter assigned to preside at various District Courts in Middlesex County, including NDC, in accordance with a monthly assignment schedule. Defendant JOSEPH had presided as the Judge at NDC on several occasions prior to April 2, 2018. Prior to her appointment, defendant JOSEPH was an experienced Newton-based criminal defense attorney, who was a partner in a small law practice, and who had previously lectured at law schools and professional legal education seminars on criminal and civil practice. As a District Court Judge, defendant JOSEPH had the authority to, among other things, arraign criminal defendants, set bail, detain or release defendants, and control other courtroom proceedings.

4.      Defendant Wesley MACGREGOR was a Massachusetts Trial Court Officer since 1993 and was assigned to the NDC since approximately 2016. As an NDC Court Officer, defendant MACGREGOR was authorized to take custody of defendants within the NDC, and had security card access to the entry and exit doors to the lower level NDC lockup facility, including the rear, sally-port exit to the lockup.

5.      The defense attorney (the "Defense Attorney") was a criminal defense lawyer who regularly represented criminal defendants at the NDC. The Defense Attorney was familiar with

defendant JOSEPH as a judge and defense lawyer, and with defendant MACGREGOR from frequent appearances at the NDC.

6. The alien subject ("A.S.") was arrested on March 30, 2018 by Newton Police and charged under Massachusetts General Law with being a fugitive from justice from Pennsylvania (the "M.G.L. Fugitive Charge" or "MGL Count 1") and narcotics possession (the "M.G.L. Drug Charges" or "MGL Counts 2 and 3," together with MGL Count 1, the "M.G.L. Charges"). On April 2, 2018, A.S. was arraigned on the M.G.L. Charges in the NDC before defendant JOSEPH. A.S. retained the Defense Attorney as A.S.'s lawyer for the NDC proceedings.

Federal ICE Proceedings

7. Fingerprints of A.S. taken by Newton Police on March 30, 2018 and submitted to a national law enforcement database revealed that A.S. had been previously deported from the United States by federal immigration officials in 2003 and again in 2007. Federal immigration records revealed that, upon A.S.'s last removal, a federal immigration official had issued an order that prohibited A.S. from entering the United States for a period of twenty years, that is, until 2027.

8. After learning of A.S.'s arrest by Newton Police, on or about March 30, 2018, an ICE Immigration Officer issued a federal Immigration Detainer – Notice of Action (the "Detainer"), and a Warrant of Removal (the "Warrant") for A.S. to Newton Police. The Detainer requested that Newton Police: (i) notify ICE prior to any release of A.S.; (ii) relay the Detainer to any other law enforcement agency to whom Newton Police transferred A.S.; and (iii) maintain custody of A.S. for up to 48 hours for ICE to take custody. The Warrant stated that A.S. was subject to removal from the United States based upon a final order by a designated official, and that any

Immigration Officer with the United States Department of Homeland Security was commanded to take custody of A.S. for removal from the United States.

9.   On April 2, 2018, Newton Police transferred custody of A.S. to the NDC and forwarded the Detainer and the Warrant to the NDC Clerk's Office, with copies of the same provided to the Assistant District Attorney assigned to NDC from the Middlesex District Attorney's Office (the "ADA"), and the NDC Probation Office ("Probation"), among other Courthouse personnel, and the Defense Attorney.

10.   As part of ICE removal proceedings, on the morning of April 2, 2018, ICE dispatched an ICE Officer (the "ICE Officer") in plainclothes to execute the Warrant and take custody of A.S. upon A.S.'s release from the NDC. At the NDC, the ICE Officer, in accordance with DHS Policy (see below), notified NDC personnel (including, among others, the Court Officers, the Clerk of Court (the "Clerk"), and the ADA), and the Defense Attorney of the ICE Officer's identity and purpose at the Courthouse on that date.

<u>Newton District Court – Custom, Practice, and Rules</u>

11.   The NDC maintained a regular court calendar during which criminal and civil case matters were heard before the NDC District Court Judge in the first-floor courtroom (the "Courtroom"). Defendants in NDC custody were held in the lockup area in the lower level of the Courthouse, and were brought upstairs by an NDC Court Officer to an enclosed glass dock in the Courtroom for their court appearances. If a defendant was released from custody, the normal custom and practice in NDC was for the Court Officer to release the defendant from the glass dock on the first floor and out into the Courtroom, which had one public entry/exit that led to the NDC lobby.

12. On or about November 10, 2017, the Executive Office of the Massachusetts Trial Court issued guidance to all Massachusetts state judges, clerks, and other courthouse personnel titled, "Policy and Procedures Regarding Interactions with the Department of Homeland Security," ("DHS Policy"). The DHS Policy instructed, in pertinent part, that (1) "Trial Court employees should be mindful that courthouses are public spaces that are open to all persons and that all persons entering a courthouse should be treated with respect and dignity, including individuals subject to civil immigration detainers and DHS employees;" (2) "DHS officials may enter a courthouse to perform their official duties;" and (3) that, "pursuant to an immigration detainer or warrant, court officers shall permit the DHS official(s) to enter the holding cell area in order to take custody of the individual once Trial Court security personnel have finished processing that individual out of the court security personnel's custody."

13. Massachusetts Rules of Court, which prescribed rules for all state district courts, including NDC, provided, in pertinent part, that "[A]ll courtroom proceedings, including arraignments in criminal ... cases, shall be recorded electronically ...." The NDC had an electronic recording device in the Courtroom, which the Clerk operated to record all NDC proceedings.

### The April 2, 2018 NDC Proceedings

14. On April 2, 2018, defendant JOSEPH was assigned as the District Court Judge at NDC, hearing and ruling on several criminal proceedings in the Courtroom on that date. The proceedings were electronically recorded by the Clerk, who was seated directly in front of defendant JOSEPH's bench at the front of the Courtroom. The ADA, probation officers, court officers, including defendant MACGREGOR, defense attorneys, and other members of the public were also in attendance.

15. At approximately 9:30 a.m., the ICE Officer arrived in plainclothes at NDC. The ICE Officer announced his identity and purpose to various Courthouse personnel, including the Clerk, who informed defendant JOSEPH. The ICE Officer then remained in the public audience area of the Courtroom during the morning session.

16. At approximately 10:34 a.m., defendant JOSEPH assigned a court-appointed lawyer ("Bar Advocate") to A.S. and arraigned A.S. on the M.G.L. Charges, but agreed to re-call the case later that day after ordering the ADA to provide more information to the Court and the Bar Advocate as to the M.G.L. Fugitive Charge.

17. At approximately 12:04 p.m., defendant JOSEPH re-called A.S.'s case and asked the ADA for the Commonwealth's position as to bail or detention of A.S. on the M.G.L. Charges. The ADA told defendant JOSEPH that the ADA would not seek to detain A.S. on the M.G.L. Drug Charges, but would only make a bail request for the M.G.L. Fugitive Charge. A.S.'s case was then set for a further call later that afternoon to address the M.G.L. Fugitive Charge.

18. Following the 12:04 p.m. proceeding, associates of A.S. retained the Defense Attorney to represent A.S. on the M.G.L. Charges. The Defense Attorney received copies of the Detainer and Warrant, and was also permitted to review other law enforcement database records that were obtained by Probation in connection with A.S.'s case.

19. Also following the 12:04 p.m. proceeding, at defendant JOSEPH's direction, the Clerk instructed the ICE Officer to leave the Courtroom and wait outside the Courtroom, contrary to the DHS Policy. The Clerk informed the ICE Officer that, in the event of A.S.'s release, A.S. would be released out of the Courtroom into the NDC lobby. The ICE Officer complied and waited in the NDC lobby on the first floor.

20. At approximately 2:48 p.m., A.S.'s case was re-called and the Defense Attorney appeared on behalf of A.S. before defendant JOSEPH. The following proceedings were captured on the Courtroom's court recorder:

| | |
|---|---|
| Clerk: | Judge, the next case will be Commonwealth versus [A.S.]. [Defense Attorney] has filed an appearance on behalf of [A.S.] |
| Defendant JOSEPH: | Good afternoon. |
| Defense Attorney: | Good afternoon, Your Honor. [Defense Attorney] on behalf of [A.S.] May we approach briefly? |
| Defendant JOSEPH: | Yes, please. |
| Defense Attorney: | Thank you. |
| Clerk: | Do you want to wait for your client? Or do it – |
| Defense Attorney: | No. Sidebar. |
| Defendant JOSEPH: | We're just going to go sideb- [UI[1]] ... is dismissed. So it's my understanding that ICE is here. |
| Defense Attorney: | So there's the fugitive – |
| Defendant JOSEPH: | But there's no warrant – |
| ADA: | Yes. |
| Defense Attorney: | There isn't [UI] that we can tie this to him. |
| ADA: | Eh-, I, I don't think it's him.[2] |
| Defendant JOSEPH: | Okay. |
| Defense Attorney: | But ICE is convinced that this guy. I went over to ICE, they say they have a biometric match. I went through and did the research. There's 13 FBI numbers connected to this social. So something's bad with the [UI]. My client denies that it's him. ICE is going to pick him up if he walks out the front |

---

[1] Unintelligible on recording.
[2] Referring to A.S. not being the same person as the subject sought on the Pennsylvania warrant.

| | |
|---|---|
| | door. But I think the best thing for us to do is to clear the fugitive issue, release him on a personal, and hope that he can avoid ICE. ... That's the best I can do. |
| ADA: | I don't think arguing ICE is really my ... |
| Defense Attorney: | Right. |
| ADA: | - my, my ... |
| Defendant JOSEPH: | The other alternative is if you need more time to figure this out - hold until tomorrow ... |
| Defense Attorney: | Yeah, but he - |
| Defendant JOSEPH: | Then it's a different ... |
| ADA: | There is a detainer attached to my paperwork. But, but, I, I feel like that's separate and apart from what my role is. |
| Defense Attorney: | There is an ICE detainer. So if he's bailed out from Billerica when he goes back there, ICE will pick him up - |
| Defendant JOSEPH: | **ICE is gonna get him?** |
| Defense Attorney: | Yeah. |
| Defendant JOSEPH: | **What if we detain him –** |
| Defense Attorney: | Are we on the record? |
| Defendant JOSEPH: | **[Clerk], can we go off the record for a moment?** |
| Clerk: | What's that? |
| Defendant JOSEPH: | Are we off the record? |
| Clerk: | No, we're on the record. |
| Defense Attorney: | Can we go off the record for a minute? |

21.  In violation of Massachusetts Rules of Court, and at the direction of defendant JOSEPH, the Courtroom recorder was turned off for the next approximately 52 seconds.

22.  At approximately 2:51 p.m., the recorder was turned back on and the following excerpted proceedings were captured on the Courtroom recorder:

| | |
|---|---|
| Clerk: | Judge, we're back on the record on [A.S.] [Defense Attorney] on behalf of [A.S.] |
| Defendant JOSEPH: | Good afternoon, [Defense Attorney]. |
| Defense Attorney: | Good afternoon. After some extensive research into the various FBI numbers [UI] social security numbers, as well as obtaining a photo from Pennsylvania, we don't believe that this gentleman is the same gentleman as on the fugitive-from-justice warrant. |
| ADA: | Your Honor, with the information that I have I don't think that there is enough tying him to the Pennsylvania warrant. The great deal of other out-of-state records – I do believe that some of them, uh, belong to this individual. But that is not what's at issue here. |
| Defendant JOSEPH: | Okay. |
| ADA: | So at this point I would dismiss, um, the – |
| Defendant JOSEPH: | The fugitive? |
| ADA: | - [MGL] Count 1, - |
| Defendant JOSEPH: | Okay. |
| ADA: | - um, and there's not a bail request for the [MGL] Counts 2 and 3. But I would ask that, for a pretrial conference date on those. |
| Defendant JOSEPH: | Okay. |
| Defense Attorney: | Absolutely. |
| Defendant JOSEPH: | That's fine. |
| Defense Attorney: | **I would ask that he, uh – I believe he has some property downstairs. I'd like to speak with him downstairs with the interpreter if I may."** |
| Defendant JOSEPH: | **That's fine. Of course.** |
| Defense Attorney: | Thank you. |

***

| | |
|---|---|
| Defense Attorney: | All set, Mr. Clerk? |
| Defendant JOSEPH: | Wait just a second. |
| Clerk: | **There was a representative from, uh, ICE here in the Court ... [UI] to, to visit the lockup.** |
| Defendant JOSEPH: | **That's fine. I'm not gonna allow them to come in here. But he's been released on this.** |

\*\*\*

| | |
|---|---|
| Defendant MACGREGOR: | He's released, Mr. Clerk? |
| Clerk: | What's that? |
| Defendant MACGREGOR: | He's released? |
| Clerk: | He is. |
| Defense Attorney: | Yep. |
| Defendant JOSEPH: | **He is. Um, [Defense Attorney] asked if the interpreter can accompany him downstairs, um, to further interview him —** |
| Defense Attorney: | Yes, please -- |
| Defendant JOSEPH: | **— and I've allowed that to happen.** [2:54 p.m.] |

\*\*\*

23.     Immediately following the proceeding, defendant MACGREGOR escorted A.S. from the Courtroom downstairs to the lockup, accompanied by the Defense Attorney and an interpreter. Once inside the lockup, defendant MACGREGOR used his security access card to open the rear sally-port exit and released A.S. out the back door at approximately 3:01 p.m.

24. The ICE Officer, who had been instructed by the Clerk to wait for A.S. in the lobby directly outside the Courtroom, as that was where A.S. would have been released in accordance with customary NDC practice, was unaware of A.S.'s release out the rear sally-port exit, and was unable to take custody of A.S. pursuant to the Warrant.

### The Conspiracy

### Object of the Conspiracy

25. It was the object of the conspiracy to corruptly attempt to obstruct, influence, and impede an official proceeding, to wit, an ICE federal removal proceeding, by preventing the ICE Officer from taking custody of A.S. at the NDC Courthouse on or about April 2, 2018.

### Manner and Means of the Conspiracy

26. It was a part of the conspiracy that defendant MACGREGOR and the Defense Attorney agreed that defendant MACGREGOR would use his security access card to release A.S. out the rear sally-port exit in order for A.S. to evade arrest by the ICE Officer at the NDC Courthouse.

27. It was a part of the conspiracy that defendant JOSEPH and the Defense Attorney agreed to create a pretext for A.S. to be brought back downstairs to the lockup so that A.S. could be released out the rear sally-port exit in order to evade arrest by the ICE Officer at the NDC Courthouse.

### Acts in Furtherance of the Conspiracy

28. In furtherance of the conspiracy and to achieve the object thereof, the defendants and their co-conspirators committed and caused to be committed one or more of the following acts in furtherance of the conspiracy:

29. Defendant JOSEPH ordered the Clerk to turn off the Courtroom recording device to conceal defendant JOSEPH's conversation with the Defense Attorney.

30. With the recorder off, defendant JOSEPH and the Defense Attorney discussed devising a way to have A.S. avoid being arrested by the ICE Officer.

31. Defendant JOSEPH ordered that the ICE Officer be prevented from entering the downstairs Courthouse lockup area.

32. After ordering A.S.'s release, defendant JOSEPH ordered that A.S. be returned downstairs to the lockup for the Defense Attorney to "further interview" A.S., which, in reality, was a pretext to allow A.S. to access the rear sally-port exit in order to avoid the ICE Officer.

33. Once A.S. was returned downstairs to the lockup, defendant MACGREGOR used his security access card to open the sally-port exit and release A.S. from the back door of the Courthouse, contrary to NDC custom and practice.

### Defendant JOSEPH's False and Misleading Statements to other District Court Judges

34. Defendant JOSEPH made false and misleading statements regarding the April 2, 2018 incident to other district court judges inquiring about the matter, including defendant JOSEPH's false statements to a senior district court judge during a meeting in mid-April 2018. During this meeting, when asked why the NDC Courtroom recorder was shut off during the April 2, 2018 proceeding, defendant JOSEPH falsely attributed unfamiliarity with the Courtroom recording equipment as the reason the recorder was turned off.

## Perjury

35.     Beginning in or about May 2018 to in or about April 2019, a federal Grand Jury sitting in Boston, Massachusetts, conducted an investigation into possible violations of federal criminal laws, including Title 18, United States Code, Sections 1512 (c)(2) (obstruction of justice) and 1505 (obstruction of a federal proceeding), in the District of Massachusetts. The circumstances surrounding defendant MACGREGOR's April 2, 2018 release of A.S. from the NDC sally-port exit were material to the Grand Jury's investigation.

36.     On or about July 12, 2018, defendant MACGREGOR falsely testified before the federal Grand Jury, in substance and in part, that, prior to releasing A.S. from the sally-port exit, he was unaware that ICE agents were in the Courthouse, and he was unaware there was a detainer for [A.S]. Defendant MACGREGOR's testimony before the Grand Jury included the following false material declarations:

(A)   Q: [Y]ou said you didn't know there was an immigration detainer.

  A: I didn't see one.

  Q: Did you know there was an immigration detainer?

  A: No. I couldn't if I didn't see it.

  Q: Well, someone --

  A: The clerk's – clerk's office didn't have it, it wasn't in the clerk's papers, wasn't in the arrest record, and I have not seen an ICE detainer on Mr. [ ] -- whatever his name is, [A.S.]?

(B)   Q: So, am I right that the first time you learned that there had been ICE agents in the courthouse was after [A.S.] was gone when [Court Officer A] said to you, I heard

13

        the judge tell two ICE agents to leave the courtroom?

A:   The judge asked them to leave, yes.

***

Q:   The courtroom. And [Court Officer A] told you this after [A.S.] was gone?

A:   Correct.

***

(C)   Q:   And you did not hear from anyone else that day other than [Court Officer A] that – that there had been an ICE agent in the courthouse for [A.S.]?

A:   Correct.

***

## COUNT ONE
Conspiracy to Obstruct Justice
(18 U.S.C. §§ 1512(k))

The Grand Jury charges:

37. The Grand Jury re-alleges and incorporates by reference paragraphs 1 to 34 of this Indictment.

38. On or about April 2, 2018, in Newton, in the District of Massachusetts, the defendants

>  (1) SHELLEY M. RICHMOND JOSEPH and
>  (2) WESLEY MACGREGOR,

conspired with the Defense Attorney to corruptly obstruct, influence, and impede an official proceeding, namely, a federal immigration removal proceeding before the United States Department of Homeland Security.

All in violation of Title 18, United States Code, Sections 1512(k) and 1512(c)(2).

## COUNT TWO
### Obstruction of Justice; Aiding and Abetting
### (18 U.S.C. §§ 1512(c)(2) and 2)

The Grand Jury further charges:

40. On or about April 2, 2018, in Newton, in the District of Massachusetts, the defendants

(1) SHELLEY M. RICHMOND JOSEPH and
(2) WESLEY MACGREGOR,

did corruptly attempt to obstruct, influence, and impede an official proceeding, namely, a federal immigration removal proceeding before the United States Department of Homeland Security.

All in violation of Title 18, United States Code, Sections 1512(c)(2) and 2.

## COUNT THREE
Obstruction of a Federal Proceeding; Aiding and Abetting
(18 U.S.C. §§ 1505 and 2)

The Grand Jury further alleges:

41. The Grand Jury re-alleges and incorporates by reference paragraphs 1 to 34 of this Indictment.

42. On or about April 2, 2018, in Newton, in the District of Massachusetts, the defendants

(1) SHELLEY M. RICHMOND JOSEPH and
(2) WESLEY MACGREGOR,

did corruptly influence, obstruct, and impede, and endeavor to influence, obstruct and impede, the due and proper administration of the law under which a pending proceeding was being had before a department and agency of the United States, namely, a federal immigration removal proceeding before the United States Department of Homeland Security.

All in violation of Title 18, United States Code, Sections 1505 and 2.

## COUNT FOUR
## Perjury
## (18 U.S.C. § 1623)

The Grand Jury further charges:

43. The Grand Jury re-alleges and incorporates by reference paragraphs 1 to 33 and 35 to 36 of this Indictment.

44. On or about July 12, 2018, in Boston, in the District of Massachusetts, the defendant

(2) WESLEY MACGREGOR,

while under oath and testifying in a proceeding before a grand jury of the United States knowingly made false material declarations in response to certain questions as set forth in paragraph 36 of this Indictment.

All in violation of Title 18, United States Code, Section 1623.

A TRUE BILL

_Mary Blundell_
FOREPERSON


_Dustin Chao_
DUSTIN CHAO
CHRISTINE WICHERS
ASSISTANT UNITED STATES ATTORNEYS
DISTRICT OF MASSACHUSETTS

District of Massachusetts: APRIL 25, 2019
Returned into the District Court by the Grand Jurors and filed.

_[signature]_
DEPUTY CLERK

11:25 am
4/25/19