UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 1:19-cr-10141-LTS |
| | ) | |
| | ) | |
| SHELLEY M. RICHMOND JOSEPH | ) | |
| and | ) | |
| WESLEY MACGREGOR | ) | |

## JOINT MOTION TO COMPEL PRODUCTION OF DISCOVERY

### I.   INTRODUCTION

The defendants, Shelly M. Richmond Joseph and Wesley MacGregor, are alleged to have facilitated the release of a so-called alien designated by the government as A.S. The Government alleges that a Defense Attorney and a court officer (the defendant MacGregor) conspired to avoid ICE prior to A.S. being brought into the Newton District Court courtroom, for the third time on the afternoon of April 2, 2017, and that the defendant Joseph joined the conspiracy at sidebar, in the presence of, and in conversation with, the Defense Attorney and Assistant District Attorney, The judge allegedly permitted the Defense Attorney to return downstairs to the lockup where the defendant MacGregor opened a courthouse back door once A.S. was released from custody.

### II.   EXCULPATORY EVIDENCE

By letter request on June 6, 2019, pursuant to Local Rule 116.3(a), the defendant Joseph sought certain exculpatory discovery regarding two key government witnesses: the so-called "alien" and the Defense Attorney.  The exculpatory discovery requested pursuant to L.R.

1

116.2(b)(1)(C), sought only four items – two regarding A.S. and two regarding the Defense Attorney:[1]

A.S.

- "Any oral or written promises made by the United States Attorney's Office or any other government agency to "A.S.," as he is denoted in the Indictment, regarding: (1) his immigration status – past, present, or future; (2) his present detention status – that is, why he is not in custody at present if that is in fact his status; (3) any intention not to prosecute him for any federal crimes or offenses – past, present, or future; (3) any intention to facilitate his return to the Newton District Court to face the pending state charges there."

- "Any oral or written promises made by the United States Attorney's Office or any other government agency to "A.S.," as he is denoted in the Indictment, regarding prosecuting or not prosecuting his family or friends who may have participating in formulating the so-called conspiracy with the Defense Attorney, as he is denoted in Paragraph 26 of the Indictment."

Defense Attorney

- Any oral or written promises made by the United States Attorney's Office or any other government agency to the Defense Attorney, as he is denoted in Paragraph 26 of the Indictment, as to whether there is any intention to prosecute the Defense Attorney for his role as a Co-Conspirator in establishing an initial agreement with the court officer (apparently preceding any contact with the defendant Joseph) that the court officer would use his security access card to release A.S. out the rear sally-port exit in order for A.S. to evade detainment by the ICE Office at the NDC Courthouse – and facilitating the agreement's completion.

- Any oral or written promises by the United States Attorney's Office or any other government agency to the Defense Attorney as to whether or not the United States Attorney's Office or any government agency will report the Defense Attorney to the Massachusetts Board of Bar Overseers for his role as a Co-Conspirator in establishing an initial agreement with the court officer (apparently preceding any contact with the defendant Joseph) for the court officer to use his security access card to release A.S. out the rear sally-port exit in order for A.S. to evade detainment by the ICE Office at the NDC Courthouse.

---

[1] The defense letter requests are set forth as Exhibit A (Joseph) and Exhibit B (MacGregor). The government responses are attached as Exhibit C (Joseph) and Exhibit D (MacGregor). The request for exculpatory evidence may be found at Exhibit A, page 2 (for one) in paragraphs enumerated as 4a-d.

By letter request on June 6, 2019, pursuant to Local Rule 116.3(a), the defendant MacGregor sought certain exculpatory discovery regarding the same two government witnesses.  Requests a-c by defendant MacGregor seek much of the same substance as defendant Joseph's four previously outlined requests. The exculpatory discovery requested pursuant to L.R. 116.2(b)(1)(C), sought the following on behalf of defendant MacGregor:

a. Any oral or written promises made by the United States Attorney's Office or any other government agency to "A.S.," as he is denoted in the Indictment, regarding: (1) any intention not to prosecute him for any federal crimes or offenses, past or present; (2) any applications filed by any government agency for an S visa or any other visa for the benefit of A.S.; (3)  any housing, financial, legal  or other assistance provided to A.S., (4) any applications filed on behalf of A.S. to secure any benefits or assistance for him; and (5) any and all communication with any state or federal court by the government or any government agents on behalf of A.S. or in furtherance of this case.

b. Any oral or written promises made by the United States Attorney's Office or any other government agency to the Defense Attorney, as he is denoted in Paragraph 26 of the Indictment, as to any and all communications and or discussions relative to the government's intent to prosecute or not to prosecute the Defense Attorney for any federal crime including, but not limited to a complete description of any hypothetical scenarios of potential prosecutions used by the government or any agent of the government in communicating with the Defense Attorney.

c. Any oral or written promises made by the United States Attorney's Office or any other government agency to the Defense Attorney regarding any ethical violation the Defense Attorney may be exposed to which could jeopardize the Defense Attorney's license to practice law.

d. Any report from the Federal Marshals as to any alleged statement made by MacGregor during transport to or from his initial appearance.

e. Any and all training, personnel, policy and procedures manuals for Massachusetts Court Officers and all Massachusetts Trial Court employees from 1993 to the present.

f. The mobile data terminal data, turret tapes, CAD sheets, booking photos and drug certifications from the 3/30/18 arrest relating to A.S. as identified in the Indictment.

      g.      Any and all Department of Homeland Security or ICE detainee training materials, training classes or instructions offered by the Massachusetts Trial Court to any employees, including, but not limited to Court Officers.

      h.      All photographs referenced in the NCIC/III discovery from bate stamped pages 654-676.

      i.      The complete FBI file for A.S.

      j.      Copies of the logs mentioned on bate stamped page 588 in the discovery

      k.      Any information the government has learned from any source as to the use by any court officer of any lock up door to release a defendant, in the Newton District Court or any other district or Superior Court, the number of times such a release took place and the names and contact information for any such court officer or witness.

      l.      Any and all communications between the United States Attorney's Office, the Department of Homeland Security and any member of the Executive branch of government about this prosecution.

      m.      Any and all statements contradicting MacGregor's alleged statements and/or Grand Jury testimony known to the government and any of its agents.

The government responded to both letters by acknowledging that L.R. 116.2(b)(1)(C) requires that the government produce within the automatic discovery period: "a statement whether any promise, reward, or inducement has been given to any witness whom the government anticipates calling in its case-in-chief … and a copy of any promise, reward, or inducement reduced to writing. Exhibit C, page 2; Exhibit D, page 2. The government went on to state that "As part of its May 23, 2019 automatic discovery production to defendant[s], the government has supplied all L.R. 116.2(b)(1)(C) material to the defendant[s]."

As to A.S., the government has produced no "statement" of promises in any discovery materials provided to date.

As to the Defense Attorney, the government produced no "statement" of promises in its cover letter of May 23, 2019. Within the materials provided under cover of the May 23 letter, the government produced a proffer letter for the Defense Attorney and what would be described as an immunity letter for the Defense Attorney. The immunity letter permits certain inferences as to the likelihood of future prosecution, but the defense is entitled to an explicit statement – "yes or no" – concerning the precise scope and nature of any promises, rewards or inducements in that regard. As to the second Defense Attorney request, the defense in this matter is entitled to a simple statement as to whether the Defense Attorney has been made any promise regarding the Massachusetts Board of Bar Overseers – is the prosecution going to make a report of his criminal conduct – or no?

### III. JENCKS – GENERAL DISCLOSURE

Comprehensive discovery affords counsel a full opportunity, rather than a barely adequate or even inadequate and ineffective opportunity to prepare a case for trial. *See Wardius v. Oregon*, 412 U.S. 470, 473-74 (1973) ("the ends of justice will be best be served by a system of liberal discovery which gives both parties the maximum possible amount of information with which to prepare their cases and thereby reduce surprise at trial.") The timing of the disclosure is as important as the fullness of the disclosure itself. There is a reason that L.R. 116.2(b)(1)(C) requires that certain *Brady* material be disclosed within the automatic discovery period. There is also a reason that both the federal rules and local rules require early disclosure of statements potentially suppressible. Effectiveness on both sides of this trial process require time. A mere 21 days (if that) before trial makes the time advantage entirely one-sided.

Although grand jury privacy considerations and potential threats to government witnesses must be balanced against these due process concerns both as to exculpatory evidence and

meaningful preparation, in this case, there certainly can be no reasonable argument that there may a potential threat to government witnesses. Moreover, these grand jury privacy considerations are glossed over by the government in the most serious cases of physical violence when the government believes early disclosure may induce an early plea.

Early Jencks disclosure serves the interest of the justice system – which is justice for all – a goal in which the government necessarily shares. Therefore, the defendants request disclosure of all Jencks materials forthwith as a matter of constitutional due process. *See United States v. Snell*, 899 F. Supp. 17 (D. Mass. 1995).

### IV. <u>JENCKS – PARTICULARIZED TO SEVERANCE</u>

The defense has a particularized need for forthwith disclosure of a specific, Jencks material subset – the grand jury minutes of the two essential government witnesses: (1) the Defense Attorney and (2) the Assistant District Attorney.

The undersigned defense counsel need the materials in order to fully and effectively evaluate and present any Motion to Sever. Moreover, it is assumed that the Court would also necessarily expect any such motion to be fully, effectively and properly presented.

Grounds for such a motion to sever may include, but are not limited to: (1) spillover prejudice; (2) strength of evidence against a particular defendant; (3) co-defendant's counsel becoming a second prosecutor. *See generally, Zafiro v. United States,* 506 U.S. 534, 113 S. Ct. 933 (1993).

Here, the Defense Attorney grand jury minutes may or may not contain statements allegedly made by the co-defendant MacGregor inculpating the defendant Joseph. Similarly, the grand jury minutes of the Assistant District Attorney may or may not contain statements inculpating the defendant MacGregor. Although both witnesses (the Defense Attorney and the

Assistant District Attorney) may be expected to be available for cross-examination, knowledge of the content of these two sets of grand jury minutes will particularly affect the defendants' ability to be certain that they have fully and effectively presented their arguments for a severance and affect the Court's confidence similarly. Moreover, the earlier any such motion is presented to the Court, or declared not to be presented, the more effectively the administration of the case can proceed.

V. **NON-JENCKS MATERIALS**

Defendant MacGregor requests information (outlined in d-m) that does not fall within Jencks materials on the basis that these materials are exculpatory. *See generally, Giglio v. United States*, 405 U.S. 150, 154 (1972); *Kyles v. Whitley*, 514 U.S. 419, 432-33 (1995).

    **d.    Any report from the Federal Marshals as to any alleged statement made by MacGregor during transport to or from his initial appearance.**

The government has disclosed a statement allegedly made by MacGregor after his arrest, which would have been in the U.S. Marshals' presence. The U.S. Marshal's version of what transpired, including any contradictions in the statement already provided, is exculpatory information. *See United States v. Bagley*, 475 U.S. 667, 676 (1985) (statements used for impeachment purposes considered exculpatory).

    **e.    Any and all training, personnel, policy and procedures manuals for Massachusetts Court Officers and all Massachusetts Trial Court employees from 1993 to the present.**

The Government alleges that MacGregor released A.S. from a back door of the courthouse in contravention of court policies and procedures. While the Government has provided the Trial Court Personnel Manual, the Government has not provided the training manuals, or policies and procedures for the Massachusetts Court Officers, which defendant

MacGregor would have received training on, and would rebut any allegation that Macgregor's actions were in contravention of Court Officer training, policies or procedures.

Whether MacGregor's actions were actually in contravention of court policies and procedures bears directly on whether MacGregor committed perjury, and his *mens rea* with respect to the obstruction of justice charge. Any information undermining the Government's claims that MacGregor did not comply with policies and procedures in order to assist A.S. in evading an ICE agent is exculpatory.

> **f.     The mobile data terminal data, turret tapes, CAD sheets, booking photos and drug certifications from the 3/30/18 arrest relating to A.S. as identified in the Indictment.**

The Government has provided the arrest report as to the incident leading to the arrest of A.S. The requested materials would serve to determine whether the arrest report is accurate, and whether there was any reason to believe A.S. was not the person ICE was seeking the correct person at the Newton District Courthouse on the day in question.

> **g.     Any and all Department of Homeland Security or ICE detainee training materials, training classes or instructions offered by the Massachusetts Trial Court to any employees, including, but not limited to Court Officers.**

This information is relevant as to MacGregor's state of mind as to whether he was acting in contravention of any established policies and procedures, or prior training, and whether Massachusetts court officers are trained in dealing with the transition from state custody to ICE custody.

> **h.     All photographs referenced in the NCIC/III discovery from bate stamped pages 654-676.**

According to the discovery previously provided, there was a question as to whether the person in custody at Newton District Court was the same person ICE was seeking pursuant to a

civil arrest warrant. The photographs contained in bates stamped pages 654-676 bear directly on whether ICE was seeking the correct person, and whether defendant Joseph, the Defense Attorney or defendant Macgregor were in any way obstructing justice, even if the parties took the actions alleged by the Government in this case.

    **i.**    **The complete FBI file for A.S.**

Whether A.S. has any prior federal arrests, or whether he was being monitored by the federal government is relevant to whether ICE was seeking the correct person at the Newton District Court. The information is also relevant for impeachment purposes, to demonstrate bias, such as the reasonableness and impact of any promises, rewards or inducements provided to A.S. For example, the more involved A.S. was in criminal activity, the more A.S. would be willing to cooperate in order to absolve himself from potential penalties, including incarceration and deportation.

    **j.**    **Copies of the logs mentioned on bate stamped page 588 in the discovery.**

This is a request for clarification as to what the contents of page 588 refer to.

    **k.**    **Any information the government has learned from any source as to the use by any court officer of any lock up door to release a defendant, in the Newton District Court or any other district or Superior Court, the number of times such a release took place and the names and contact information for any such court officer or witness.**

The Government alleges that MacGregor opened the back door of the courthouse in direct contravention of trial court policies and procedures, and that neither defendant MacGregor nor any other court officer had ever opened a back door for an individual released from custody. This contention serves the basis for the allegation that MacGregor specifically opened the door on this one occasion so that A.S. could avoid ICE detention, which is the underlying basis for the

obstruction of justice charge.  Furthermore, this allegation serves as the basis for the perjury charge against defendant MacGregor.

Any information possessed by the Government that other court officers had released individuals from custody out of a lock up door instead of the main courthouse doors directly undermines the facts and circumstances that serve the basis for all charges against MacGregor and are plainly exculpatory. *See generally*, *Brady*, 373 U.S. at 87; *Giglio*, 405 U.S. at 154.

> **l.    Any and all communications between the United States Attorney's Office, the Department of Homeland Security and any member of the Executive branch of government about this prosecution.**

MacGregor is seeking only the substance of any conversations that are exculpatory.

> **m.    Any and all statements contradicting MacGregor's alleged statements and/or Grand Jury testimony known to the government and any of its agents.**

The Government alleges that MacGregor provided false testimony before the Grand Jury, however, it is not clear from the discovery provided to date where the basis for the perjury charge stems from.  Any statements the Government used to contradict MacGregor, including any omissions within the statements, are exculpatory.

Furthermore, the Government alleges that MacGregor and the Defense Attorney conspired together and agreed – even prior to defendant Joseph's involvement in the case – that MacGregor would open a back door for A.S.  The statement of the Defense Attorney relating to this allegation falls within a Jencks disclosure, and any information contradicting this information would be exculpatory. *See* 18 U.S.C. § 3500.  *See also Giglio*, 405 U.S. at 154.

## VI.    GRAND JURY INSTRUCTIONS

By *letter* request the defendants sought any instructions given the grand jury concerning the elements of each offense charged.  The government declined.  The defendants request leave to file any *motion* for such instructions at the time of the filing of any Motions to Dismiss, rather

than now, because the law and argument supporting such Motion to Dismiss will also relate to, and support, any motion for jury instructions and be best presented in tandem.

        Respectfully submitted,
        SHELLEY M. RICHMOND JOSEPH

        /s/ Thomas M. Hoopes
        THOMAS M. HOOPES, ESQ.
        BBO No. 239340
        DOUGLAS S. BROOKS, ESQ.
        BBO No. 636697
        LibbyHoopes, P.C.
        399 Boylston Street
        Boston, MA 02116
        617.338.9300
        Email: thoopes@libbyhoopes.com


        WESLEY MACGREGOR

        /s/ Rosemary Curran Scapicchio
        Rosemary Curran Scapicchio
        BBO No. 558312
        107 Union Wharf
        Boston, MA 02109
        (617) 263-7400
        Scapicchio_Attorney@yahoo.com

DATE:    July 3, 2019

## CERTIFICATE OF COMPLIANCE WITH LR 116.3(F)

    I hereby certify that counsel have communicated about the subject matter of this motion in an effort to narrow differences prior to filing, as reflected, inter alia, in the correspondence reference herein.

        /s/ Thomas M. Hoopes

## **CERTIFICATE OF SERVICE**

      I hereby certify that these documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies/PDFs will be sent by regular mail/email on this date to those indicated as non-registered participants.

                                        /s/ Thomas M. Hoopes