UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Crim. No. 19-10141-LTS |
| SHELLEY M. RICHMOND JOSEPH, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' OPPOSITION TO DEFENDANT JOSEPH'S MOTION FOR AN ORDER REQUIRING THE PRODUCTION AND INSPECTION OF PROSECUTORS' AND AGENTS' NOTES**

Defendant Joseph seeks an order requiring the government to produce all prosecutors' and agents' notes from interviews of government witnesses. Doc. No. 33. The Court should deny the motion because the government has met its discovery obligations and the notes are not discoverable. To the extent that Joseph asks the Court to review the notes *in camera*, her request, made long before Jencks Act materials are due, is premature.

**ARGUMENT**

The government has produced all information that is exculpatory within the meaning of *Brady v. Maryland*, 373 U.S. 83 (1963), and/or Local Rule 116.2(a), including information that may also fall under the definition of Jencks Act material. *See* 18 U.S.C. § 3500.

Joseph requests an order directing the government to produce "forthwith" all prosecutor and agent notes of government witness interviews that may fall under the Jencks Act (or Fed. R. Crim. P. 26.2, which incorporates the Jencks Act). Def. Mot. at 1. Under the Jencks Act a defendant is not entitled to a witness's statement, of course, "until said witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a); *see, e.g., United States v. Neal*, 36 F.3d 1190, 1197 (1st Cir. 1994). Although Joseph asserts that "[c]onstitutional mandates" trump the Jencks Act, Def. Mot. at 5, she cites no case in support of her position. In fact, district

courts are not empowered to compel the government to produce a Jencks statement early except where, unlike here, the statement falls under *Brady* or *Giglio v. United States*, 405 U.S. 150 (1972). *See United States v. Perry*, 37 F. Supp. 3d 546, 560-61 (D. Mass. 2014) (citing cases).

In any event, even if the Court were empowered to order the production of early Jencks, the notes sought by defendant Joseph do not fall under the Jencks Act. There are only two categories of "statements" discoverable under the Jencks Act other than grand jury transcripts: (1) "a written statement made by [the] witness and signed or otherwise adopted or approved by him"; and (2) "a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement." 18 U.S.C. § 3500(e)(1)-(2). There are no such statements here.

When prosecutors and agents interviewed witnesses, they took only rough handwritten notes. They did not take notes on a laptop, as suggested on page 3 of Joseph's motion. They did not write down witness statements in the form of "substantially verbatim recital[s]" as Joseph has alleged. *See id.* None of the interviews was audio- or video-recorded. Neither the agents nor the prosecutors showed their notes to any witness to sign or otherwise approve or adopt. *Cf. Goldberg v. United States*, 425 U.S. 94, 98 (1976) (holding that a written summary of a witness's statement adopted by the witness is producible under the Jencks Act even if prepared by a prosecutor instead of an agent), *cited in* Def. Mot. at 2. After each interview, the agent used his handwritten notes, together with his memory, to type up a report summarizing the witness's statement. No such statement was shown to any witness to sign or otherwise approve or adopt. To the extent that any such witness testifies in the government's case-in-chief, the government

will produce these witness statement reports to defense counsel consistent with its obligations under the Jencks Act and the Local Rules.

The handwritten notes, however, are not producible. As the Supreme Court has explained:

> [In enacting the Jencks Act,] Congress was concerned that only those statements which could properly be called the witness' own words should be made available to the defense for purposes of impeachment. It was important that the statement could fairly be deemed to reflect fully and without distortion what had been said to the government agent. Distortion can be a product of selectivity as well as the conscious or inadvertent infusion of the recorder's opinions or impressions. It is clear from the continuous congressional emphasis on "substantially verbatim recital," and "continuous, narrative statements made by the witness recorded verbatim, or nearly so," that the legislation was designed to eliminate the danger of distortion and misrepresentation inherent in a report which merely selects portions, albeit accurately, from a lengthy oral recital. Quoting out of context is one of the most frequent and powerful modes of misquotation. We think it consistent with this legislative history, and with the generally restrictive terms of the statutory provision, to require that summaries of an oral statement which evidence substantial selection of material, or which were prepared after the interview without the aid of complete notes, and hence rest on the memory of the agent, are not to be produced. Neither, of course, are statements which contain the agent's interpretations or impressions.

*Palermo v. United States*, 360 U.S. 343, 352-53 (1959) (citation omitted). In light of this directive, the First Circuit has held that "a longhand writing which the court found fairly followed the witness' words, subject to minor, inconsequential errors" would fall within Subsection (e)(2) of the Jencks Act. *Neal*, 36 F.3d at 1198 (internal quotation marks omitted).

The undersigned AUSAs have reviewed their own handwritten notes as well as the agent notes and represent that none of them meets this description. If, after the government produces Jencks Act material (including typed reports documenting witness statements), Joseph has a basis to believe that prosecutor and/or agent notes also fall under Jencks, she may make a motion

at that time asking the Court to review the subject notes *in camera*. *See, e.g., United States v. Zolot*, Crim. No. 11-10070-PBS, 2014 WL 2998985, at *2-3 (D. Mass. July 1, 2014) (finding, after *in camera* review at trial, that agent's notes were not producible under Jencks; although they "captured[d] the gist" of the witness's statements, "with some words and phrases recorded verbatim," the notes were "more properly characterized as a selective and paraphrased version of the facts as recounted to the interviewers, with occasional quotes"). At this point, however, long before Jencks materials are due, Joseph's request for *in camera* review of any interview notes is premature. *See* Def. Mot. at 4.

**CONCLUSION**

The government respectfully requests that the Court deny defendant Joseph's motion.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By: *s/ Christine Wichers*
DUSTIN CHAO
CHRISTINE WICHERS
Assistant U.S. Attorneys

**Certificate of Service**

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on July 17, 2019.

*s/ Dustin Chao*
DUSTIN CHAO