UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                          )
UNITED STATES OF AMERICA                  )
                                          )
        v.                                )        Criminal No. 1:19-cr-10141-LTS
                                          )
SHELLEY M. RICHMOND JOSEPH,               )
and                                       )
WESLEY MACGREGOR,                         )
                                          )
        Defendants.                       )
_____)


*AMICUS CURIAE* **BRIEF OF COMMONWEALTH OF MASSACHUSETTS
IN SUPPORT OF DEFENDANTS' MOTIONS TO DISMISS
COUNTS I, II, AND III OF THE INDICTMENT**


MAURA HEALEY
ATTORNEY GENERAL

Robert E. Toone, BBO #663249
Anne Sterman, BBO #650426
Amanda Hainsworth, BBO #684417
Assistant Attorneys General
Office of the Attorney General
One Ashburton Place
Boston, MA  02108
(617) 963-2178
Robert.Toone@mass.gov

Dated:  September 13, 2019

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................... ii

INTEREST OF AMICUS CURIAE COMMONWEALTH OF MASSACHUSETTS .................. 1

ARGUMENT ....................................................................................... 3

I.      THE FEDERAL GOVERNMENT'S APPLICATION OF 18 U.S.C. § 1505
        AND § 1512(c) TO FEDERAL IMMIGRATION ENFORCEMENT
        ACTIVITIES IN STATE COURTHOUSES IS LEGALLY UNFOUNDED
        AND UNDERMINES CORE PRINCIPLES OF FEDERALISM AND
        JUDICIAL INDEPENDENCE. ......................................................3

        A.      The Federal Government's Attempt to Reinterpret the "Proceeding"
                Element Violates Basic Principles of Federalism and Judicial
                Independence. ........................................................ 4

        B.      ICE Enforcement Activities Are Not "Proceedings" Under 18 U.S.C.
                § 1505 or § 1512(c). ................................................. 7

II.     THE INDICTMENT'S FAILURE TO SHOW ANY INTENT BY THE
        DEFENDANTS TO OBSTRUCT A FEDERAL PROCEEDING CREATES A
        HEIGHTENED CONCERN THAT THIS PROSECUTION WILL CHILL
        THE OPERATIONS OF THE STATE JUDICIARY. ...................................12

        A.      Where There is No "Proceeding," Defendants Cannot Have Intended to
                Obstruct a Specific Official Proceeding. ............................. 12

        B.      The Defendants Also Did Not Commit the Specific Conduct Required to
                Act "Corruptly" Under § 1505 and § 1512(c)(2). ..................... 14

III.    JUDGE JOSEPH IS IMMUNE FROM PROSECUTION FOR ALL ACTS
        TAKEN WITHIN THE SCOPE OF HER JUDICIAL DUTIES. ...................16

CONCLUSION ................................................................................... 20

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005) .........................................................14

*Bond v. United States*, 564 U.S. 211 (2011) ...................................................................................1

*Bond v. United States*, 572 U.S. 844 (2014) ...........................................................................2, 4, 6

*Braatelien v. United States*, 147 F.2d 888 (8th Cir. 1945) ...........................................................17

*Bradley v. Fisher*, 80 U.S. (13 Wall.) 335 (1871) ...............................................................2, 16, 20

*Commonwealth v. Tartar*, 239 S.W.2d 265 (Ky. App. Ct. 1951) ..................................................18

*Doe v. Brandeis Univ.*, No-19-11049-LTS, 2019 WL 2617403
    (D. Mass. June 26, 2019) .......................................................................................................17

*Ex parte Virginia*, 100 U.S. 339 (1879)........................................................................................17

*Fair Assessment in Real Est. Ass'n, Inc. v. McNary*,
    454 US. 100 (1981).................................................................................................................2

*Forrester v. White*, 484 U.S. 219 (1988) ......................................................................................16

*Galarza v. Szalczyk*, 745 F.3d 634 (3d Cir. 2014) ..........................................................................6

*Gregory v. Ashcroft*, 501 U.S. 452 (1991)..................................................................................1, 5

*In re Enforcement of Subpoena*, 463 Mass. 162 (2012) .................................................................1

*In re McNair*, 187 A. 498 (Pa. 1936).............................................................................................18

*Ives v. Agastoni*, No. 15-30153-MAP, 2015 WL 9647559
    (D. Mass. Dec. 14, 2015), *adopted by*
    2016 WL 79881 (D. Mass. Jan. 5, 2016) ...............................................................................19

*Johnson v. United States*, 135 S. Ct. 2551 (2015) ........................................................................15

*Lunn v. Commonwealth*, 477 Mass. 517 (2017) ...............................................................5, 6, 11n

*Mireles v. Waco*, 502 U.S. 9 (1991)........................................................................................17, 19

*Murphy v. Nat'l Coll. Athletic Ass'n*, 138 S. Ct. 1461 (2018) .......................................................6

*New York v. United States*, 505 U.S. 144 (1992) ...............................................................6

*Petition of Dwyer*, 406 A.2d 1355 (Pa. 1979)...............................................................18

*Pierson v. Ray*, 386 U.S. 547 (1967) ..............................................................................17

*Ryan v. U.S. Immigration & Customs Enforcement*, 382 F. Supp. 3d 142
    (D. Mass. 2019)...........................................................................................4, 19

*Savoie v. Martin*, 673 F.3d 488 (6th Cir. 2012) ............................................................19

*Sheppard v. Maxwell*, 384 U.S. 333 (1966) ..................................................................19

*Slotnick v. Garfinkle*, 632 F.2d 163 (1st Cir. 1980) ......................................................20

*Stewart v. Ramsay*, 242 U.S. 128 (1916) ......................................................................19

*Stump v. Sparkman*, 435 U.S. 349 (1978) ...............................................................16, 20

*United States v. Aguilar*, 515 U.S. 593 (1995) ........................................................ 12-13

*United States v. Binette*, 828 F. Supp. 2d 402 (D. Mass. 2011)...........................7, 10, 11

*United States v. California*, 921 F.3d 865 (9th Cir. 2019)...............................................6

*United States v. Chaplin*, 54 F. Supp. 926 (S.D. Cal. 1944)....................................17, 20

*United States v. Davis*, 717 F.3d 28 (1st Cir. 2013) .....................................................3n

*United States v. Ermoian*, 752 F.3d 1165 (9th Cir. 2013) .........................3n, 7, 10, 11

*United States v. Friske*, 640 F.3d 1288 (11th Cir. 2011) .............................................13

*United States v. Higgins*, 511 F. Supp. 453 (W.D. Ky. 1981) ....................................7, 9

*United States v. Kanchanalak*, 37 F. Supp. 2d 1 (D. D.C. 1999) ................................15

*United States v. McDaniel*, No. 12-CR-0028, 2013 WL 3993983
    (N.D. Ga. Jan. 29, 2013), *adopted by* 2013 WL 3994239
    (N.D. Ga. Aug. 5, 2013)...............................................................................7

*United States v. Pac. Gas & Elec. Co.*, 153 F. Supp. 3d 1076
    (N.D. Cal. 2015).........................................................................................15

*United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991) .......................................14

*United States v. Quattrone*, 441 F.3d 153 (2d Cir. 2006) ...........................................................13

*United States v. Ramos*, 537 F.3d 439 (5th Cir. 2008) ........................................7, 10, 11

*United States v. Sutherland*, 921 F.3d 421 (4th Cir. 2019)......................................... 3-4

*United States v. Wright*, 704 F. Supp. 613 (D. Md. 1989)........................................7

*United States v. Young*, 916 F.3d 368 (4th Cir. 2019) ...............................................13

*Younger v. Harris*, 401 U.S. 37 (1971).......................................................... 1-2

*Zenon v. Guzman*, 924 F.3d 611 (1st Cir. 2019) ..................................................17, 18

## **Statutes**

6 U.S.C. § 271(b) ...........................................................................................9

18 U.S.C. § 3 ...............................................................................................11

18 U.S.C. § 229(a)(1) .....................................................................................4

18 U.S.C. § 241(a)(5) ....................................................................................10

18 U.S.C. § 1229a(c)(1)(A) ..........................................................................9n

18 U.S.C. § 1231(a)(5) ..................................................................................11

18 U.S.C. § 1503 ..........................................................................................12

18 U.S.C. § 1505 ................................................................................. *passim*

18 U.S.C. § 1512 ..............................................................................7, 10, 14

18 U.S.C. § 1512(b) ......................................................................................14

18 U.S.C. § 1512(c) ............................................................................. *passim*

18 U.S.C. § 1512(c)(1) .................................................................................16n

18 U.S.C. § 1512(c)(2).............................................................3, 7, 13, 14, 16n

18 U.S.C. § 1512(d)(3) .................................................................................11

18 U.S.C. § 1512(k) ...................................................................................................3n

18 U.S.C. § 1515(a)(1) ................................................................................................10

18 U.S.C. § 1515(b) .............................................................................................14, 15

Homeland Security Act of 2002, Pub. L. 107-296, §§ 441-446,
     116 Stat. 2192-95 (codified as amended at 6 U.S.C. §§ 251-256) ....................9

## Constitutional Provisions

U.S. Const. amend. X...............................................................................................1, 6

Massachusetts Const., Declaration of Rights, art. XXIX .............................................1

Massachusetts Const., Declaration of Rights, art. XXX..............................................1

## Rules and Regulations

8 C.F.R. § 241.1 ........................................................................................................9n

8 C.F.R. § 241.8(a).....................................................................................................11n

8 C.F.R. § 241.8c.......................................................................................................11n

8 C.F.R. § 1241.1 .......................................................................................................9n

## Miscellaneous

Chief Justice Paula M. Carey & Court Administrator Jonathan S.
     Williams, Executive Office Transmittal 17-13, *Policies and
     Procedures Regarding Interactions with the Department of
     Homeland Security* (Nov. 10, 2017) ...............................................................19n

Department of Homeland Security, *Operational and Support Components*
     (Nov. 20, 2018), available at https://www.dhs.gov/operational-and-
     support-components (last visited Sept. 12, 2019) ....................................9n-10n

Jill E. Family, *A Broader View of the Immigration Adjudication Problem*,
     23 Geo. Immigr. L.J. 595 (2009) ....................................................................9n

Massachusetts Court System, Trial Court Statistics for Fiscal Year 2018,
    District Court Department, *Criminal Filings by Court Location*
    (2018), available at https://www.mass.gov/lists/trial-court-
    statistics-for-fiscal-year-2018#district-court-department- (last
    visited Sept. 12, 2019) ...................................................................................6n

Reorganization Plan Modification for the Department of Homeland
    Security, H.R. Doc. No. 108-32 § (a) (2003), *reprinted at*
    6 U.S.C. § 542 note..........................................................................................10n

U.S. Dep't of Justice, *Executive Office for Immigration Review:  An
    Agency Guide* (Dec. 2017), available at
    https://www.justice.gov/eoir/page/file/eoir_an_agency_guide/down
    load (last visited Sept. 12, 2019).....................................................................9n

U.S. Immigration and Customs Enforcement, Directive No. 11072.1 –
    Civil Immigration Enforcement Actions inside Courthouses
    (Jan. 10, 2018), available at
    https://www.ice.gov/sites/default/files/documents/Document/2018/
    ciEnforcementActionsCourthouses.pdf (last visited Sept. 12, 2019) ..............................11n

**INTEREST OF AMICUS CURIAE COMMONWEALTH OF MASSACHUSETTS**

Massachusetts respectfully submits this *amicus* brief because the federal government's indictment of the Honorable Shelley Richmond Joseph and Officer Wesley MacGregor in this matter represents an extraordinary and unwarranted attack on the independence and integrity of our courts. The independence of the judiciary is a bedrock principle of Massachusetts government. "The judiciary's independence from the other branches of government and from outside influences and extraneous concerns has been one of the cornerstones of our constitutional democracy, intended to ensure that judges will be free to decide cases on the law and the facts as their best judgment dictates, without fear or favor." *In re Enforcement of Subpoena*, 463 Mass. 162, 169 (2012). Article 29 of the Massachusetts Declaration of Rights, principally drafted by John Adams, establishes "the right of every citizen to be tried by judges as free, impartial and independent as the lot of humanity will admit." Article 30 provides for strict separation between the executive, legislative, and judicial powers, "to the end it may be a government of laws and not of men."

Under the U.S. Constitution, the federal government is bound to respect the independence of the Massachusetts judiciary. As a state, Massachusetts retains substantial sovereign authority in our federal constitutional system. *Gregory v. Ashcroft*, 501 U.S. 452, 457 (1991). The Constitution created a federal government of limited powers, and "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X; *see also Bond v. United States*, 564 U.S. 211, 225 (2011) ("*Bond I*") ("Impermissible interference with state sovereignty is not within the enumerated powers of the National Government[.]"). Accordingly, there is a "longstanding public policy against federal court interference with state court proceedings." *Younger v. Harris*,

401 U.S. 37, 43 (1971). Federal courts must afford "a proper respect for state functions," *Fair Assessment in Real Est. Ass'n, Inc. v. McNary*, 454 U.S. 100, 112 (1981), and state court judges are protected by an absolute immunity from suit regardless of "the motives with which their judicial acts are performed," *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347 (1871).

Never before has the federal government sought to punish a Massachusetts judge for actions taken within her official duties. This case also appears to be one of the first instances in which the United States has prosecuted *any* person for allegedly obstructing an U.S. Immigration and Customs Enforcement ("ICE") officer under 18 U.S.C. § 1505 or § 1512(c); it is certainly the first time that this theory of liability has been deployed against a judge. As discussed below, those federal obstruction statutes do not apply as a matter of law because the activities of the ICE officer at the Newton courthouse on April 2, 2018 did not constitute a federal agency proceeding as required by those laws, and those laws do not apply to attempts by ICE officers to effectuate a civil arrest in a state courthouse. The indictment also fails to state a nexus between the defendants' conduct as state court officials and a qualifying federal proceeding, and neither defendant is alleged to have engaged in the specific conduct required to satisfy the corrupt intent element of each statute. Finally, as a state judge, Judge Joseph is immune from criminal prosecution for actions taken in good faith within her official duties. These defects require dismissal in their own right, but also because allowing this prosecution to proceed would override the "usual constitutional balance of federal and state powers" and "alter sensitive federal-state relationships" without Congress' approval. *Bond v. United States*, 572 U.S. 844, 858, 863 (2014) ("*Bond II*") (citations omitted). Simply put, our constitutional system does not allow the United States Attorney to use the federal criminal code to interfere with, coerce, and punish state judges in this manner.

2

**ARGUMENT**

I.     **THE FEDERAL GOVERNMENT'S APPLICATION OF 18 U.S.C. § 1505 AND § 1512(c) TO FEDERAL IMMIGRATION ENFORCEMENT ACTIVITIES IN STATE COURTHOUSES IS LEGALLY UNFOUNDED AND UNDERMINES CORE PRINCIPLES OF FEDERALISM AND JUDICIAL INDEPENDENCE.**

The federal government's improper intrusion on traditional state authority begins with its novel and legally unfounded interpretation of what constitutes a federal agency "proceeding" for purposes of 18 U.S.C. §§ 1505 and 1512(c).  To establish an offense under § 1505 (which the indictment charges against Judge Joseph and Officer MacGregor in Count III), the federal government must prove, among other things, that the defendants obstructed a "pending proceeding … before any department or agency of the United States."[1]  Similarly, to establish an offense under § 1512(c)(2) (which the indictment charges against Judge Joseph and Officer MacGregor in Counts I and II), the federal government must prove that the defendants obstructed an "official proceeding."[2]  Courts recognize and enforce limits on these "proceeding" elements in order to avoid chilling everyday interactions with the federal government, and to prevent "a statutory sprawl in which the countless communications of citizens with one agency or another of the federal government lay the groundwork for a potential obstruction prosecution."  *United*

---

[1] 18 U.S.C. § 1505 provides in relevant part that "[w]hoever corruptly, or by threats or force, or by any threatening letter or communication influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States," shall be punished.

[2] 18 U.S.C. § 1512(c) provides in relevant part that "[w]hoever corruptly … obstructs, influences, or impedes any official proceeding, or attempts to do so," shall be punished.  To the extent the federal government cannot establish the elements for primary violations of §§ 1505 and 1512(c), it cannot establish the dependent aiding and abetting or conspiracy charges either. *See, e.g.*, *United States v. Ermoian*, 752 F.3d 1165, 1168, 1172-73 (9th Cir. 2013) (reversing conspiracy conviction under 18 U.S.C. § 1512(c) and (k) and directing acquittal because government could not prove "official proceeding"); *United States v. Davis*, 717 F.3d 28, 33 (1st Cir. 2013) (aiding and abetting requires proof that "the substantive offense was actually committed").

*States v. Sutherland*, 921 F.3d 421, 426 (4th Cir. 2019). That concern is particularly pronounced here, where federal ICE officers have increased their enforcement activities in state courthouses. *See Ryan v. U.S. Immigration & Customs Enforcement*, 382 F. Supp. 3d 142, 148-50 (D. Mass. 2019).

As discussed below, the terms "pending proceeding" in § 1505 and "official proceeding" in § 1512(c) simply do not encompass the kind of ICE enforcement activity in state courthouses alleged in the indictment. This plainly incorrect interpretation of "proceeding" is an apparent effort by the federal government to erode the prerogative of the states to opt out of federal immigration enforcement and to undermine judicial independence. Indeed, as applied to Judge Joseph and Officer MacGregor, the federal government's interpretation of "proceeding" is precisely the type of "improbably broad" interpretation that would "fundamentally upset the Constitution's balance between national and local power" and have "deeply serious consequences" for our constitutional system. *Bond II*, 572 U.S. at 860, 866.

### A. The Federal Government's Attempt to Reinterpret the "Proceeding" Element Violates Basic Principles of Federalism and Judicial Independence.

Basic principles of federalism and judicial independence require this Court to dismiss the charges under § 1505 and § 1512(c) because there is no "clear indication" that Congress intended its obstruction laws to criminalize interactions between ICE officers and state judges in state courthouses. *See Bond II*, 572 U.S. at 857, 860 (citation omitted). It is "appropriate to refer to basic principles of federalism embodied in the Constitution" to construe a federal criminal statute. *Id.* at 859. In *Bond II*, the Supreme Court concluded that the "chemical weapons" element of 18 U.S.C. § 229(a)(1), as applied to the facts in that case, was ambiguous, citing "the improbably broad reach of the key statutory definition …; the deeply serious consequences of adopting such a boundless reading; and the lack of any apparent need to do so in light of the

4

context from which the statute arose." *Id.* at. 860.  The Court relied on principles of federalism

in order to resolve this ambiguity, observing that "'it is incumbent upon the federal courts to be

certain of Congress' intent before finding that federal law overrides' the 'usual constitutional

balance of federal and state powers.'" *Id.* at 858 (quoting *Gregory*, 501 U.S. at 460).

Here, the indictment rests on an "improbably broad reach" of the term "proceeding" to

encompass ICE enforcement activities in state courthouses and stretches the federal obstruction

statutes well beyond their intended purpose of protecting the integrity of adjudicative or

rulemaking proceedings before the federal courts and agencies – thus threatening grave harm to

Massachusetts.  If "proceeding" were construed as broadly as the indictment requires, the

obstruction statutes would essentially require Massachusetts judges, in running their courtrooms

and otherwise discharging their judicial responsibilities, to prioritize the interests of ICE

enforcement officers above all else or risk federal prosecution.  In other words, the federal

government seeks to use the federal obstruction statutes as a means of compelling state court

officials to defer to ICE officers, whenever they appear, over the parties, witnesses, and victims

in the case and above the requirements of the state law to be applied.  This resulting specter of

federal prosecution for any misstep with regard to ICE would inevitably chill the independence

and impartiality of state court judges in the discharge of their duties.  It could compel state

officials to circumvent or contravene the Supreme Judicial Court's holding in *Lunn v.*

*Commonwealth*, 477 Mass. 517 (2017), that state law limits the authority of state and local

officers to participate in the federal government's effectuation of civil immigration detainers.  It

would also needlessly burden the day-to-day workings of District Courts throughout the

Commonwealth, which are responsible for hearing thousands of criminal cases each year.[3]  As in *Bond II*, this Court should construe the reach of "proceeding" so as to avoid such extraordinary interference with state judicial authority.

Indeed, applying 18 U.S.C. §§ 1505 and 1512(c) to ICE courthouse enforcement activities would risk inviting widespread violations of the anti-commandeering doctrine, which recognizes that "[t]he Federal Government may not compel the States to … administer a federal regulatory program," *New York v. United States*, 505 U.S. 144, 188 (1992) – including federal immigration enforcement activities.  *See, e.g.*, *United States v. California*, 921 F.3d 865, 890 (9th Cir. 2019); *Galarza v. Szalczyk*, 745 F.3d 634, 643 (3d Cir. 2014); *Lunn*, 477 Mass. at 526 ("[E]ven if the Federal government wanted to make State compliance with immigration detainers mandatory, the Tenth Amendment likely would prevent it from doing so.").  Applying the federal obstruction statutes in this manner would effectively coerce state judges into facilitating federal immigration enforcement and deferring to ICE's needs and perceived priorities over legitimate but countervailing state interests.  That would deny state court judges the "critical alternative" required by the Tenth Amendment to "decline to administer the federal program." *New York*, 505 U.S. at 176-77.  Simply put, there can be no more "direct affront to state sovereignty" than installing federal officers in state courthouses and allowing them to coerce or threaten state officials into assisting in federal enforcement activities.  *See Murphy v. Nat'l Coll. Athletic Ass'n*, 138 S. Ct. 1461, 1478 (2018).

---

[3] Fiscal Year 2018 statistics for the Massachusetts District Court Department show that district court judges in Massachusetts handled 163,189 criminal matters, 736 of which were handled by Newton District Court.  *See* Massachusetts Court System, Trial Court Statistics for Fiscal Year 2018, District Court Department, *Criminal Filings by Court Location* (2018).

### B.      ICE Enforcement Activities Are Not "Proceedings" Under 18 U.S.C. § 1505 or § 1512(c).

In the absence of any clear congressional intent or judicial precedent supporting its interpretation, the federal government should not be allowed to proceed with a prosecution that so fundamentally undermines basic principles of federalism and judicial independence.

As a matter of law, the terms "pending proceeding" in § 1505 and "official proceeding" in § 1512(c) are limited in scope and do not encompass the kind of ICE enforcement activity in state courthouses alleged in the indictment.  Both statutes are limited to criminalizing efforts to obstruct, influence, or impede formal court-like proceedings to enforce federal law.  As this Court has previously observed, the term "official proceeding" is used throughout § 1512 in "a manner that contemplates a formal environment in which persons are called to appear or produce documents."  *United States v. Binette*, 828 F. Supp. 2d 402, 404 (D. Mass. 2011) (quoting *United States v. Ramos*, 537 F.3d 439, 463 (5th Cir. 2008)); *see also Ramos*, 537 F.3d at 462-64 (dismissing charge under § 1512(c)(2) because phone call between SEC investigators and defendant "was not a 'formal convocation' called by the agency where Defendant was directed to appear"); *Ermoian*, 752 F.3d at 1169 (directing verdict of acquittal because term "proceeding" under § 1512(c)(2) clearly "connotes some type of formal hearing").  Similarly, the term "proceeding" under § 1505 is limited to "actions of an agency which relate to some matter within the scope of the rulemaking or adjudicative power vested in the agency by law."  *United States v. Higgins*, 511 F. Supp. 453, 455 (W.D. Ky. 1981); *accord United States v. Wright*, 704 F. Supp. 613, 614-15 (D. Md. 1989) (investigation by U.S. Attorney's Office was not proceeding under § 1505 because office lacks adjudicative and rulemaking authority); *United States v. McDaniel*, No. 12-CR-0028, 2013 WL 3993983, at *2-4 (N.D. Ga. Jan. 29, 2013) (FBI investigation was not proceeding under § 1505), *adopted by* 2013 WL 3994239 (N.D. Ga. Aug. 5, 2013).

Here, the primary claims of the indictment are that an ICE officer appeared at the Newton courthouse on April 2, 2018 to "take custody" of an individual "A.S." upon his release from the courthouse, and that, through their alleged actions, Judge Joseph and Officer MacGregor conspired to "prevent[] the ICE officer from taking custody of A.S. at the [Newton] courthouse." Indictment ("Ind."), ¶¶ 10, 25; *see also id.* ¶¶ 26-27, 30 (defendants allegedly acted to allow A.S. "to evade arrest by the ICE Officer" at courthouse).  Even assuming those allegations are true, §§ 1505 and 1512(c) criminalize only the obstruction of certain formal agency proceedings, as described above, not alleged interference with an officer's attempt to effectuate a civil arrest in a state courthouse.  They simply do not apply.

In an attempt to shoehorn the events at the Newton courthouse into the "proceeding" element of §§ 1505 and 1512(c), the federal government claims that Judge Joseph and Officer MacGregor obstructed a "federal immigration removal proceeding," *see* Ind. ¶¶ 38, 40 (§ 1512(c)); *id.* ¶ 42 (§ 1505).  The theory, apparently, is that anything an ICE officer does to "identify" or "apprehend" an alien amounts to the conduct of a federal removal "proceeding," and, therefore, anyone who hinders the officer's execution of such activities commits obstruction of justice.  *See id.* ¶ 1 (asserting that "ICE's duties included conducting federal removal proceedings, which encompassed, among other things, identifying, apprehending, and initiating the removal process of aliens in the United States"); ¶ 10 (stating that ICE officer arrived at the Newton courthouse as "part of ICE removal proceedings").  But that expansive interpretation of federal authority and concomitant intrusion into operations of the state judiciary do not square with the statutory requirements.

First, federal immigration removal proceedings are conducted not by ICE, but by the

Executive Office for Immigration Review (EOIR), an office of the Department of Justice.[4]  And while Department of Homeland Security ("DHS") attorneys from ICE may advocate on behalf of the government during formal removal proceedings, here no such formal proceedings are alleged to have been ongoing; to the contrary, an order of removal already existed.  *See* Ind. ¶ 8.  The fact that some officials from ICE may have a role in removal proceedings conducted by the Justice Department does not make civil arrest activities performed by ICE officers in courthouses "official proceedings" under § 1512(c).

Second, ICE lacks the adjudicative or rulemaking authority required to satisfy the "proceeding" element under § 1505.  *See Higgins*, 511 F. Supp. at 455.  ICE was created by the Homeland Security Act of 2002, Pub. L. 107-296, §§ 441-446, 116 Stat. 2192-95 (codified as amended at 6 U.S.C. §§ 251-256), which (i) transferred responsibility for Border Patrol, detention and removal, intelligence, investigations, and inspections from the Immigration and Naturalization Service (INS) to the agency that would become ICE, and (ii) transferred responsibility for the INS's adjudicatory functions to the Bureau of Citizenship and Immigration Services, 6 U.S.C. § 271(b).  There is no relevant rulemaking power vested in ICE, *see Higgins*, 511 F. Supp. at 455; indeed, it is not clear that ICE has promulgated regulations at all.  From its inception, ICE's primary function has been enforcement, not adjudication or rulemaking.[5]

---

[4] *See* U.S. Dep't of Justice, *Executive Office for Immigration Review: An Agency Guide* 1 (Dec. 2017) (EOIR "administers the Nation's immigration court system" and decides whether a foreign-born individual "is removable from the country and if found removable, whether they qualify for protection or relief from removal").  EOIR immigration judges are responsible for removal proceedings, while EOIR's Board of Immigration Review handles appeals from those decisions.  Jill E. Family, *A Broader View of the Immigration Adjudication Problem*, 23 Geo. Immigr. L.J. 595, 599 (2009).  Immigration judges issue removal orders "at the conclusion" of proceedings, and those orders become final upon dismissal or waiver of appeal.  8 U.S.C. § 1229a(c)(1)(A); 8 C.F.R. §§ 241.1, 1241.1.

[5] *See, e.g.*, Department of Homeland Security, *Operational and Support Components* (Nov. 20, 2018) ("[ICE] promotes homeland security and public safety through the criminal and civil

Thus, ICE does not conduct the kind of formal court-like proceedings required to satisfy the "official proceeding" element in § 1512(c). "Official proceeding" is defined for purposes of § 1512 as, in relevant part, a proceeding before a federal court, judge, or grand jury; a proceeding before Congress; or "a proceeding before a Federal Government agency which is authorized by law." 18 U.S.C. § 1515(a)(1). The use of the preposition "before" indicates "an appearance in front of the agency sitting as a tribunal." *Ermoian*, 752 F.3d at 1170-71; *accord Ramos*, 537 F.3d at 462-63 (term "before" implies that "official proceeding" involves "some formal convocation of the agency in which parties are directed to appear"); *Binette*, 828 F. Supp. 2d at 404 ("phone call between the SEC investigators and Defendant obviously was not a 'formal convocation' called by the agency where Defendant was directed to appear"). The ICE officer who waited in the Newton courthouse on April 2, 2018, pursuing an opportunity to take custody of A.S., was not involved in such an official proceeding.

Indeed, the federal government implicitly concedes that the attempt to remove A.S. in 2018 did not result from any formal hearing at all, at ICE or any other agency. It alleges that A.S. was subject to removal "based upon a final order by a designated official," Ind. ¶ 8, and the Warrant of Removal referred to in the indictment states that A.S. was subject to removal based upon a final order by "a designated official" (*i.e.*, not an immigration judge, the Board of Immigration Appeals, or a federal judge) pursuant to § 241(a)(5) of the Immigration and Nationality Act (INA), *see* Exhibit A (Immigration Detainer Form and Warrant of Removal/

---

enforcement of federal laws governing border control, customs, trade, and immigration."); Reorganization Plan Modification for the Department of Homeland Security, H.R. Doc. No. 108–32 § (a) (2003), *reprinted at* 6 U.S.C. § 542 note ("The mission of [ICE] is: 1. To enforce the full range of immigration and customs laws within the interior of the United States; and, 2. To protect specified federal buildings.").

Deportation for Oscar Manuel Peguero aka Jose Medina-Perez).[6]  That statutory provision allows

the Attorney General to reinstate a prior order of removal after finding "that an alien has

reentered the United States illegally after having been removed or having departed voluntarily,

under an order of removal."  8 U.S.C. § 1231(a)(5).  Immigration officers can make this finding

of illegal reentry and reinstate the prior removal order without any hearing before EOIR or the

Board of Immigration Appeals.[7]  Actions taken to enforce a removal order unilaterally reinstated

by an immigration officer do not constitute the kind of formal, court-like agency convocation

required to support a charge under § 1512(c).  *See Ermoian*, 752 F.3d at 1170-71; *Ramos*, 537

F.3d at 462-63; *Binette*, 828 F. Supp. 2d at 404.

   To be sure, there are some limited circumstances and other legal theories under which

interfering with a federal officer's attempt to arrest an individual may violate federal law, but

those statutes are even more narrow in scope and certainly would not provide an avenue to reach

state court officials discharging their official responsibilities.  For example, the accessory-after-

the-fact statute, 18 U.S.C. § 3, makes it a crime for a defendant, "knowing that an offense against

the United States has been committed, [to] receive[], relieve[], comfort[] or assist[] the offender

in order to hinder or prevent his apprehension, trial or punishment."  Similarly, 18 U.S.C.

§ 1512(d)(3) prohibits intentional harassment that hinders, delays, or prevents any person from

---

[6] Even though the detainer form states that "[t]he alien must be served with a copy of this form
for the detainer to take effect," the indictment does not allege that A.S. was served with it.  *See*
Exhibit A; *Lunn*, 477 Mass. at 519 n.4, 524-25 & n.15.

[7] *See* 8 C.F.R. § 241.8(a) ("The alien has no right to a hearing before an immigration judge in
such circumstances").  An immigration officer is authorized to reinstate a prior removal order
after determining that the prior removal order existed and that the alien illegally reentered the
country.  *Id.* § 241.8(a), (c).  *See also* U.S. Immigration and Customs Enforcement, Directive No.
11072.1 – Civil Immigration Enforcement Actions Inside Courthouses (Jan. 10, 2018) (stating
that ICE's policy regarding civil immigration enforcement actions inside state courthouses
includes arrest of "aliens who have re-entered the country illegally after being removed").

"arresting or seeking the arrest of another person in connection with a Federal offense." But neither of those statutes is charged here, nor could they be where, as here, the ICE officer sought to execute a *civil* arrest at the Newton courthouse, not to arrest A.S. in connection with a federal offense. The express availability of federal charges for hindering arrests in specific circumstances further undercuts the notion that the general obstruction of justice statutes apply here.

In sum, as a matter of law, and consistent with principles of federalism and judicial independence, the term "proceeding" in §§ 1505 and 1512(c) does not encompass the type of ICE courthouse enforcement activities alleged in the indictment.

## II.   THE INDICTMENT'S FAILURE TO SHOW ANY INTENT BY THE DEFENDANTS TO OBSTRUCT A FEDERAL PROCEEDING CREATES A HEIGHTENED CONCERN THAT THIS PROSECUTION WILL CHILL THE OPERATIONS OF THE STATE JUDICIARY.

The federal government's unprecedented intrusion into state sovereignty is further demonstrated by its impermissibly broad interpretation of the corrupt intent elements under 18 U.S.C. § 1505 and § 1512(c).

### A.   Where There is No "Proceeding," Defendants Cannot Have Intended to Obstruct a Specific Official Proceeding.

Just as the indictment fails to identify a "proceeding" for purposes of liability under § 1505 and § 1512(c), the indictment is also defective because it fails to state the required nexus between the defendants' alleged conduct and such a proceeding. The Supreme Court has explained this "'nexus' requirement" as requiring, with respect to obstructing judicial proceedings under 18 U.S.C. § 1503, "that the act must have a relationship in time, causation, or logic with the judicial proceedings. In other words, the endeavor must have the natural and probable effect of interfering with the due administration of justice." *United States v. Aguilar*,

12

515 U.S. 593, 599 (1995) (citations omitted).  Courts have uniformly held that, to establish the corrupt intent element of an offense under either § 1505 or § 1512(c), the federal government must prove the same nexus between a defendant's acts and the obstruction of an official agency proceeding.  *See United States v. Friske*, 640 F.3d 1288, 1292 (11th Cir. 2011) ("We now join our sister circuits in concluding that § 1512(c)(2) also contains a nexus requirement as articulated in *Aguilar*.") (citations omitted); *United States v. Young*, 916 F.3d 368, 386 (4th Cir. 2019) (same; collecting cases); *United States v. Quattrone*, 441 F.3d 153, 174 (2d Cir. 2006) (§ 1505 "requires a wrongful intent or improper motive to interfere with an agency proceeding, including the judicially grafted nexus requirement").

Where there is no qualifying federal agency "proceeding" at all, there can be no nexus between such a proceeding and the defendants' alleged conduct.  *See, e.g.*, *Young*, 916 F.3d at 387 (vacating conviction under § 1512(c)(2) where defendant's conviction was not "connected to a specific official proceeding" and such "a specific official proceeding" was not reasonably foreseeable to defendant).  Again, ICE does not convene the kind of hearings required to establish the "proceeding" element under §§ 1505 and 1512(c).  *See* Section I.B, *supra*.  Indeed, the Warrant of Removal cited in the indictment establishes that the ICE officer at the Newton courthouse was not enforcing the determination of any kind of agency hearing, but rather the unilateral order of a "designated official."  Exhibit A.  Because nothing that Judge Joseph or Officer MacGregor allegedly did at the Newton courthouse on April 2, 2018 could have been intended to obstruct a "specific official proceeding," *Young*, 916 F.3d at 387, as opposed to routine, day-to-day enforcement activities, the federal government cannot establish the nexus element under either § 1505 or § 1512(c).

**B.     The Defendants Also Did Not Commit the Specific Conduct Required to Act "Corruptly" Under § 1505 and § 1512(c)(2).**

In addition, the federal government has not alleged that the defendants engaged in the conduct required to satisfy the corrupt intent element under § 1505 and § 1512(c)(2). Specifically, there is no allegation that Judge Joseph or Officer MacGregor either made a false or misleading statement to the ICE officer or withheld, concealed, altered, or destroyed a document. *See* 18 U.S.C. § 1515(b). There is also no allegation at that Judge Joseph or Officer MacGregor acted in a consciously "wrongful, immoral, depraved, or evil" way or with the "level of culpability … usually require[d] in order to impost criminal liability" for the purposes of § 1512. *See, e.g.*, *Arthur Andersen LLP v. United States*, 544 U.S. 696, 705-06 (2005) (construing meaning of "corruptly" under § 1512(b)). Instead, the government creates a false equivalence between violating a Trial Court policy against turning off courtroom recording and committing a federal crime – a dangerous step that is both legally deficient and, if permitted to proceed, would impermissibly infringe upon the independence of the state judiciary.

To allay due process vagueness concerns, courts have interpreted the "corruptly" requirement in § 1515(b) to require certain concrete corrupt conduct on the part of the defendant. In *United States v. Poindexter*, 951 F.2d 369, 378 (D.C. Cir. 1991), the D.C. Circuit held that the term "corruptly" as then used in § 1505 was unconstitutionally vague because "in the absence of some narrowing gloss, people must 'guess at its meaning and differ as to its application.'" Congress responded to the *Poindexter* ruling by amending 18 U.S.C. § 1515(b) to define "corruptly" for purposes of § 1505 as "acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information." Courts have since held that the phrase "acting with an improper purpose" remains too vague to alleviate the vagueness

14

concerns addressed in *Poindexter*. *United States v. Pac. Gas & Elec. Co.*, 153 F. Supp. 3d 1076,

1083 (N.D. Cal. 2015); *United States v. Kanchanalak*, 37 F. Supp. 2d 1, 4 (D.D.C. 1999); *see*

*generally Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015) (stating that a criminal law

violates due process when it is "so vague that it fails to give ordinary people fair notice of the

conduct it punishes, or so standardless that it invites arbitrary enforcement"). Therefore, to

satisfy the corrupt intent element, prosecutors must instead prove some kind of specific conduct

proscribed by § 1515(b): "making a false or misleading statement, or withholding, concealing,

altering, or destroying a document or other information."

     The federal government has not alleged such conduct here, by either Judge Joseph or

Officer MacGregor. First, neither defendant is alleged to have made any statement to the ICE

officer, false, misleading, or otherwise. Officer MacGregor did not converse with the ICE

officer as he escorted A.S. from the courtroom to the lockup downstairs. Ind. ¶¶ 22-24. Nor did

Judge Joseph address the ICE officer at any time, but rather allegedly directed the Clerk to

instruct him to leave the courtroom and wait outside (which, even if true, was an instruction

within her authority, not a false or misleading statement). *Id.* ¶ 19. The indictment also alleges

that the Clerk "informed the ICE Officer that, in the event of A.S.'s release, A.S. would be

released out of the Courtroom into the [Newton courthouse] lobby," *id.*, but the Clerk is not a

defendant, and there is no claim that he made this statement at Judge Joseph's direction. *See*

*also id.* ¶ 24 (stating that Clerk instructed ICE officer to wait in the lobby "as that was where

A.S. would have been released in accordance with customary [Newton courthouse] practice").

Nor is either defendant alleged to have withheld, concealed, altered, or destroyed a document or

other information. The indictment alleges that, following A.S.'s arraignment, Judge Joseph

directed the Clerk to go "off the record" for approximately 52 seconds, *id.* ¶ 21, but *not* making a

recording is distinct from making a recording and then concealing, altering, or destroying it.[8]  It further alleges that Judge Joseph gave this direction "to conceal [her] conversation with the Defense Attorney," but even assuming that a sitting judge going "off the record" while conversing with litigants in her courtroom could amount to "conceal[ment]" of "information" in some way, the existence or not of a transcript did not impede or affect the ICE officer, who had already left the courtroom.  *See* Ind. ¶¶ 19-20.  Thus, even if this Court were to find that the ICE officer was somehow participating in an actionable "proceeding" while at the Newton courthouse, *but see* Section I, *supra*, neither defendant committed the kind of conduct in relation to that ICE officer required to satisfy the corrupt intent element under the charged statutes.

## III.   JUDGE JOSEPH IS IMMUNE FROM PROSECUTION FOR ALL ACTS TAKEN WITHIN THE SCOPE OF HER JUDICIAL DUTIES.

Finally, all charges against Judge Joseph should be dismissed because she is immune from criminal prosecution for actions taken within her official duties as a Massachusetts District Court judge.  The Supreme Court has long recognized that it is "a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehensions of personal consequences to himself.'"  *Stump v. Sparkman*, 435 U.S. 349, 355 (1978) (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347 (1871)).  The doctrine of judicial immunity is rooted in the English common law and aimed primarily at preserving judicial independence.  *Forrester v. White*, 484 U.S. 219, 225 (1988).  As the First Circuit recently observed, its purpose is "not to buffer bad judges but 'for the benefit of the public, whose interest it is that the judges

---

[8] It is telling that while the indictment charges obstruction under the "residual clause" in 18 U.S.C. § 1512(c)(2), it does not charge the defendants under § 1512(c)(1), the provision of the Sarbanes-Oxley Act that prohibits evidence impairment, including the alteration, destruction, or concealment of "a record, document, or other object."

should be at liberty to exercise their functions with independence and without fear of consequences.'" *Zenon v. Guzman*, 924 F.3d 611, 616 (1st Cir. 2019) (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967)).

The scope of judicial immunity in criminal proceedings is less well defined than in civil proceedings, but it is informed by the same considerations and should be interpreted with similar breadth. *See, e.g.*, *United States v. Chaplin*, 54 F. Supp. 926, 934 (S.D. Cal. 1944) ("If judges are protected against civil actions for judicial acts, the reasons are more weighty that they should be protected against criminal actions."). Immunity is "overcome only in cases where a judge is carrying out a nonjudicial action, or in instances where a judge takes an action, though seemingly 'judicial in nature,' that is 'in the complete absence of all jurisdiction." *Zenon*, 924 F.3d at 617 (quoting *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991)); *see also Doe v. Brandeis Univ.*, No-19-11049-LTS, 2019 WL 2617403, at *2 (D. Mass. June 26, 2019) (Sorokin, J.) ("Allegations of bad faith or malice do not overcome judicial immunity."). Thus, judges may not be absolutely immune from criminal prosecution for non-judicial acts, including bribery, tax evasion, or other acts taken in bad faith. *See, e.g.*, *Ex parte Virginia*, 100 U.S. 339, 348 (1879) (no bar to criminal prosecution where judge was not "performing a judicial act"); *Braatelien v. United States*, 147 F.2d 888, 895 (8th Cir. 1945) (stating that even though "as a general rule a judge can not be held criminally liable for erroneous judicial acts [made] in good faith," a judge "may be held criminally responsible when he acts fraudulently or corruptly"). By contrast, in *Chaplin*, the court sustained a state judge's defense that he should be immune from indictment and prosecution for depriving a citizen of civil rights "under the color of any law" in judicial proceedings in his court. 54 F. Supp. at 934-35. Similarly, the Pennsylvania Supreme Court has recognized that magistrate judges "cannot be subjected to liability, civil or criminal, for any of

17

their judicial acts, no matter how erroneous, so long as they act in good faith." *In re McNair*, 187 A. 498, 502 (Pa. 1936). And in *Commonwealth v. Tartar*, 239 S.W.2d 265, 266-67 (Ky. App. Ct. 1951), the court held that an indictment of a judge for misfeasance in office was properly dismissed because "judges acting in their official capacities should be protected from harassment by either civil suits or criminal prosecutions." Thus, like anyone else, judges may be prosecuted for out-of-court conduct that is criminal in nature, but should not be subject to criminal prosecution for judicial acts within their authority and jurisdiction – even those that may have ultimately been wrong – because to do so would seriously undermine the independence of the judiciary. *See, e.g.*, *Petition of Dwyer*, 406 A.2d 1355, 1361 (Pa. 1979) ("Judges made timid because of fear of criminal prosecutions for errors in their decisions make poor public servants. History has borne out the fact that the only way judicial functions can be independently performed in the manner required in a democracy is to clothe 'judicial performers' with this immunity."); *Tartar*, 239 S.W.2d at 266 (judges should not be "unduly burdened defending charges instigated by other governmental officers or aggrieved members of the public").

Here, the "essential character" of Judge Joseph's alleged conduct was judicial and performed within the scope of her official duties, including managing her courtroom. *See Zenon*, 924 F.3d at 618. She was at the relevant time "assigned as the District Court Judge at [the Newton courthouse], hearing and ruling on several criminal proceedings in the Courtroom." Ind. ¶ 14. She conducted hearings in which she arraigned A.S. and, later, addressed the terms of his bail, detention, or release. *Id.* ¶¶ 17-18. She is alleged to have directed the ICE officer to leave the courtroom, *id.* ¶ 19, and, during a conference in the courtroom and at sidebar, directed the clerk to go off the record for less than a minute, *id.* ¶¶ 20-22. She then allegedly agreed with A.S.'s attorney that he would be released from the rear exit of the courthouse. *Id.* ¶¶ 30-32.

18

It is well established in our constitutional system that courtrooms and courthouse premises "are subject to the control of the court." *Sheppard v. Maxwell*, 384 U.S. 333, 358 (1966). That control includes the "privilege of the court" to protect those who come to, attend, or leave a court from arrest on unrelated charges. *Stewart v. Ramsay*, 242 U.S. 128, 130-31 (1916); *see also Ryan*, 382 F. Supp. 3d at 155-57. Similarly, a "judge's direction to court officers to bring a person who is in the courthouse before him is a function normally performed by a judge" and therefore protected by judicial immunity. *Mireles*, 502 U.S. at 12. So are such functions as "adjudicating disputes, … presiding over courtroom sessions, … and recording rulings." *Ives v. Agastoni*, No. 15-30153-MAP, 2015 WL 9647559, at *3 (D. Mass. Dec. 14, 2015), *adopted by* 2016 WL 79881 (D. Mass. Jan. 5, 2016).

The federal government alleges that certain of Judge Joseph's alleged actions violated Massachusetts Trial Court rules or policies.[9] But even assuming that to be true, a judge's purported violation of a state court rule is immaterial to whether judicial immunity applies. *See, e.g.*, *Savoie v. Martin*, 673 F.3d 488, 493-94 (6th Cir. 2012) (judicial immunity applied even though judge violated Tennessee court rule prohibiting him from serving as judge after acting as

---

[9] The federal government's characterization of the Trial Court's DHS policy misapprehends its primary purpose: to restrict the involvement of trial court officials in ICE's courthouse enforcement activities. For example, the policy directs Trial Court employees, including judges and court officers, not to "hold any individual who would otherwise be entitled to release based solely on a civil immigration detainer or civil immigration warrant." Chief Justice Paula M. Carey & Court Administrator Jonathan S. Williams, Executive Office Transmittal 17-13, *Policies and Procedures Regarding Interactions with the Department of Homeland Security* 1 (Nov. 10, 2017). It sets out a procedure by which DHS officers may be admitted to a courthouse's holding cell area in order to take custody of a person pursuant to a detainer, but makes clear that such access is contingent on the DHS officer making such a request. *Id.* at 2-3. The policy allows DHS officials to enter and conduct activities in state courthouses provided that "their conduct in no way disrupts or delays court operations, or compromises court safety or decorum," *id.* at 2, but prohibits them from taking an individual into custody in a courtroom without receiving advance permission by a judicial officer, *id.* at 3.

mediator in same dispute). Indeed, a "judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Stump*, 435 U.S. at 356-57 (quoting *Bradley*, 80 U.S. at 351); *see also Slotnick v. Garfinkle*, 632 F.2d 163, 166 (1st Cir. 1980) (allegation that judges acted "in excess of their jurisdiction" is "not enough to lift the cloak of absolute judicial immunity"). Here, the indictment does not allege that Judge Joseph acted in the absence of all jurisdiction, and no such allegation would be plausible since her alleged acts were clearly within the scope of the everyday activities and responsibilities of a District Court judge, and not something that inured to her personal benefit as a private citizen.

There is an especially compelling need for judicial immunity in this case, given the grave danger the prosecution poses to federalism and judicial independence. As discussed, the federal government has never before sought to use the criminal law to punish state judges who do not cooperate with federal immigration activities, and there is no evidence that Congress intended federal prosecutors to use 18 U.S.C. § 1505 or § 1512(c) as tools to alter the usual balance of federal and state powers in this manner. Allowing the prosecution to proceed would "destroy the independence of the judiciary" and place "the official action of every justice of the peace, municipal or city court judges, Superior Court judges, Appellate Court judges and Supreme Court judges in our country at the mercy of a United States Attorney." *Chaplin*, 54 F. Supp. at 934. Preservation of our constitutional order requires this Court to terminate this prosecution, whether through dismissal of the charges on their merits or application of judicial immunity.

## CONCLUSION

For the reasons stated above, this Court should dismiss Counts I, II, and III of the indictment.

Respectfully submitted,

COMMONWEALTH OF MASSACHUSETTS

By its attorney,

MAURA HEALEY
ATTORNEY GENERAL


/s/ Robert E. Toone
Robert E. Toone, BBO #663249
Anne Sterman, BBO #650426
Amanda Hainsworth, BBO #684417
Assistant Attorneys General
Office of the Attorney General
One Ashburton Place
Boston, MA  02108
(617) 963-2178
Robert.Toone@mass.gov

Dated:  September 13, 2019

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on September 13, 2019.

/s/ Robert E. Toone

# Exhibit A

Immigration Detainer Form and Warrant of Removal/Deportation for
Oscar Manuel Peguero aka Jose Medina-Perez



DEPARTMENT OF HOMELAND SECURITY
## IMMIGRATION DETAINER - NOTICE OF ACTION

| Subject ID: 360965235<br>Event #:   WSM1603003685 | CASE#TNET201800093<br>FBI#210952AC4 | File No: 079 677 654<br>Date:   March 30, 2018 |
|---|---|---|

| TO: (Name and Title of Institution - OR Any Subsequent Law Enforcement Agency) Newton Police Department<br>1321 Washington St<br>Newton, MA 02465 | FROM: (Department of Homeland Security Office Address)<br>ERO - Westminster, CA Sub Office<br>ICE<br>ERO PERC LAGUNA NIGUEL<br>24000 AVILA RD RM# 1552<br>LAGUNA NIGUEL, CA 92677 |
|---|---|

Name of Alien: PEGUERO, OSCAR MANUEL AKA: MEDINA-PEREZ, JOSE

Date of Birth: ▊▊▊▊▊▊    Citizenship:    DOMINICAN REPUBLIC    Sex:    M

**1. DHS HAS DETERMINED THAT PROBABLE CAUSE EXISTS THAT THE SUBJECT IS A REMOVABLE ALIEN. THIS DETERMINATION IS BASED ON (complete box 1 or 2):**

☒ A final order of removal against the alien;

☐ The pendency of ongoing removal proceedings against the alien;

☒ Biometric confirmation of the alien's identity and a records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the alien either lacks immigration status or notwithstanding such status is removable under U.S. immigration law; and/or

☐ Statements made by the alien to an immigration officer and/or other reliable evidence that affirmatively indicate the alien either lacks immigration status or notwithstanding such status is removable under U.S. immigration law.

**2. DHS TRANSFERRED THE ALIEN TO YOUR CUSTODY FOR A PROCEEDING OR INVESTIGATION (complete box 1 or 2):**

☐ Upon completion of the proceeding or investigation for which the alien was transferred to your custody, DHS intends to resume custody of the alien to complete processing and/or make an admissibility determination.

### IT IS THEREFORE REQUESTED THAT YOU:

- **Notify DHS** as early as practicable (at least 48 hours, if possible) before the alien is released from your custody.  Please notify DHS by calling ☒ U.S. Immigration and Customs Enforcement (ICE) or ☐ U.S. Customs and Border Protection (CBP) at (781) 359-7709 . If you cannot reach an official at the number(s) provided, please contact the Law Enforcement Support Center at: (802) 872-6020.
- **Maintain custody** of the alien for a period **NOT TO EXCEED 48 HOURS** beyond the time when he/she would otherwise have been released from your custody to allow DHS to assume custody. The alien **must be served with a copy of this form** for the detainer to take effect. This detainer arises from DHS authorities and should not impact decisions about the alien's bail, rehabilitation, parole, release, diversion, custody classification, work, quarter assignments, or other matters
- **Relay this detainer** to any other law enforcement agency to which you transfer custody of the alien.
- Notify this office in the event of the alien's death, hospitalization or transfer to another institution.

☐ If checked: please cancel the detainer related to this alien previously submitted to you on _____ (date).

| J 7198 TAMASI - DO | [signature] 7198 |
|---|---|
| (Name and title of Immigration Officer) | (Signature of Immigration Officer) (Sign in ink) |

**Notice:** If the alien may be the victim of a crime or you want the alien to remain in the United States for a law enforcement purpose, notify the ICE Law Enforcement Support Center at (802) 872-6020. You may also call this number if you have any other questions or concerns about this matter.

**TO BE COMPLETED BY THE LAW ENFORCEMENT AGENCY CURRENTLY HOLDING THE ALIEN WHO IS THE SUBJECT OF THIS NOTICE:**

Please provide the information below, sign, and return to DHS by mailing, emailing or faxing a copy to _____ .

Local Booking/Inmate #: _____    Estimated release date/time: _____

Date of latest criminal charge/conviction: _____    Last offense charged/conviction: _____

This form was served upon the alien on _____ , in the following manner:

☐ In person    ☐ by inmate mail delivery    ☐ other (please specify): _____

| _____ | _____ |
|---|---|
| (Name and title of Officer) | (Signature of Officer) (Sign in ink) |

DHS Form I-247A (3/17)                                                                                              Page 1 of 3

## NOTICE TO THE DETAINEE

The Department of Homeland Security (DHS) has placed an immigration detainer on you. An immigration detainer is a notice to a law enforcement agency that DHS intends to assume custody of you (after you otherwise would be released from custody) because there is probable cause that you are subject to removal from the United States under federal immigration law. DHS has requested that the law enforcement agency that is currently detaining you maintain custody of you for a period not to exceed 48 hours beyond the time when you would have been released based on your criminal charges or convictions. **If DHS does not take you into custody during this additional 48 hour period, you should contact your custodian** (the agency that is holding you now) to inquire about your release. **If you believe you are a United States citizen or the victim of a crime, please advise DHS by calling the ICE Law Enforcement Support Center toll free at (855) 448-6903.**

## NOTIFICACIÓN A LA PERSONA DETENIDA

El Departamento de Seguridad Nacional (DHS) le ha puesto una retención de inmigración. Una retención de inmigración es un aviso a una agencia de la ley que DHS tiene la intención de asumir la custodia de usted (después de lo contrario, usted sería puesto en libertad de la custodia) porque hay causa probable que usted está sujeto a que lo expulsen de los Estados Unidos bajo la ley de inmigración federal. DHS ha solicitado que la agencia de la ley que le tiene detenido actualmente mantenga custodia de usted por un periodo de tiempo que no exceda de 48 horas más del tiempo original que habría sido puesto en libertad en base a los cargos judiciales o a sus antecedentes penales. **Si DHS no le pone en custodia durante este periodo adicional de 48 horas, usted debe de contactarse con su custodio** (la agencia que le tiene detenido en este momento) para preguntar acerca de su liberación. **Si usted cree que es un ciudadano de los Estados Unidos o la víctima de un crimen, por favor avise al DHS llamando gratuitamente al Centro de Apoyo a la Aplicación de la Ley ICE al (855) 448-6903.**

## AVIS AU DETENU OU À LA DÉTENUE

Le Département de la Sécurité Intérieure (DHS) a placé un dépositaire d'immigration sur vous. Un dépositaire d'immigration est un avis à une agence de force de l'ordre que le DHS a l'intention de vous prendre en garde à vue (après celà vous pourrez par ailleurs être remis en liberté) parce qu'il y a une cause probable que vous soyez sujet à expulsion des États-Unis en vertu de la loi fédérale sur l'immigration. Le DHS a demandé que l'agence de force de l'ordre qui vous détient actuellement puisse vous maintenir en garde pendant une période ne devant pas dépasser 48 heures au-delà du temps après lequel vous auriez été libéré en se basant sur vos accusations criminelles ou condamnations. **Si le DHS ne vous prenne pas en garde à vue au cours de cette période supplémentaire de 48 heures, vous devez contacter votre gardien (ne)** (l'agence qui vous détient maintenant) pour vous renseigner sur votre libération. **Si vous croyez que vous êtes un citoyen ou une citoyenne des États-Unis ou une victime d'un crime, s'il vous plaît aviser le DHS en appelant gratuitement le centre d'assistance de force de l'ordre de l'ICE au (855) 448-6903**

## NOTIFICAÇÃO AO DETENTO

O Departamento de Segurança Nacional (DHS) expediu um mandado de detenção migratória contra você. Um mandado de detenção migratória é uma notificação feita à uma agência de segurança pública que o DHS tem a intenção de assumir a sua custódia (após a qual você, caso contrário, seria liberado da custódia) porque existe causa provável que você está sujeito a ser removido dos Estados Unidos de acordo com a lei federal de imigração. ODHS solicitou à agência de segurança pública onde você está atualmente detido para manter a sua guarda por um período de no máximo 48 horas além do tempo que você teria sido liberado com base nas suas acusações ou condenações criminais. **Se o DHS não leva-lo sob custódia durante este periodo adicional de 48 horas, você deve entrar em contato com quem tiver a sua custódia** (a agência onde você está atualmente detido) para perguntar a respeito da sua liberação. **Se você acredita ser um cidadão dos Estados Unidos ou a vítima de um crime, por favor informe ao DHS através de uma ligação gratuita ao Centro de Suporte de Segurança Pública do Serviço de Imigração e Alfândega (ICE) pelo telefone (855) 448-6903.**

THÔNG BÁO CHO NGƯỜI BỊ GIAM

Bộ Nội An (DHS) đã ra lệnh giam giữ di trú đối với quý vị. Giam giữ di trú là một thông báo cho cơ quan công lực rằng Bộ Nội An sẽ đảm đương việc lưu giữ quý vị (sau khi quý vị được thả ra) bởi có lý do khả tín quý vị là đối tượng bị trục xuất khỏi Hoa Kỳ theo luật di trú liên bang. Sau khi quý vị đã thi hành đầy đủ thời gian của bản án dựa trên các tội phạm hay các kết án, thay vì được thả tự do, Bộ Nội An đã yêu cầu cơ quan công lực giữ quý vị lại thêm không quá 48 tiếng đồng hồ nữa. Nếu Bộ Nội An không đến bắt quý vị sau 48 tiếng đồng hồ phụ trội đó, quý vị cần liên lạc với cơ quan hiện đang giam giữ quý vị để tham khảo về việc trả tự do cho quý vị. Nếu quý vị là công dân Hoa Kỳ hay tin rằng mình là nạn nhân của một tội ác, xin vui lòng báo cho Bộ Nội An bằng cách gọi số điện thoại miễn phí 1(855) 448-6903 cho Trung Tâm Hỗ Trợ Cơ Quan Công Lực Di Trú.

# 被拘留者通知書

國土安全部(Department of Homeland Security，簡稱DHS)已經對你發出移民拘留令。移民拘留令為一給予執法機構的通知書，闡明DHS意欲獲取對你的羈押權(若非有此羈押權，你將會被釋放)；因為根據聯邦移民法例，並基於合理的原因，你將會被遞解離美國國境。DHS亦已要求現正拘留你的執法機構，在你因受到刑事檢控或定罪後，而在本應被釋放的程序下，繼續對你作出不超過四十八小時的監管。若你在這附加的四十八小時內，仍未及移交至**DHS**的監管下，你應當聯絡你的監管人(即現正監管你的機構)查詢有關你釋放的事宜。若你認為你是美國公民或為罪案受害者，請致電**ICE**執法部支援中心**(Law Enforcement Support Center)**知會**DHS**，免費電話號碼：**(855)448-6903**。

DEPARTMENT OF HOMELAND SECURITY
U.S. Immigration and Customs Enforcement

## WARRANT OF REMOVAL/DEPORTATION

Subject ID: 360965235
File No: 079 677 654
Event No: WSM1803003685
Date: March 30, 2018

To any Immigration officer of the United States Department of Homeland Security:

OSCAR MANUEL PEGUERO AKA: MEDINA-PEREZ, JOSE
(Full name of alien)

who entered the United States at ___Unknown Place___ on ___Unknown Date___
(Place of entry)                              (Date of entry)

is subject to removal/deportation from the United States, based upon a final order by:

☐ an immigration judge in exclusion, deportation, or removal proceedings

☒ a designated official

☐ the Board of Immigration Appeals

☐ a United States District or Magistrate Court Judge

and pursuant to the following provisions of the Immigration and Nationality Act:
241(a)(5)

I, the undersigned officer of the United States, by virtue of the power and authority vested in the Secretary of Homeland Security under the laws of the United States and by his or her direction, command you to take into custody and remove from the United States the above-named alien, pursuant to law, at the expense of:
Salaries and Expenses, Department of Homeland Security 2018

_____
CRONEN, C M
(Signature of immigration officer)

_____
FIELD OFFICE DIRECTOR
(Title of immigration officer)

March 30, 2018, Boston, MA
_____
(Date and office location)

Alien No: 079 677 654

To be completed by immigration officer executing the warrant: Name of alien being removed:

OSCAR MANUEL PEGUERO

Port, date, and manner of removal: _____

Photograph of alien
removed

Right index fingerprint
of alien removed

_____
(Signature of alien being fingerprinted)

_____
(Signature and title of immigration officer taking print)

Departure witnessed by: _____
(Signature and title of immigration officer)

If actual departure is not witnessed, fully identify source or means of verification of departure:

_____

_____

_____

If self-removal (self-deportation), pursuant to 8 CFR 241.7, check here.   ☐

Departure Verified by: _____
(Signature and title of immigration officer)

COMMONWEALTH OF PENNSYLVANIA

County of: **FRANKLIN COUNTY**

Mag. Dist. No.: **39-2-01**

MDJ Name: Hon.: **GARY L CARTER**

Address: **218 N 2ND ST**

**CHAMBERSBURG, PA 17201**

Telephone **(717) 263-5808**

**BENCH WARRANT**

Commonwealth of Pennsylvania

VS.

NAME and ADDRESS
**MEDINA PEREZ, JOSE SAMUEL**



| | |
|---|---|
| Complaint No: **C201004580**<br>Charging Officer: **BIETSCH, MATTHEW**<br>Date Filed: **5/17/10**<br>OTN: **L 556437-0** | Docket No: **CR-0000274-10**<br>NCIC OFF: **5015**<br>OOC: **5404**<br>WARRANT ID: **MDJS22759829** |

**Warrant Control No:** **39-2-01-BW-0000653-2010**
**Issued For:** **MEDINA PEREZ, JOSE SAMUEL**
**Reason for Warrant:** **Fail to Appear**

| Charge(s): | Offense Date |
|---|---|
| S 75 §3802 §§A1* DUI: GEN IMP/INC OF DRIVING SAFELY | 05/02/10 |
| S 75 §3802 §§C* DUI: HIGHEST RTE OF ALCOHOL (BAC .16+) | 05/02/10 |
| S 35 §780-113 §§A31I MARIJUANA-SMALL AMOUNT PERSONAL USE | 05/02/10 |

**TO POLICE OFFICER:**

In the name of the Commonwealth of Pennsylvania, you are commanded to take the defendant,
**MEDINA PEREZ, JOSE SAMUEL**                    , into custody. When the defendant is taken into custody,
promptly take defendant for a hearing on the bench warrant as provided in Pa.R.Crim.P.150.
Pursuant to Pa.R.Crim.P.150(A)(5)(b), the subject of this warrant shall not be detained without a hearing on this bench
warrant longer than 72 hours, or the close of the next business day if the 72 hours expires on a non-business day.

Witness the hand and official seal of the issuing authority on this _____ 24 day of **June** _____, 2010 .

SEAL

_____
(Signature)

AOPC 417E-07
Crmbw

**DEFENDANT**
**DATE PRINTED:** **6/24/10**

**9:05:31 AM**

Page 1 of 2