**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>SHELLEY M. RICHMOND JOSEPH, et al.<br><br>*Defendants.* | Case No. 19-10141-LTS<br><br>Leave to File Granted on Sept. 17, 2019 |

**MEMORANDUM OF AMICUS CURIAE
<u>THE AD HOC COMMITTEE FOR JUDICIAL INDEPENDENCE</u>**

**INTRODUCTION**

Since 1785, the seal of the Massachusetts Supreme Judicial Court has depicted scales of justice resting in perfect balance.¹ This symbol is aspirational. It dictates that each courtroom proceeding must be kept in neutral balance, so its outcome will be determined not by undue influence, but instead by law and fact. Yet scales of justice do not balance themselves. Judges are supposed to do that. And they are impelled to do so not simply by a seal, but also by a complex framework of legal provisions, including constitutional guarantees of due process and fair and public trials. Enforcing those guarantees, and thus balancing the scales of justice, requires judges to tailor the courthouse

---

¹ The Supreme Judicial Court's historic seal of 1785 reads, "*Nulli Vendemus Nulli Negabimus Justiciam*," a phrase from the Magna Carta that means "We sell justice to no one; we deny justice to no one." *See* Supreme Judicial Court Mission Statement, at https://www.mass.gov/service-details/about-the-supreme-judicial-court. The historic seal appears below:



1

environment to the goal of neutral justice. For that reason, "the courtroom and courthouse premises are subject to the control of the court." *Sheppard v. Maxwell*, 384 U.S. 333, 358 (1966).

The prosecution at issue in this case, if permitted to go forward, will irrevocably tip the scales of justice because it will undermine the very authorities that make balance possible. The federal government alleges that a Massachusetts judge, Shelley Richmond Joseph, and a former Massachusetts court officer, Wesley MacGregor, obstructed justice and a federal proceeding by mismanaging the physical movements of a criminal defendant who had been targeted for federal civil arrest inside a state courthouse. As argued in Joseph's motion to dismiss, this prosecution is contrary to law. Amici, a group of retired Massachusetts judges who have come together as the Ad Hoc Committee for Judicial Independence, write to make two points in support of that motion.

First, as shown below, *Sheppard*'s reference to court control of the courtroom and courthouse premises is not simply ministerial; judges *must* retain this control in order to discharge their constitutional duties and ethical obligations. Matters of courtroom governance often require "difficult judgments"—so difficult, in fact, that the First Circuit is "hesitant to displace" them on appeal, *United States v. DeLuca*, 137 F.3d 24, 34 (1st Cir. 1998), let alone conceive of them as crimes. Second, Judge Joseph's alleged conduct was a quintessential exercise of court control over the courtroom and courthouse premises. When deciding how to respond to a federal officer's attempt to arrest a party at a courthouse, a judge *must* weigh multiple constitutional considerations, including whether facilitating the arrest would impair the targeted party's due process right to be treated fairly, and whether the law enforcement officer's attempts to arrest someone inside a courthouse could chill people's access to our courts, and thus impair both the targeted party's Sixth Amendment right to a public trial and the public's First Amendment right to access court proceedings.

True, in exercising their control over the courtroom and courthouse premises, judges sometimes get it wrong. When they do, they have abused authority dedicated exclusively to the

2

judiciary, and thus it falls exclusively to *the judiciary* to remedy the mistake through the appellate process or judicial misconduct proceedings. But a judge's exercise of the judiciary's power to control courtrooms and courthouses—including the physical movements of parties—cannot be deemed a criminal obstruction of the executive branch. Occasionally frustrating the expectations of the executive branch is a core function of an independent judiciary. If it is a crime for judges to perform judicial functions in a manner contrary to executive preferences, then federal and state prosecutors can prosecute judges whenever they are deemed to have stymied the actions of law enforcement officers inside a courthouse. And members of the public would have every reason to believe that their rights to due process, and to fair and public trials, will give way to the judiciary's interest in avoiding state or federal prison.

## INTERESTS OF THE AMICI

**The Ad Hoc Committee for Judicial Independence** ("the Committee") is a group of retired Massachusetts judges committed to the fair and independent administration of justice.[2] As retired judges, unencumbered by the restraints on the free speech of sitting judges, the Committee's members may speak openly and forcefully in their defense of an independent judiciary. Based on their decades of collective experience in managing the day-to-day challenges encountered in the pursuit of equal justice under the law, the Committee's members believe that an independent judiciary is essential to that task. The judge's ability to dispense the simple justice sought in the myriad encounters with litigants from all walks of life requires a strict adherence to and respect for the long-standing and well-established principle that our courts must be free to exercise that independence without undue interference, including from the federal government.

The federal prosecution of a sitting Massachusetts state court judge, premised on acts undertaken in the normal course of the judge's rightful exercise of judicial discretion and in furtherance

---

[2] The members of the Committee are listed in Appendix A to this memorandum.

of the constitutional obligation to protect the rights of the individual who stands before her, poses a serious and unwarranted threat to the independence of state court judges. The members of the Committee believe that such a prosecution portends an unacceptable risk of criminal jeopardy that inevitably will chill the ability of state court judges to insure equal justice under the law without fear or favor to any person or point of view. In the interest of preserving our judicial independence and the federal and state comity that heretofore has prevailed in the Commonwealth, the Committee submits this brief to apprise the Court of this risk and the concomitant need to protect state court judges who seek to do no more than fulfill their oath of office.

## BACKGROUND

Amici refer to and adopt the statement of facts contained in Judge Joseph's memorandum in support of her motion to dismiss. D.E. 60. As noted therein, there is no allegation that Judge Joseph engaged in public corruption (such as bribes or kickbacks), nor any allegation that she had any personal financial interests or relationships that conflicted with her obligations as a judge. There is also no allegation that Judge Joseph specifically ordered the court officer to release A.S. through any particular door, or that traffic through the rear door was forbidden. The core criminal allegation seems to be that Judge Joseph had reason to know that an ICE officer was waiting outside the courtroom doors (in or near the lobby), and nevertheless authorized the defendant to return to the lockup where he might ultimately leave via a different exit.

**ARGUMENT**

While Judge Joseph has presented the Court with persuasive legal authority supporting the dismissal of the indictment, Amici, as retired judges, speak with the perspective of many decades of experience in explaining how the judge's conduct in this case was the product of what is well understood to be a judge's broad discretion to manage her courtroom, including the movement and conduct of the parties who appear before her. As demonstrated below, fealty to constitutional and ethics provisions requires judges to retain authority over the courtroom and courthouse environment.

**I.      Our legal system requires judges to control courtroom and courthouse environments.**

It is well established that "the courtroom and courthouse premises are subject to the control of the court." *Sheppard*, 384 U.S. at 358. But why? The answer is not simply that judges want to control the environments where they do business. It's also that judges *must* control these environments so they can meaningfully fulfill their constitutionally-prescribed responsibilities to parties and to the public, and balance the complex legal and practical considerations that often operate in tension with one another.

**A.      Broad inherent powers necessarily arise from the judiciary's duty of neutrality.**

The necessity for judicial control over the courtroom environment starts with a judge's duty to be impartial to litigants. Under the due process protections of the Fifth and Fourteenth Amendments to the U.S. Constitution, every litigant is entitled to an impartial judge. *See Tumey v. State of Ohio*, 273 U.S. 510, 523 (1927) (due process violated where judge failed to be impartial); *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 821-825 (1986) (same); *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 883-884; 886 (2009) (same).

For Massachusetts judges, these principles are also enshrined in the Massachusetts Declaration of Rights which recognizes that "[i]t is essential to the preservation of the rights of every individual, his life, liberty, property and character, that there be an impartial interpretation of the laws, and

administration of justice." Mass. Const., Pt. I, art. 29. Accordingly, "[i]t is the right of every citizen to be tried by judges as free, impartial and independent as the lot of humanity will admit." *Id.*; *see also In re Enforcement of a Subpoena*, 463 Mass. 162, 169-172 (2012) (explaining "the imperative of the Massachusetts Constitution that judges act free from outside or distracting influences or apprehensions on matters that come before them"). The Declaration of Rights also guarantees the right to "obtain right and justice freely, and without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws." *First Justice of Bristol Div. of Juvenile Court Dep't v. Clerk-Magistrate of Bristol Div. of Juvenile Court Dep't*, 438 Mass. 387, 396–97 (2003) (citing Mass. Const., Part I, art. 11). The Massachusetts Constitution also expressly protects the separation of powers:

> In the government of this commonwealth, the legislative department shall never exercise the executive and judicial powers, or either of them: the executive shall never exercise the legislative and judicial powers, or either of them: the judicial shall never exercise the legislative and executive powers, or either of them: to the end it may be a government of laws and not of men.

Mass. Const., Part I, art. 30.

Massachusetts courts have recognized that "from these lofty principles . . . flows the concept of inherent judicial powers, whose exercise is essential to the function of the judicial department, to the maintenance of its authority, [and] to its capacity to decide cases." *First Justice of Bristol Div. of Juvenile Court Dep't v. Clerk-Magistrate of Bristol Div. of Juvenile Court Dep't*, 438 Mass. 387, 397 (2003) (quotation marks omitted). This "[i]nherent judicial authority is 'not limited to adjudication, but includes certain ancillary functions such as rule-making and judicial administration,'" because *all* of those authorities "'are essential if the courts are to carry out their constitutional mandate.'" *Id.*; *see also O'Coin's, Inc. v. Treasurer of the County of Worcester*, 362 Mass. 507, 510 (1972). Thus, the notion of "inherent" authorities is not some judicial power grab. Rather, it is the recognition that judges *must* possess certain authorities

so they can fulfill their constitutional obligations, and these authorities necessarily include not only adjudication but also administrative matters.

> **B. Judicial authority over the courthouse environment is a necessary consequence of a judge's constitutional and ethical duties to regulate the conduct of third parties.**

The judiciary's inherent authorities must include control of the courthouse environment, particularly given various constitutionally-prescribed duties concerning third parties. For example, due process "requires that the accused receive a trial by an impartial jury free from outside influences." *Sheppard*, 384 U.S. at 362. "Neither prosecutors, counsel for defense, the accused, witnesses, court staff nor enforcement officers coming under the jurisdiction of the court should be permitted to frustrate its function." *Id.* at 363; *Wood v. Georgia*, 370 U.S. 375, 383 (1962) ("[T]he right of courts to conduct their business in an untrammeled way lies at the foundation of our system of government…"); *Berner v. Delahanty*, 129 F.3d 20, 26-27 (1st Cir. 1997) ("Within this staid environment [of the courtroom], the presiding judge is charged with the responsibility of maintaining proper order and decorum").

Judges must also exercise authority over third parties to safeguard both the Sixth Amendment right to a public trial for criminal defendants, *Waller v. Georgia*, 467 U.S. 39 (1984), and the First Amendment right of the public and press to attend such trials. *Globe Newspaper Co. v. Super. Ct. of the County of Norfolk*, 457 U.S. 596, 603-04 (1982). As the Second Circuit has said, "[c]ontrol by the courts is essential, because the judiciary is uniquely attuned to the delicate balance between defendants' Sixth Amendment rights to public trial, the public and press's First Amendment rights to courtroom access, and the overarching security considerations that are unique to the federal facilities containing courtrooms." *United States v. Smith*, 426 F.3d 567, 576 (2d Cir. 2005); *see also Commonwealth v. Maldonado*, 466 Mass. 742, 748 (2014) ("[O]thers may have chosen not to enter the court room to avoid the need

to identify themselves, perhaps because they feared that identifying themselves might bring them to the attention of the police or immigration authorities . . . .").

Judicial ethics also require a judge to control the courtroom environment "[i]n keeping with th[e] *constitutional imperative*" to assure the neutral administration of justice, and these rules cover matters that extend well beyond adjudication. *See* Mass. SJC, Com. on Jud. Ethics, *Public Outreach in Support of the Rule of Law and Judicial Independence*, 2017 WL 770139, at *1 (Feb. 21, 2017) (emphasis added); *see also* Mass. SJC, Com. On Jud. Ethics, *Speaking at Community Family Day*, 2016 WL 4720474, at *1 (June 8, 2016) ("[Y]ou must be careful to avoid conveying . . . that law enforcement personnel are in a special position to influence you."). In Massachusetts, as elsewhere, judges must "promote[] public confidence in the independence, integrity, and impartiality of the judiciary," S.J.C. Rule 3:09, Canon 1, Rule 1.2. Ethics rules consequently forbid judges from "convey[ing] or permit[ting] others to convey the impression that any person or organization is in a position to influence the judge," *id.* at Canon 2, Rule 2.4(c).[3] Massachusetts judges must "perform the duties of judicial office, *including administrative duties*, without bias, prejudice, or harassment." Canon 2, Rule 2.3(A) (emphasis added). Judges must also "require court personnel and others subject to the judge's direction and control"— i.e., court personnel—"to act in a manner consistent with the judge's obligations under this Code." *Id.* at Canon 2, Rule 2.12(A).

These rules appropriately acknowledge that judges must exercise authority throughout the courthouse environment. As the American Bar Association has recognized, judges should "establish such *physical surroundings* as are appropriate to the administration of justice."[4]

---

[3] *See also* S.J.C. Rule 3:09, Canon 2, Rule 2.6 (judge must ensure the right to be heard); Canon 3, Rule 3.1 (judges shall not engage in extrajudicial activities that would appear to undermine their judicial duties); Canon 3, Rule 3.12 (judges shall not accept compensation for extrajudicial activity if it would undermine judicial independence, integrity, or impartiality).

[4] American Bar Ass'n, *ABA Standards for Criminal Justice: Special Functions of the Trial Judge*, Standard 6-1.1(b) (3d ed., 2000); *id.* at 6-1.2(a) ("in endeavoring to educate the community, the judge should avoid

**II.     The conduct alleged in this case cannot, as a matter of law, be prosecuted as obstruction.**

Judge Joseph has argued that she is immune from prosecution for obstruction of justice for her actions on April 2, 2018. That is correct. Although the Supreme Court has suggested in dicta that a judge is normally "not absolutely immune from criminal liability," *Mireles v. Waco*, 502 U.S. 9, 9 n.1 (1991); *O'Shea v. Littleton*, 414 U.S. 488, 503 (1974), Judge Joseph persuasively argues that a state judge's immunity from criminal prosecution can be overcome only by allegations of public corruption, abuse of office for personal gain, or violation of a statute enacted pursuant to Section 5 of the Fourteenth Amendment. There are no such allegations here.

In all events, this case does not require the Court to define the outer boundaries of judicial immunity, or the Tenth Amendment anti-commandeering doctrine, or the other protections against prosecution raised by Judge Joseph. Whatever the boundaries of those protections might be, at their core they must protect a state judge from being prosecuted for "obstruction" merely because the judge exercised judicial control of a state courthouse in a manner that was inconsistent with federal executive preferences. Given the Supreme Court's clear pronouncement that "the courtroom and courthouse premises are subject to the control of the court," *Sheppard*, 384 U.S. at 358, and given the showing in Part I above that this control is *required* by constitutional principles and their attendant rules of ethics, a state judge cannot permissibly be prosecuted for obstruction for managing her courtroom in a way that allegedly made a party's federal civil arrest less likely rather than more likely.[5]

---

activity which would give the appearance of impropriety or bias"); *id.* at 6-3.2 ("The trial judge should endeavor to maintain secure court facilities. In order to protect the dignity and decorum of the courtroom, this should be accomplished in the least obtrusive and disruptive manner, with *an effort made to minimize any adverse impact*.") (emphasis added).

[5] Because a judge is empowered to control the courthouse environment, a court officer likewise cannot commit "obstruction" by carrying out orders issued by a judge in the exercise of those powers. *See* Mass. Code of Judicial Conduct, Rule 2.12 (judges required to control conduct of court personnel).

9

When a law enforcement officer seeks to arrest a party at a state courthouse, a judge's handling of that party's physical movements implicates the judge's constitutional duty of impartiality. *See Tumey*, 273 U.S. at 523; *Aetna Life Ins. Co.*, 475 U.S. at 821-825; *Caperton*, 556 U.S. at 883-884, 886. In fulfilling this duty, a judge may feel that she cannot take any action that could be construed as supporting, favoring, or facilitating the arrest of a party. For example, if the courtroom has two exits, the judge might conclude that she must not take any action that effectively requires the targeted party to use the exit at where the law enforcement officer is stationed. In Massachusetts, a judge might be particularly wary of facilitating the arrest of a party pursuant to an immigration detainer, because the Massachusetts Supreme Judicial Court has held that undertaking such an arrest would exceed the court's authority. *Lunn v. Commonwealth*, 477 Mass. 517 (2017).

Additionally, a judge's decisions about how to handle the physical movements of someone targeted for arrest squarely implicates her constitutional duties to safeguard the targeted party's right to a fair and public trial, and the public's right to access courtroom proceedings. These decisions would not be "immune from Sixth Amendment inquiry," because any apparent ratification of or acquiescence in the actions of the law enforcement officer could be understood to chill parties and members of the public from attending court proceedings. *See Smith*, 426 F.3d at 572.[6] How to handle this circumstance is therefore exactly the kind of "difficult judgment[]" about "matters of courtroom governance" that *must* be made by the judge because it "require[s] 'a sensitive appraisal of the climate surrounding a trial and a prediction as to the potential security or publicity problems that may arise during the proceedings.'" *DeLuca*, 137 F.3d at 34.

To say that the judiciary retains full authority to manage the physical movements of a party targeted for arrest, however, is *not* to say that any action a judge takes in this regard is necessarily

---

[6] *See also DeLuca,* 137 F.3d at 33-34 (discussing potential chilling effect of partial closure of courtroom); *United States v. Brazel*, 102 F.3d 1120, 1155-1156 (11th Cir. 1997) (identification procedure constituted partial closure of courtroom).

correct. If the executive believes that a particular judge has exercised his or her powers inappropriately, it has remedies within the court system, such as appeal or judicial misconduct procedures. In Massachusetts, for example, complaints of judicial misconduct are investigated through the Commission on Judicial Conduct. The Commission's proceedings may result in penalties ranging from a written reprimand to the removal of the judge. *See* G.L. c. 211C, § 8. These disciplinary systems are well established and highly effective, and (unlike the prosecution here) they do not threaten the separation of powers, the independent judiciary, and the federalist structure of the United States. *Cf. In re Enforcement of a Subpoena*, 463 Mass. at 172 & n.5 (explaining that, if a prosecutor could bring about "an intrusive examination" of a judge's thought processes in making a decision, the resulting pressure "would amount to an enormous looming burden that could not help but serve as an 'external influence or pressure,' inconsistent with the value we have placed on conscientious, intelligent, and independent decision making"); *see also In re: Shelley M. Joseph*, No. OE-140, slip op. at 33 (Mass. Aug. 13, 2019) (Kafker, J, concurring) ("I cannot rule out the possibility that the independence of the State judiciary itself may be implicated by the prosecution [of Judge Joseph].").

As retired judges, the Committee's members can state with confidence that, if this prosecution is permitted to proceed, the practical consequences for the Massachusetts judiciary will be devastating. Saying "no" to executive actors is part of every judge's job. Yet, if Judge Joseph is prosecuted, every Massachusetts judge in every Massachusetts courthouse will feel a constant external pressure to refrain from actions that might antagonize federal officials. That pressure will be particularly acute in cases where noncitizens are before the court as parties or witnesses. Judges cannot be impartial in the execution of their judicial duties if they are under pressure to ingratiate themselves to federal prosecutors.

## CONCLUSION

Judges are invested with the power to control their courthouses and courts. They are also invested with the power to check, limit, and reject the actions of the executive. If a judge errs in the exercise of those powers, there are remedies. But federal prosecution and jail is not one of them. The Committee respectfully submits that Judge Joseph's motion to dismiss should be allowed.

September 17, 2019

Respectfully Submitted,

THE AD HOC COMMITTEE FOR
JUDICIAL INDEPENDENCE,

By Their Attorneys,

/s/ Matthew R. Segal
Matthew R. Segal, BBO # 654489
Daniel McFadden, BBO # 676612
AMERICAN CIVIL LIBERTIES UNION
 FOUNDATION OF MASSACHUSETTS, INC.
211 Congress Street
Boston, MA 02110
617.482.3170
msegal@aclum.org
dmcfadden@aclum.org

## CERTIFICATE OF SERVICE

      I hereby certify that the foregoing document was served on counsel for the parties today through the Court's CM/ECF system.

September 17, 2019                                 */s/ Matthew R. Segal*
                                                                    Matthew R. Segal

# APPENDIX A

## Members of the Ad Hoc Committee for Judicial Independence

Roderick L. Ireland, Chief Justice, Supreme Judicial Court, Ret.

Fernande R.V. Duffly, Supreme Judicial Court, Ret.

John M. Greaney, Supreme Judicial Court, Ret.

Geraldine S. Hines, Supreme Judicial Court, Ret.

Barbara A. Dortch-Okara, Chief Justice for Administration and Management, Ret.

Lynda M. Connolly, Chief Justice, District Court, Ret.

Suzanne V. DelVecchio, Chief Justice, Superior Court, Ret.

Martha P. Grace, Chief Justice, Juvenile Court, Ret.

Janis M. Berry, Appeals Court, Ret.

Francis R. Fecteau, Appeals Court, Ret.

Mel L. Greenberg, Appeals Court, Ret.

Rudolph Kass, Appeals Court, Ret.

David A. Mills, Appeals Court, Ret.

William H. Abrashkin, Housing Court, Ret.

Carol S. Ball, Superior Court, Ret.

Thomas P. Billings, Superior Court, Ret.

Isaac Borenstein, Superior Court, Ret.

Nonnie S. Burnes, Superior Court, Ret.

Paul A. Chernoff, Superior Court, Ret.

Albert S. Conlon, District Court, Ret.

John C. Cratsley, Superior Court, Ret.

Judith Nelson Dilday, Probate & Family Court, Ret.

Raymond G. Dougan, Boston Municipal Court, Ret.

Wilbur P. Edwards, Housing Court, Ret.

Ellen Flatley, District Court, Ret.

Thayer Fremont-Smith, Superior Court, Ret.

Edward M. Ginsburg, Probate & Family Court, Ret.

Christina L. Harms, Probate & Family Court, Ret.

Leslie E. Harris, Juvenile Court, Ret.

David E. Harrison, District Court, Ret.

Emogene Johnson Smith, District Court, Ret.

Bertha D. Josephson, Superior Court, Ret.

Leila R. Kern, Superior Court, Ret.

Daniel J. Klubock, Boston Municipal Court, Ret.

Joseph Lian Jr., Probate & Family Court, Ret.

Edward P. Leibensperger, Superior Court, Ret.

John S. McCann, Superior Court, Ret.

Christine M. McEvoy, Superior Court, Ret.

James H. McGuinness, District Court, Ret.

Frances A. McIntyre, Superior Court, Ret.

Brian R. Merrick, District Court, Ret.

Thomas T. Merrigan, District Court, Ret.

Christopher J. Muse, Superior Court, Ret.

Tina S. Page, Superior Court, Ret.

Gregory L. Phillips, District Court, Ret.

Regina L. Quinlan, Superior Court, Ret.

Edward J. Reynolds, District Court, Ret.

Mary-Lou Rup, Superior Court, Ret.

Ernest L. Sarason, District Court/Boston Municipal Court, Ret.

M. John Schubert, District Court, Ret.

Severlin B. Singleton III, District Court, Ret.

Charles T. Spurlock, Superior Court, Ret.

Charles W. Trombly Jr., Land Court, Ret.

Paul E. Troy, Superior Court, Ret.

Raymond P. Veary Jr., Superior Court, Ret.

Augustus F. Wagner Jr., Superior Court, Ret.

Lewis L. Whitman, District Court, Ret.

H. Gregory Williams, District Court, Ret.

Milton L. Wright, District Court, Ret.

Margaret A. Zaleski, District Court, Ret.

Elliott L. Zide, District Court, Ret.