UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Crim. No. 19-10141-LTS |
| SHELLEY M. RICHMOND JOSEPH, | ) | |
| | ) | |
| Defendant. | ) | |

# UNITED STATES' OPPOSITION TO DEFENDANT JOSEPH'S MOTION TO DISMISS THE INDICTMENT

*(Leave to file granted on October 18, 2019)*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ........................................................................................................... 1

FACTS ALLEGED IN THE INDICTMENT ............................................................... 1

STANDARD OF REVIEW ............................................................................................. 7

ARGUMENT .................................................................................................................. 7

    1.      Judicial Immunity Does Not Apply in a Criminal Case ......................................... 7

    2.      The Indictment States an Offense Against Judge Joseph ..................................... 16

          a.      The Indictment Alleges that Judge Joseph Acted "Corruptly" ................. 16

          b.      The Indictment Alleges that Judge Joseph Obstructed or Impeded a "Proceeding" ......................................................................... 21

          c.      Section 1512(c)(2) Is Not Limited to Evidence-Impairment Crimes ................................................................................................... 26

    3.      The Prosecution of Judge Joseph Does Not Violate the Tenth Amendment ...................................................................................................... 29

    4.      Neither Section 1505 Nor Section 1512(c)(2) Is Unconstitutionally Vague ............................................................................................................... 32

    5.      The Court Should Reject the Additional Arguments Raised by Judge Joseph's Amici .................................................................................................. 33

CONCLUSION ............................................................................................................. 35

# TABLE OF AUTHORITIES

## CASES

*Aetna Life Ins. Co. v. Lavoie*,
475 U.S. 813 (1986) ................................................................................................... 35

*Antoine v. Byers & Anderson, Inc.*,
508 U.S. 429 (1993) ..................................................................................................... 8

*Arthur Andersen LLP v. United States*,
544 U.S. 696 (2005) ............................................................................................. 17, 18

*Begay v. United States*,
553 U.S. 137 (2008) ................................................................................................... 27

*Braatelien v. United States*,
147 F.2d 888 (8th Cir. 1945) ..................................................................................... 11

*Buckley v. Fitzsimmons*,
509 U.S. 259 (1993) ..................................................................................................... 8

*Burns v. Reed*,
500 U.S. 478 (1991) ..................................................................................................... 8

*Caperton v. A.T. Massey Coal Co.*,
556 U.S. 868 (2009) ................................................................................................... 35

*City & County of San Francisco v. Sessions*,
349 F. Supp. 3d 924 (N.D. Cal. 2018),
*appeal docketed,* No. 18-17308 (9th Cir. Dec. 4, 2018) ....................................... 31

*City of Chicago v. Sessions*,
321 F. Supp. 3d 855 (N.D. Ill. 2018) ........................................................................ 31

*Commonwealth v. Berry*,
167 A.3d 100 (Pa. Super. 2017) ................................................................................ 13

*Commonwealth v. Tartar*,
239 S.W.2d 265 (Ky. App. 1951) ............................................................................... 9

*Ex parte Virginia*,
100 U.S. 339 (1879) ............................................................................................ 7, 8, 11

*Goldstein v. Galvin*,
719 F.3d 16 (1st Cir. 2013) ......................................................................................... 8

ii

*In re Grand Jury Investig.*,
    545 F.3d 21 (1st Cir. 2008) ............................................................. 35

*In re Kendall*,
    712 F.3d 814 (3d Cir. 2013) ............................................... 11, 15, 16

*In re McNair*,
    187 A. 498 (Pa. 1936) ...................................................................... 9

*In re Petition of Dwyer*,
    406 A.2d 1355 (Pa. 1979) ............................................................. 16

*In re Weber*,
    21 N.E.3d 92 (Ind. 2014) .............................................................. 13

*Kugler v. Helfant*,
    421 U.S. 117 (1975) ...................................................................... 11

*Loughrin v. United States*,
    573 U.S. 351 (2014) ...................................................................... 27

*Lugo-Diaz v. United States*,
    138 S. Ct. 1303 (2018) .................................................................... 4

*Lunn v. Commonwealth*,
    78 N.E.3d 1143 (Mass. 2017) .................................................. 2, 31

*Marinello v. United States*,
    138 S. Ct. 1101 (2018) .................................................................. 32

*Michigan v. Brennan*,
    File No. 18-3155-FY (53rd District Court, Livingston County, Mich. Dec. 13, 2018) ....... 13

*Mireles v. Waco*,
    502 U.S. 9 (1991) ........................................................................... 7

*Murphy v. NCAA*,
    138 S. Ct. 1461 (2018) .................................................................. 30

*Nystedt v. Nigro*,
    700 F.3d 25 (1st Cir. 2012) ............................................................ 8

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ....................................................................... 7

*Pope v. United States*,
    323 U.S. 1 (1944) ............................................................................................... 8

*Printz v. United States*,
    521 U.S. 898 (1997) .......................................................................................... 30

*Republic of Iraq v. Beaty*,
    556 U.S. 848 (2009) .......................................................................................... 28

*Rodriguez v. United States*,
    139 S. Ct. 2772 (2019) ...................................................................................... 29

*Roma Construction Co. v. aRusso*,
    96 F.3d 566 (1st Cir. 1996) ............................................................................... 19

*Ryan v. Immigration & Customs Enforcement*,
    382 F. Supp. 3d 142 (D. Mass. 2019),
    *appeal docketed,* No. 19-1838 (1st Cir. Sept. 5, 2019) ........................... 31, 34, 35

*Skilling v. United States*,
    561 U.S. 358 (2010) .......................................................................................... 33

*State v. Brady*,
    172 A.3d 550 (N.J. Super.), *appeal denied*, 177 A.3d 109 (2017) ...................... 13

*Tumey v. States of Ohio*,
    273 U.S. 510 (1927) .......................................................................................... 35

*United States v. Abrams*,
    427 F.2d 86 (2d Cir. 1970) ............................................................................... 24

*United States v. Acevedo-Hernandez*,
    898 F.3d 150 (1st Cir. 2018) ............................................................................. 11

*United States v. Aguilar*,
    515 U.S. 593 (1995) ................................................................................... *passim*

*United States v. Ahrensfield*,
    698 F.3d 1310 (10th Cir. 2012) ........................................................................ 29

*United States v. Anderson*,
    798 F.2d 919 (7th Cir. 1986) ............................................................................ 12

*United States v. Ash*,
    No. 19-mj-9341-UA (S.D.N.Y. filed Oct. 4, 2019) ............................................ 12

*United States v. Baumgartner*,
   581 F. App'x 522 (6th Cir. 2014) ............................................................... 11

*United States v. Bedoy*,
   827 F.3d 495 (5th Cir. 2016) ..................................................................... 18

*United States v. Bejasa*,
   904 F.2d 137 (2d Cir. 1990)...................................................................... 24

*United States v. Benz*,
   282 U.S. 304 (1931).................................................................................... 8

*United States v. Binette*,
   828 F. Supp. 2d 402 (D. Mass. 2011) ....................................................... 23

*United States v. Brady*,
   168 F.3d 574 (1st Cir. 1999) ..................................................................... 19

*United States v. Brenson*,
   104 F.3d 1267 (11th Cir. 1997) ........................................................... 28, 33

*United States v. Brissette*,
   919 F.3d 670 (1st Cir. 2019)....................................................................... 7

*United States v. Callipari*,
   368 F.3d 22 (1st Cir. 2004), *vacated on other grounds*, 543 U.S. 1098 (2005) ................. 19

*United States v. Carson*,
   560 F.3d 566 (6th Cir. 2009) ..................................................................... 19

*United States v. Chaplin*,
   54 F. Supp. 926 (S.D. Cal. 1944)................................................................ 9

*United States v. Claiborne*,
   727 F.2d 842 (9th Cir. 1984) ..................................................................... 12

*United States v. Cochran*,
   682 F. App'x 828 (11th Cir. 2017)............................................................. 11

*United States v. Coleman*,
   No. 08-CR-104, 2010 WL 5108607 (M.D. Pa. Dec. 9, 2010)........................... 14

*United States v. Coumaris*,
   399 F.3d 343 (D.C. Cir. 2005).................................................................... 13

*United States v. DeLaughter*,
    Crim. No. 09-0002-GHD-SAA (N.D. Miss. July 30, 2009)................................ 12

*United States v. DeLuca*,
    137 F.3d 24 (1st Cir. 1998) ........................................................................ 8

*United States v. Farrell*,
    921 F.3d 116 (4th Cir. 2019), *cert. denied,* 2019 WL 4923330 (Oct. 7, 2019) .................. 13

*United States v. Flaherty*,
    Crim. No. 15-10127-MLW, 2015 WL 6965099 (D. Mass. Nov. 11, 2015) ...................... 14

*United States v. Forman*,
    71 F.3d 1214 (6th Cir. 1995) ...................................................................... 13

*United States v. Friske*,
    640 F.3d 1288 (11th Cir. 2011) ................................................................... 18

*United States v. Fruchtman*,
    421 F.2d 1019 (6th Cir. 1970) .................................................................... 21

*United States v. Gonzalez*,
    540 F. App'x 967 (11th Cir. 2014) ............................................................... 33

*United States v. Grubb*,
    11 F.3d 426 (4th Cir. 1993) ....................................................................... 12

*United States v. Harriss*,
    347 U.S. 612 (1954)................................................................................. 32

*United States v. Hastings*,
    681 F.2d 706 (11th Cir. 1982) .......................................................... 9, 10, 11

*United States v. Hoffman*,
    Crim. No. 12-40032-TSH (D. Mass. July, 19, 2013)......................................... 14

*United States v. Howard*,
    569 F.2d 1331 (5th Cir. 1978) .............................................................. 28, 33

*United States v. Howze*,
    Crim. No. 16-00130-CCC (W.D. Pa. Aug. 22, 2016)........................................ 14

*United States v. Kanchanalak*,
    37 F. Supp. 2d 1 (D.D.C. 1999) ................................................................. 33

*United States v. Kantengwa*,
    781 F.3d 545 (1st Cir. 2015) ........................................................................ 23

*United States v. Kumar*,
    617 F.3d 612 (2d Cir. 2010)......................................................................... 28

*United States v. Leo*,
    941 F.2d 181 (3d Cir. 1991)......................................................................... 23

*United States v. Lewis*,
    657 F.2d 44 (4th Cir. 1981) ......................................................................... 23

*United States v. Marquardo*,
    149 F.3d 36 (1st Cir. 1998) .......................................................................... 32

*United States v. Martinez*,
    862 F.3d 223 (2d Cir. 2017),
    *vacated on other grounds sub nom. Rodriguez v. United States,* 139 S. Ct. 2772 (2019)... 29

*United States v. Moreland*,
    Crim. No. 17-00066 (M.D. Tenn. May 24, 2018) ....................................... 12

*United States v. Morosco*,
    822 F.3d 1 (1st Cir. 2016)............................................................................. 32

*United States v. Naeem*,
    389 F. App'x 245 (4th Cir. 2010)................................................................. 24

*United States v. Nixon*,
    816 F.2d 1022 (5th Cir. 1987) ..................................................................... 12

*United States v. Noriega*,
    117 F.3d 1206 (11th Cir. 1997) ................................................................... 34

*United States v. Pac. Gas & Elec. Co.*,
    153 F. Supp. 3d 1076 (N.D. Cal. 2015) ...................................................... 33

*United States v. Payner*,
    447 U.S. 727 (1980)..................................................................................... 34

*United States v. Perez*,
    575 F.3d 164 (2d Cir. 2009).................................................................. 22, 23

*United States v. Petruk*,
    781 F.3d 438 (8th Cir. 2015) ....................................................................... 18

*United States v. Phillips*,
   583 F.3d 1261 (10th Cir. 2009) ................................................................. 18, 29

*United States v. Poindexter*,
   951 F.2d 369 (D.C. Cir.1991) ...................................................................... 19

*United States v. Price*,
   951 F.2d 1028 (9th Cir. 1991) ..................................................................... 23

*United States v. Quattrone*,
   441 F.3d 153 (2d Cir. 2006)........................................................................ 19

*United States v. Rainey*,
   757 F.3d 234 (5th Cir. 2014) ................................................................ 14, 15

*United States v. Ramos*,
   537 F.3d 439 (5th Cir. 2008) ................................................................ 22, 24

*United States v. Reich*,
   479 F.3d 179 (2d Cir. 2007)........................................................................ 18

*United States v. Ring*,
   628 F. Supp. 2d 195 (D.D.C. 2009)............................................................ 28

*United States v. Rodriguez-Rivera*,
   918 F.3d 32 (1st Cir. 2019) ......................................................................... 7

*United States v. Schwartz*,
   924 F.2d 410 (2d Cir. 1991)........................................................................ 23

*United States v. Smith*,
   831 F.3d 1207 (9th Cir. 2016) ............................................................. 13, 32

*United States v. Stewart*,
   744 F.3d 17 (1st Cir. 2014)........................................................................ 7

*United States v. Sutherland*,
   921 F.3d 421 (4th Cir. 2019),
   *petition for cert. filed,* No. 19-433 (Oct. 2, 2019)............................................ 18

*United States v. Tzeuton*,
   370 F. App'x 415 (4th Cir. 2010) ............................................................... 23

*United States v. Volpendesto*,
   746 F.3d 273 (7th Cir. 2014) ...................................................................... 28

*United States v. Wachtler*,
    Crim. No. 93-00058-AET (D.N.J. Mar. 31, 1993) ............................................................ 12

*United States v. Walker*,
    Crim. No. 14-00093-DCB-FKB (S.D. Miss. Oct. 7, 2014) ................................................. 12

*United States v. Walker-Couvertier*,
    860 F.3d 1 (1st Cir. 2017),
    *cert. denied sub nom. Lugo-Diaz v. United States,* 138 S. Ct. 1303 (2018) ......................... 4

*Yates v. United States*,
    135 S. Ct. 1074 (2015)...................................................................................................... 27

## <u>Statutes, Rules and Regulations</u>

8 U.S.C. § 1226(a) ................................................................................................................. 22

8 U.S.C. § 1229a ................................................................................................................... 24

8 U.S.C. § 1229a(b) .............................................................................................................. 24

8 U.S.C. § 1231(a)(5)....................................................................................................... 24, 25

18 U.S.C. § 4......................................................................................................................... 11

18 U.S.C. § 371 .................................................................................................................... 13

18 U.S.C. § 875(c) ................................................................................................................ 13

18 U.S.C. § 924(e)(2)(B)(ii) ................................................................................................. 27

18 U.S.C. § 1503 ............................................................................................................. *passim*

18 U.S.C. § 1505 ............................................................................................................. *passim*

18 U.S.C. § 1512 ........................................................................................................ 11, 14, 27

18 U.S.C. § 1512(a)(2)(B)(ii) ............................................................................................... 27

18 U.S.C. § 1512(b) .............................................................................................................. 17

18 U.S.C. § 1512(b)(2)(B) .................................................................................................... 27

18 U.S.C. § 1512(c) ......................................................................................................... 12, 26

18 U.S.C. § 1512(c)(1)................................................................................................. 26, 27, 28

18 U.S.C. § 1512(c)(2) ............................................................................................ *passim*

18 U.S.C. § 1515(a)(1)(C) ................................................................................. 21, 22, 23

18 U.S.C. § 1515(b) ....................................................................................................... 19

18 U.S.C. § 1519 ............................................................................................................ 27

18 U.S.C. § 1623 ............................................................................................................ 12

18 U.S.C. § 2232(c) ....................................................................................................... 11

42 U.S.C. § 1983 ............................................................................................................ 19

Fed. R. Crim. P. 12(b)(3)(B)(v) ....................................................................................... 7

Pub. L. No. 107-204, Tit. XI, § 1102, 116 Stat. 745 ..................................................... 29

8 C.F.R. § 1208.31(c) .................................................................................................... 25

8 C.F.R. § 1208.31(e)-(g), (g)(2)(ii) .............................................................................. 25

8 C.F.R. § 1241.8(a) ...................................................................................................... 24

8 C.F.R. § 1241.8(a)(1)-(3) ...................................................................................... 24-25

8 C.F.R. § 1241.8(b) ...................................................................................................... 25

8 C.F.R. § 1241.8(e) ...................................................................................................... 25

142 Cong. Rec. § 11605-02 ........................................................................................... 19

142 Cong. Rec. § 11607-608 ......................................................................................... 19

## INTRODUCTION

The United States respectfully requests that the Court deny defendant Shelley Richmond Joseph's motion to dismiss the indictment because her challenges are without merit. As explained below, judicial immunity does not apply in a criminal case; the indictment more than adequately alleges that Judge Joseph acted "corruptly" to impede a "proceeding" as those terms are used in 18 U.S.C. §§ 1505 and 1512(c)(2), and Section 1512(c)(2) is not limited to evidence-impeachment crimes; and neither Section 1505 nor Section 1512(c)(2) violates the Tenth Amendment or is unconstitutionally vague.

## FACTS ALLEGED IN THE INDICTMENT

On Friday, March 30, 2018, Newton Police arrested an undocumented immigrant ("A.S.") and charged him with one count of being a fugitive from justice from Pennsylvania (the "fugitive charge") and two counts of narcotics possession (the "drug charges"). Ind. ¶ 6. A.S. was scheduled to be arraigned in Newton District Court by Judge Joseph the next business day, Monday, April 2, 2018. *Id.*

Fingerprints taken by Newton Police on March 30 and submitted to a national law enforcement database showed that A.S. had twice been deported and was subject to an immigration order prohibiting him from reentering the United States until 2027. *Id.* ¶ 7. An Immigration Officer with Immigration and Customs Enforcement ("ICE"), which is part of the U.S. Department of Homeland Security ("DHS"), issued a federal immigration detainer (the "detainer") and a warrant of removal (the "warrant") for A.S. and sent them to the Newton Police. *Id.* ¶ 8. The detainer asked Newton Police to notify ICE before any release of A.S., relay the detainer to any other law enforcement agency to which Newton Police transferred A.S., and maintain custody of A.S. for up

to 48 hours so that ICE could take custody of him. *Id.* The detainer also stated that ICE had biometric information (*i.e.*, fingerprints) confirming his identity. The warrant stated that A.S. was subject to removal from the United States based on a final order by a designated official, and that any Immigration Officer was commanded to take custody of him for removal from the United States. *Id.*

On April 2, Newton Police transferred custody of A.S. to the Newton District Court and forwarded the detainer and the warrant to the Clerk's Office, Probation, the Assistant District Attorney ("ADA"), and a defense attorney retained by A.S. (the "Defense Attorney"). *Id.* ¶ 9.

On the morning of April 2, an ICE Officer dressed in plainclothes arrived at Newton District Court to execute the warrant and take custody of A.S. upon his release from court. *Id.* ¶¶ 10, 15. The ICE Officer notified the court officers, the clerk of court (the "Clerk"), the ADA, and the Defense Attorney of his identity and the reason he was there. *Id.* The ICE Officer sat in the public audience area of the courtroom. *Id.* ¶ 15.

Judge Joseph called A.S.'s case at about noon. *Id.* ¶ 17. The ADA said she would make a bail request for (*i.e.*, seek to detain) A.S. only on the fugitive charge, not the drug charges. *Id.* The case was set for a further call in the afternoon. *Id.*

The Clerk informed Judge Joseph of the ICE Officer's attendance and purpose. *Id.* ¶ 15. Judge Joseph directed the Clerk to tell the ICE Officer to leave the courtroom. *Id.* ¶ 19. In doing so, she violated a policy issued in November 2017 by Paula M. Carey, Chief Justice of the Massachusetts Trial Court, in response to the Massachusetts Supreme Judicial Court's decision in *Lunn v. Commonwealth*, 78 N.E.3d 1143 (Mass. 2017). Ind. ¶ 12; Doc. No. 60-1 at 2. The policy

(the "Trial Court DHS Policy") was directed to all judges, clerks, court officers, and other courthouse personnel. *Id.* It stated in relevant part:

> Trial Court employees should be mindful that **courthouses [including courtrooms] are public spaces that are open to all persons . . . , including . . . DHS employees**. . . .
>
> \* \* \*
>
> . . . **DHS officials are permitted to act in the performance of their official duties in Massachusetts courthouses . . . . DHS officials may enter a courthouse and perform their official duties** provided that their conduct in no way disrupts or delays court operations, or compromises court safety or decorum.

Doc. No. 60-1 at 3, 4 (emphasis added).[1]

When the Clerk relayed Judge Joseph's directive to the ICE Officer, the Clerk also said that, if A.S. were to be released by the court, he would be released out of the courtroom into the courthouse lobby. Ind. ¶ 19. This was consistent with the normal custom and practice at Newton District Court, which was to release defendants from the glass dock in the courtroom out into the courtroom, which had only one public entry/exit: the door to the front lobby. *Id.* ¶ 11. The ICE Officer complied with Judge Joseph's directive and waited in the lobby for A.S. *Id.* ¶ 19.

One of the court officers on duty was codefendant Wesley MacGregor. *Id.* ¶ 14. The Defense Attorney and MacGregor conferred and agreed that, if Judge Joseph ordered A.S. to be released from court custody, MacGregor would use his security access card to release A.S. out the

---

[1] Under the Trial Court DHS Policy, DHS officials were not permitted to execute civil immigration detainers or warrants inside a courtroom absent prior permission from the regional administrative judge or the first justice. *See* Doc. No. 60-1 at 5. They were, however, allowed to sit in a courtroom provided they were not disruptive – just like any other member of the public. The indictment alleges that Judge Joseph ordered the ICE Officer out of the courtroom even though he was not disruptive and was merely sitting in the public audience area of the courtroom in plainclothes.

rear sally port exit of the courthouse in order to evade arrest by the ICE Officer waiting in the front lobby. *Id.* ¶ 26.[2]

A.S.'s case was recalled at approximately 2:48 pm. *Id.* ¶ 20. The Defense Attorney and the ADA appeared before Judge Joseph. *Id.* At a sidebar requested by the Defense Attorney, in proceedings captured on the courtroom's recording device, Judge Joseph said, "So it's my understanding that ICE is here." *Id.* The ADA, who previously had told Judge Joseph that she would seek to detain A.S. only on the fugitive charge out of Pennsylvania, now told Judge Joseph that she did not think A.S. was the man wanted in Pennsylvania. *Id.* At this point Judge Joseph knew the ADA was not going to ask to detain A.S. on any of the charges, and so she knew she would be releasing A.S. from custody.

Still at sidebar, the Defense Attorney told Judge Joseph, "ICE is going to pick him up if he walks out the front door." *Id.* In response, Judge Joseph proposed holding A.S.'s case until the next day, saying: "The other alternative is if you need more time to figure this out – hold until tomorrow . . . ." *Id.* The Defense Attorney explained that Judge Joseph's proposal would not stop ICE from arresting A.S. He said: "There is an ICE detainer. So if he's bailed out from Billerica [House of Correction, where A.S. would stay overnight if his case were held over until the next day] when he goes back there, ICE will pick him up." *Id.* Judge Joseph responded, "ICE is gonna get him?" *Id.* The Defense Attorney said, "Yeah." *Id.* Judge Joseph then made a second proposal: "What if we detain him?," even though she knew the ADA was not seeking detention.

---

[2] The indictment alleges a "classic hub-and-spokes conspiracy," with the Defense Attorney serving as the hub. *United States v. Walker-Couvertier*, 860 F.3d 1, 15 (1st Cir. 2017), *cert. denied sub nom. Lugo-Diaz v. United States*, 138 S. Ct. 1303 (2018).

This prompted the Defense Attorney to ask whether they were on the record. Judge Joseph asked the Clerk to go off the record, which he did by turning off the courtroom recorder. *Id.* ¶¶ 20, 21. Judge Joseph's decision to turn off the recorder violated a Massachusetts Rule of Court requiring that all state district courts, including Newton District Court, record all courtroom proceedings. *Id.* ¶¶ 13, 21.

The courtroom recorder was turned off for the next approximately 52 seconds. *Id.* ¶ 21. During the unrecorded portion of the proceeding, Judge Joseph and the Defense Attorney agreed to create a pretext that would allow A.S., after being released from court custody by Judge Joseph, to go downstairs to the lockup so that he could be let out the rear sally port exit in order to evade arrest by the ICE Officer waiting in the front lobby. *Id.* ¶ 27. The purpose of Judge Joseph ordering the recorder to be turned off was to conceal this conversation with the Defense Attorney. *Id.* ¶ 29.

When the recorder was turned back on, the sidebar was over. The Defense Attorney argued that A.S. was not the man wanted in Pennsylvania, in part based on a photo of the Pennsylvania fugitive. *Id.* ¶ 22. The ADA agreed. *Id.* The ADA dismissed the fugitive charge and said again that she was not requesting detention on the drug charges. *Id.*

Then the Defense Attorney put the agreed-upon ruse into motion by asking if A.S. could go downstairs instead of being released the normal way through the courtroom and out into the lobby. He said: "I would ask that he, uh – I believe he has some property downstairs. I'd like to speak with him downstairs with the interpreter if I may." *Id.* Continuing with the pretext, Judge Joseph replied, "That's fine. Of course." *Id.*

The Clerk reminded Judge Joseph that an ICE Officer was present to take custody of A.S. He said: "There was a representative from, uh, ICE here in the court [unintelligible] . . . to visit the

lockup." *Id.* Judge Joseph replied, "That's fine. I'm not gonna allow them [ICE] to come in here. But he's been released on this." *Id.* By refusing to let the ICE Officer into the lockup to take custody of A.S., Judge Joseph again violated the Trial Court DHS Policy, which stated in relevant part:

> If, during the processing of an individual subject to release out of the courthouse, a DHS official is present in the courthouse and seeks admission into the courthouse's holding cell area in order to take custody of the individual pursuant to an immigration detainer or warrant, **court officers shall permit the DHS official(s) to enter the holding cell area in order to take custody of the individual** once Trial Court security personnel have finished processing that individual out of the court security personnel's custody if a security department supervisor determines that the DHS official would otherwise take custody of the individual inside or immediately outside of the courthouse. . . . [3]

Doc. No. 60-1 at 5 (emphasis added); *see* Ind. ¶ 31.[4]

Continuing with the artifice that she and the Defense Attorney had agreed upon, Judge Joseph said: "Um, [Defense Attorney] asked if the interpreter can accompany him [A.S.] downstairs, um, to further interview him – and I've allowed that to happen." Ind. ¶ 22. Defendant MacGregor escorted A.S., the Defense Attorney, and the interpreter downstairs to the lockup, where, as previously agreed, MacGregor used his security access card to open the rear sally port exit to release A.S. out the back door. *Id.* ¶ 23. He did so just seven minutes after A.S.'s court proceeding ended. *Id.*

---

[3] The amicus brief of Professor Jennifer M. Chacón, et al., erroneously asserts that "ICE . . . ha[d] no expectation to make arrests inside Massachusetts courthouses." Doc. No. 81 at 20. ICE indeed had that expectation, which was consistent with the Trial Court DHS Policy.

[4] Judge Joseph incorrectly claims that she *followed* the DHS Trial Court policy. *See* Joseph Brief at 5. The amicus brief filed by Professor Jennifer M. Chacón, et al. adopts and relies on that misrepresentation. *See* Doc. No. 81 at 2 n.2.

As a result of A.S. being released through the rear sally port exit of the courthouse, the ICE

Officer waiting upstairs in the front lobby was unable to take custody of A.S. at the courthouse.

*Id.* ¶ 24.

## STANDARD OF REVIEW

Judge Joseph has moved to dismiss the indictment on the grounds that it fails to state an

offense. *See* Fed. R. Crim. P. 12(b)(3)(B)(v). "The indictment's allegations are assumed to be

true." *United States v. Stewart*, 744 F.3d 17, 21 (1st Cir. 2014). The issue for the Court is "not

whether the government has presented enough evidence to support the charge, but solely whether

the allegations in the indictment are sufficient to apprise the defendant of the charged offense."

*United States v. Brissette*, 919 F.3d 670, 675 (1st Cir. 2019) (citation and internal quotation marks

omitted). Judge Joseph's motion must fail if she can "prepare a defense and plead double jeopardy

in any future prosecution for the same offense." *United States v. Rodriguez-Rivera*, 918 F.3d 32,

34 (1st Cir. 2019) (citation and internal quotation marks omitted).

## ARGUMENT

None of Judge Joseph's arguments in support of dismissal of the indictment has merit.

### 1. Judicial Immunity Does Not Apply in a Criminal Case

Under the doctrine of judicial immunity, "generally, a judge is immune from a suit for

money damages" for judicial acts. *Mireles v. Waco*, 502 U.S. 9, 9 (1991) (per curiam). Judge

Joseph argues that this doctrine should be extended to the criminal context, even though the

Supreme Court "has recognized that a judge is not absolutely immune from criminal liability." *Id.*

at 10 n.1 (citing *Ex parte Virginia*, 100 U.S. 339, 348-49 (1879)); *see also O'Shea v. Littleton*, 414

U.S. 488, 503 (1974) ("the judicially fashioned doctrine of official immunity [including judicial

immunity] does not reach so far as to immunize criminal conduct proscribed by an Act of Congress") (citation and internal quotation marks omitted). Her argument fails for two reasons.

First, the crime Judge Joseph allegedly committed – using a ruse to impede a federal immigration proceeding by helping an undocumented immigrant evade arrest by an immigration officer – was not a judicial act. "Judicial acts are those that are 'intimately associated' with the judicial function." *Nystedt v. Nigro*, 700 F.3d 25, 31 (1st Cir. 2012) (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991)). They include adjudicating disputes between parties. *Id.* (citing *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435 (1993)). "Other traditional judicial functions include such things as weighing evidence, making factual findings, reaching legal determinations, choosing sanctions, and expounding reasons for decisions." *Goldstein v. Galvin*, 719 F.3d 16, 25 (1st Cir. 2013) (citation and internal quotation marks omitted). Judicial acts also include entering judgment, *Pope v. United States*, 323 U.S. 1, 12 (1944); imposing or altering a sentence, *United States v. Benz*, 282 U.S. 304, 311 (1931); and issuing a search warrant, *Buckley v. Fitzsimmons*, 509 U.S. 259, 271 (1993).[5] A judge does not engage in a judicial act when she participates in a scheme to obstruct a federal proceeding – regardless of whether she is sitting on the bench when she does so. *See Ex parte Virginia*, 100 U.S. 339, 348 (1879) (stating that a judge does not engage in a judicial act when she acts "outside of [her] authority and in direct violation of the spirit" of a

---

[5] In support of its argument that Judge Joseph is being prosecuted for an act of "courtroom governance," the Ad Hoc Committee for Judicial Independence relies on *United States v. DeLuca*, 137 F.3d 24, 34 (1st Cir. 1998). *See* Doc. No. 85 at 2, 10 & n.6. *DeLuca* concerned criminal charges of violent extortion by defendants with violent criminal histories and connections to organized crime. During a prior criminal trial against one of the defendants, police had stopped a carload of felons possessing a metal pipe, a loaded firearm, and a list of the jurors in that case. Given concerns that the jurors remain safe and not be improperly influenced, the trial court decided to empanel an anonymous jury and require trial spectators to present identification. The First Circuit upheld these decisions, which do not in any way resemble Judge Joseph's actions.

criminal statute). Judge Joseph would not be entitled to judicial immunity if she had created a ruse

to impede a grand jury investigation by helping a criminal defendant who happened to be a friend

exit the back of the courthouse to evade service of a grand jury subpoena by an FBI agent waiting

in the front lobby. The outcome should be no different just because Judge Joseph did not know

A.S. personally and the agent was an immigration official.[6]

Second, even if the indictment did charge Judge Joseph with committing a judicial act

(which it does not), the Supreme Court has not extended judicial immunity to criminal

proceedings. Judge Joseph acknowledges as much. *See* Joseph Brief at 12. Well-founded policies

support this principle. For example, in *United States v. Hastings*, then-federal judge Alcee Hastings

---

[6] The only criminal case cited by Judge Joseph in which a court actually found judicial immunity concerned prosecution for a judicial act, unlike here. *United States v. Chaplin*, 54 F. Supp. 926 (S.D. Cal. 1944), *cited in* Joseph Brief at 15. The defendant in *Chaplin* was a municipal judge who allowed a woman to plead not guilty and dismissed her case after he previously had accepted her guilty plea and sentenced her to jail, where she had served time. *Id.* at 927-28. In a federal indictment that did not allege malicious or corrupt conduct, the judge was charged with depriving the woman's civil rights under color of state law. *Id.* at 926, 933. The issue, as framed by the court, was "the question of the immunity of a judge acting in his judicial capacity and within his jurisdiction in imposing sentence and probation upon a person charged with an offense in his court to which the defendant has pleaded guilty." *Id.* at 928. The court dismissed the indictment based on judicial immunity. It reasoned that allowing the case to go forward would subject every judge to criminal charges for imposing a sentence that deprived a defendant of his civil rights, even though "every defendant sentenced to the county jail or the penitentiary is deprived of his civil rights." *Id.* at 934.

The Commonwealth's amicus brief also quotes language in *In re McNair*, 187 A. 498, 502 (Pa. 1936) (stating that magistrate judges "cannot be subjected to liability, civil or criminal, for any of their judicial acts, no matter how erroneous, so long as they act in good faith"). But the language is dictum. *See id.* at 500 (stating that the issue was whether the "court of quarter sessions" was empowered to order a grand jury investigation). Moreover, *McNair* is distinguishable because Judge Joseph is alleged *not* to have acted in good faith. The Commonwealth also cites to *Commonwealth v. Tartar*, 239 S.W.2d 265, 266-67 (Ky. App. 1951), in which the Kentucky Court of Appeals held that a judge could not be criminally prosecuted for certifying a list of grand jurors containing some names that had not been drawn from a jury wheel or drum, as statutorily required. *Tartar* is not on point because the defendant, unlike Judge Joseph, was indicted for a judicial act.

insisted, as Judge Joseph does here, that "the courts would be subject to intolerable pressure from the executive if executive officers were allowed to prosecute active . . . judges for acts involving the exercise of their judicial power." 681 F.2d 706, 710 (11th Cir. 1982). The Eleventh Circuit rejected the argument, holding that "the miniscule increment in judicial independence that might be derived from the proposed rule" of judicial immunity in criminal cases "would be outweighed by the tremendous harm that the rule would cause to another treasured value of our constitutional system: *no man in this country is so high that he is above the law*." *Id.* at 711 (emphasis added). Furthermore, the argument raised by Judge Joseph and her amici that denying judicial immunity in this case will have "devastating . . . consequences for judges across the Commonwealth, . . . [who] will feel a constant external pressure to refrain from actions that might antagonize federal officials," is unfounded. Amicus Brief of the Ad Hoc Committee for Judicial Independence (Doc. No. 85) at 11. Massachusetts judges enjoy significant protections that allow them to do their jobs without fear of retaliation by the public, aggrieved litigants, or criminal prosecutors. These include lifetime tenure, judicial immunity against civil claims for damages, and the right to be free – as all are – from vindictive prosecution. *See Hastings*, 681 F.2d at 711 & n.17. Furthermore, Judge Joseph's argument that this prosecution will open the floodgates to obstruction indictments against judges ignores both the role of the grand jury and the demanding standard of proof required for the government to establish corrupt intent beyond a reasonable doubt. *See infra* at 17-19 (discussing the nexus requirement).

Judge Joseph erroneously maintains that judicial immunity has been denied only in criminal cases dealing with bribery,[7] corruption/fraud,[8] or violations of civil rights statutes.[9] *See* Joseph Brief at 14. In fact, judges have been prosecuted for other types of crimes. *See, e.g.*, *United States v. Aguilar*, 515 U.S. 593, 606 (1995) (affirming conviction of federal judge who disclosed the existence of a wiretap, in violation of 18 U.S.C. § 2232(c)); *Kugler v. Helfant*, 421 U.S. 117, 131 (1975) (municipal judge indicted under New Jersey law on charges of obstruction of justice and lying to a grand jury); *United States v. Cochran*, 682 F. App'x 828, 842 (11th Cir. 2017) (affirming state court judge's convictions for, *inter alia*, witness tampering in violation of 18 U.S.C. § 1512); *United States v. Baumgartner*, 581 F. App'x 522, 534 (6th Cir. 2014) (affirming conviction of state court judge for misprision of a felony, in violation of 18 U.S.C. § 4, for concealing his knowledge of a defendant's participation in a drug-distribution conspiracy); *In re Kendall*, 712 F.3d 814, 830 (3d Cir. 2013) (Virgin Islands superior court judge prosecuted for criminal contempt for issuing opinion criticizing Virgin Islands Supreme Court decision and

---

[7] *See, e.g., United States v. Acevedo-Hernandez*, 898 F.3d 150, 173 (1st Cir. 2018) (affirming conviction of state court judge who agreed to acquit a criminal defendant in exchange for a bribe); *United States v. Hastings*, 681 F.2d 706, 712 (11th Cir. 1982) (declining to grant immunity to judge charged under 18 U.S.C. § 1503 and other statutes for agreeing to reduce a criminal defendant's sentence in exchange for a bribe).

[8] *See, e.g., Braatelien v. United States*, 147 F.2d 888, 895 (8th Cir. 1945) (affirming conviction of federally appointed commissioner who conspired to defraud the federal government by confirming false appraisals of farm properties seeking bankruptcy protection).

[9] *See, e.g., Ex parte Virginia*, 100 U.S. 339, 349 (1879). The defendant, a county judge, was indicted for excluding all African-Americans from serving as jurors, in violation of a federal criminal statute. The Supreme Court was unpersuaded by the defendant's claim to judicial immunity. It held that the defendant's crime was not a judicial act, for two reasons. First, it was ministerial: "The duty of selecting jurors might as well have been committed to a private person as to one holding the office of a judge. It often is given to county commissioners, or supervisors, or assessors." *Id.* at 348. Second, the defendant had acted "outside of his authority and in direct violation of the spirit" of the criminal statute at issue. *Id.*

defying its order); *United States v. Grubb*, 11 F.3d 426, 438 (4th Cir. 1993) (affirming conviction of state court judge under 18 U.S.C. § 1503 for obstructing a grand jury investigation by lying to FBI agent assisting with the investigation); *United States v. Nixon*, 816 F.2d 1022, 1031 (5th Cir. 1987) (affirming 18 U.S.C. § 1623 perjury conviction of federal judge who lied to a grand jury about his relationship with target of the investigation); *United States v. Anderson*, 798 F.2d 919, 931 (7th Cir. 1986) (same; state court judge who lied while testifying in a federal criminal trial against other defendants about whether prosecutors were always present in his chambers when he disposed of DUI cases); *United States v. Claiborne*, 727 F.2d 842, 843 n.1 (9th Cir. 1984) (federal judge prosecuted for, *inter alia*, obstructing justice by urging a grand jury witness to lie, in violation of 18 U.S.C. § 1503); *United States v. Ash*, No. 19-mj-9341-UA (S.D.N.Y. filed Oct. 4, 2019) (state court judge prosecuted under 18 U.S.C. § 1512(c) and other statutes for obstructing a grand jury proceeding into CEO's embezzlement of credit union where judge had been chair of the board); *United States v. Moreland*, Crim. No. 17-00066 (M.D. Tenn. May 24, 2018) (state court judge convicted under 18 U.S.C. § 1512(c)(2) and other statutes for directing grand jury witness to lie and destroy documents); *United States v. Walker*, Crim. No. 14-00093-DCB-FKB (S.D. Miss. Oct. 7, 2014) (state court judge convicted under 18 U.S.C. § 1512(c)(2) for telling grand jury witness subpoenaed to produce a document that the document "probably needs to be somewhere else"); *United States v. DeLaughter*, Crim. No. 09-0002-GHD-SAA (N.D. Miss. July 30, 2009) (state court judge convicted under 18 U.S.C. § 1512(c)(2) for lying to FBI about case in which he made rulings favorable to the defense at the request of an attorney friend); *United States v. Wachtler*, Crim. No. 93-00058-AET (D.N.J. Mar. 31, 1993) (former Chief of New York Court of Appeals who harassed his former lover and threatened to kidnap her daughter was indicted for

extortion and other charges and pled guilty to one count of mailing a threatening letter, in violation of 18 U.S.C. § 875(c)); *Com. v. Berry*, 167 A.3d 100, 110 (Pa. Super. 2017) (affirming conviction of state court judge who ran a real estate business out of his chambers); *State v. Brady*, 172 A.3d 550, 559 (N.J. Super.) (upholding indictment of state court judge who harbored her boyfriend knowing he was a fugitive charged with robbery, in violation of New Jersey hindering statute), *appeal denied*, 177 A.3d 109 (2017); *In re Weber*, 21 N.E.3d 92, 92-93 (Ind. 2014) (municipal judge convicted of criminal mischief and OUI); *Michigan v. Brennan*, File No. 18-3155-FY (53rd District Court, Livingston County, Mich. filed Dec. 13, 2018) (state court judge prosecuted for perjury and evidence tampering for deleting information from her iPhone after her husband filed for divorce and then lying about it in depositions).

Similarly, non-judge officers of the court have been prosecuted for crimes other than bribery, corruption/fraud, and violations of civil rights statutes. *See, e.g.*, *United States v. Farrell*, 921 F.3d 116, 124 (4th Cir. 2019) (affirming conviction of defense attorney for obstructing DEA administrative forfeiture proceeding, in violation of 18 U.S.C. § 1512(c)(2), by forging drug dealer's signature on documents sent to DEA, causing DEA to forego forfeiture of property seized from dealer), *cert. denied*, 2019 WL 4923330 (Oct. 7, 2019); *United States v. Smith*, 831 F.3d 1207, 1222 (9th Cir. 2016) (affirming convictions of county sheriff's department employees for obstructing federal grand jury investigation into civil rights abuses at county jails, in violation of 18 U.S.C. § 1503); *United States v. Coumaris*, 399 F.3d 343, 346 (D.C. Cir. 2005) (IRS attorney convicted of conspiring to commit crimes against the United States, in violation of 18 U.S.C. § 371, by using fraudulent identification documents and social security numbers to help his lover evade arrest); *United States v. Forman*, 71 F.3d 1214, 1217 (6th Cir. 1995) (criminal tax attorney

with the U.S. Department of Justice prosecuted under 18 U.S.C. § 1503 for disclosing confidential criminal investigation report to target of the investigation*); United States v. Howze*, Crim. No. 16-00130-CCC (W.D. Pa. Aug. 22, 2016) (federal probation officer convicted of obstructing a defendant's supervised release revocation hearing, in violation of 18 U.S.C. § 1512(c)(2), by disclosing to defendant confidential information about covert state drug investigation in which defendant was target); *United States v. Flaherty*, Crim. No. 15-10127-MLW, 2015 WL 6965099 (D. Mass. Nov. 11, 2015) (criminal defense attorney prosecuted for witness tampering, in violation of 18 U.S.C. § 1512); *United States v. Hoffman*, Crim. No. 12-40032-TSH (D. Mass. July 19, 2013) (state court probation officer convicted of witness tampering, in violation of 18 U.S.C. § 1512); *United States v. Coleman*, No. 08-CR-104, 2010 WL 5108607 (M.D. Pa. Dec. 9, 2010) (state police trooper convicted under 18 U.S.C. § 1503 for, *inter alia*, helping prostitutes evade arrest). Judge Joseph does not explain why she should have immunity for her role in the alleged obstruction conspiracy but co-conspirators MacGregor and the Defense Attorney, who are also officers of the court, should not.

Furthermore, even if Judge Joseph were correct that judges have been denied judicial immunity only in cases involving bribery, corruption/fraud, and violations of civil rights statutes, it would not follow that judicial immunity applies in every other criminal case. It would be imprudent to create a blanket rule of judicial immunity for all other crimes – or even just for obstruction crimes, in part because it is impossible to identify every single way in which a person, including a judge, might obstruct justice. "Federal obstruction statutes . . . are drafted with an eye to the variety of corrupt methods by which the proper administration of justice may be impeded or thwarted, a variety limited only by the imagination of the criminally inclined." *United States v.*

*Rainey*, 757 F.3d 234, 245 (5th Cir. 2014) (citation and internal quotation marks omitted). Judge Joseph has pointed to nothing in the text or legislative history of either Section 1505 or Section 1512(c)(2) supporting her theory that judges are immune from prosecution under those statutes except in cases involving bribery, corruption/fraud, or violations of civil rights statutes.

The Court should reject Judge Joseph's invitation to expand the doctrine of judicial immunity to unprecedented breadth by adopting language in Judge Roth's concurring opinion in *In re Kendall*, 712 F.3d 814 (3d Cir. 2013), which went beyond the facts in that case. *See* Joseph Brief at 14-15. Kendall was a Virgin Islands Superior Court judge who characterized as "contrary to law and all notions of justice" a Virgin Islands Supreme Court writ of mandamus in a murder case directing him not to enforce an oral plea agreement to manslaughter that he believed was binding. 712 F.3d at 819-20. Incensed, the Virgin Islands Supreme Court appointed a special prosecutor to pursue criminal contempt charges. *Id.* at 820-21. Judge Kendall was found guilty on all three counts: (1) obstructing the administration of justice by issuing an opinion critical of the high court's writ; (2) disobeying the writ by, *inter alia*, refusing to schedule the trial and recusing himself; and (3) misbehaving as an officer of the court by issuing his opinion and disobeying the writ. *Id.* at 821. The Third Circuit reversed the conviction on Count 1 based on the First Amendment, and Count 2 based on insufficiency of the evidence. *Id.* at 824-32. The reversals on Counts 1 and 2 required reversal on Count 3. *Id.* at 833.

In his concurrence, Judge Roth opined that the convictions should be reversed on the grounds of judicial immunity. *Id.* at 833 (Roth, J., concurring). But he went further, opining that judicial immunity should protect a judge from criminal liability for all judicial acts provided they were made within the judge's jurisdiction, which would necessarily exclude crimes such as

corruption and bribery. *Id.* at 833 n.2 (Roth, J., concurring). The majority declined to reach the immunity issue because Judge Kendall had not raised it. *Id.* at 822 n.4. In dictum, however, the majority stated that judicial immunity would not have protected Judge Kendall: "With no support in history, law, or logic, we cannot extend judicial immunity to criminal contempt." *Id.*

Finally, Judge Joseph's reliance on *In re Petition of Dwyer*, 406 A.2d 1355 (Pa. 1979), is misplaced. *See* Joseph Brief at 15. In *Dwyer*, state safety inspection agency members were charged with involuntary manslaughter for not having timely required the correction of building code violations at a motel that caught fire, resulting in several deaths. The court held that quasi-judicial immunity applied given "the absence of allegations of bad faith or corruption." 406 A.2d at 1360. *Dwyer* is inapposite because it concerned quasi-judicial immunity, and, more important, the defendants were criminally charged merely for acting "in a wanton, reckless, and grossly negligent manner." *Id.* at 1356. Judge Joseph, in contrast, is accused of acting with corrupt intent.

For the foregoing reasons, the Court should reject Judge Joseph's argument that she is entitled to judicial immunity from the criminal charges in this case.

**2.    The Indictment States an Offense Against Judge Joseph.**

Contrary to Judge Joseph's position, the allegations in the indictment show that she acted "corruptly" to obstruct a "proceeding" as those terms are used in Sections 1505 and 1512(c)(2). Furthermore, Section 1512(c)(2) is not limited to evidence-impairment crimes. *See* Joseph Brief at 15-23.

**a.    The Indictment Alleges that Judge Joseph Acted "Corruptly."**

Section 1512(c)(2) makes it a felony to "corruptly . . . obstruct[], influence[], or impede[] any official proceeding, or attempt[] to do so." Section 1505 makes it a felony to "corruptly . . .

- 16 -

influence[], obstruct[], or impede[] or endeavor[] to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States."

Courts interpreting the term "corruptly" in Section 1512(c)(2) have turned to the Supreme Court's definition in a different obstruction statute, 18 U.S.C. § 1503, whose catchall provision states that anyone who "corruptly . . . influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice" commits a felony. To show that a person acted corruptly in violation of Section 1503, the Supreme Court has imposed a "nexus" requirement: "the act must have a relationship in time, causation, or logic with the judicial proceedings." *United States v. Aguilar*, 515 U.S. 593, 599 (1995). Put differently, for the defendant to have "the evil intent to obstruct," she must have "knowledge that [her] actions are likely to affect" a judicial proceeding, *i.e.*, she must know that her actions will have "the natural and probable effect" of interfering with the due administration of justice. *Id.* (citation and internal quotation marks omitted) (reversing conviction of federal judge under Section 1503 for lying to an FBI agent because the evidence did not show that the judge knew the agent might testify before a grand jury).

Ten years after *Aguilar*, the Supreme Court extended the nexus requirement to prosecutions under Section 1512(b), which prohibits, *inter alia*, corruptly persuading another person to withhold documents from an official proceeding. *Arthur Andersen LLP v. United States*, 544 U.S. 696, 708 (2005). The Court held that although an official proceeding need not be pending, it must be at least foreseeable to the defendant, because a defendant who lacks knowledge that her actions are likely to affect an official proceeding lacks the requisite intent to obstruct. *See id.*

- 17 -

Although the First Circuit has not had occasion to address this issue, every circuit court to consider it has extended the nexus requirement from *Aguilar* and *Arthur Andersen* to prosecutions under Section 1512(c)(2). They have held that a defendant acts corruptly in violation of Section 1512(c)(2) if her actions have the natural and probable effect of interfering with an existing or foreseeable federal proceeding. *See, e.g.*, *United States v. Sutherland*, 921 F.3d 421, 425 (4th Cir. 2019) (affirming businessman's conviction under Section 1512(c)(2) for obstructing grand jury proceeding by submitting fabricated business loan documents after receiving grand jury subpoena for his companies' financial records), *petition for cert. filed*, No. 19-433 (Oct. 2, 2019); *United States v. Bedoy*, 827 F.3d 495, 507-08 (5th Cir. 2016) (affirming detective's conviction under Section 1512(c)(2) for obstructing a grand jury proceeding by telling witness to move out of town, not give her real name if pulled over for a traffic stop, and not let FBI agents into her apartment); *United States v. Petruk*, 781 F.3d 438, 445 (8th Cir. 2015) (reversing conviction under Section 1512(c)(2) because defendant took actions to interfere with a state, not federal, proceeding); *United States v. Friske*, 640 F.3d 1288, 1292 (11th Cir. 2011) (reversing conviction under Section 1512(c)(2) because evidence did not show that defendant knew the natural and probable result of his actions – removing items from indicted friend's property at his request – would be the obstruction of friend's forfeiture proceeding); *United States v. Phillips*, 583 F.3d 1261, 1263-64 (10th Cir. 2009) (affirming conviction under Section 1512(c)(2) for obstructing a grand jury proceeding by disclosing undercover officer's identity to target of investigation); *United States v. Reich*, 479 F.3d 179, 186-87 (2d Cir. 2007) (affirming lawyer's conviction under Section 1512(c)(2) for obstructing a federal civil lawsuit in which he was a party by faxing a forged court order to his opponent's counsel, who foreseeably relied on the forgery by withdrawing his client's

application to appeals court); *see also United States v. Carson*, 560 F.3d 566, 584 (6th Cir. 2009)

(assuming arguendo that the nexus requirement applies to prosecutions under Section 1512(c)(2)).

For prosecutions under Section 1505, the term "corruptly" is defined by statute: "acting

with an improper purpose, personally or by influencing another." 18 U.S.C. § 1515(b).[10] The

Second Circuit has held that *Aguilar*'s nexus requirement also applies to this definition. *See United*

*States v. Quattrone*, 441 F.3d 153, 174 (2d Cir. 2006); *see also United States v. Callipari*, 368 F.3d

22, 42 (1st Cir. 2004) (finding that district court's failure to give nexus jury instruction in Section

1505 case, if error, was harmless), *vacated on other grounds*, 543 U.S. 1098 (2005). Judge Joseph

appears to concede that the term "corruptly" has the same meaning under both Section 1512(c)(2)

and Section 1505. *See* Joseph Brief at 16-17.[11]

---

[10] The First Circuit has noted that the enactment of Section 1515(b) served "a very narrow purpose." *United States v. Brady*, 168 F.3d 574, 578 (1st Cir. 1999). "As explained on the floor of Congress, the provision was to make clear that lying or otherwise obstructing Congress was covered by section 1505, and to counter any suggestion of undue vagueness made in *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir.1991). *See* 142 Cong. Rec. § 11605–02, § 11607–608 (1996)." *Brady*, 168 F.3d at 578 n.2.

The complete text of Section 1515(b) is: "As used in section 1505, the term 'corruptly' means acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information." The Commonwealth of Massachusetts states in its amicus brief that Section 1515(b) requires proof that the defendant engaged in one of these specific examples, that is, made a false or misleading statement, or withheld, concealed, altered, or destroyed a document or other information. *See* Doc. No. 71 at 15-16. It offers no support for its interpretation, which is contrary to the plain language of the statute.

[11] Judge Joseph's reliance on *Roma Construction Co. v. aRusso*, 96 F.3d 566 (1st Cir. 1996), is misplaced. *See* Joseph Brief at 17 (arguing that "an act is done corruptly if it's done . . . with a hope or expectation of either financial gain or other benefit to oneself or a benefit of another person") (quoting *Roma*, 96 F.3d at 573 (quoting *Aguilar*, 515 U.S. at 616-17 (Scalia, J., concurring in part and dissenting in part) (quoting district court's jury instructions in *Aguilar*))). *Roma* did not concern an obstruction statute. It was a civil case involving alleged violations of federal and state civil RICO statutes and 42 U.S.C. § 1983. In any event, even if the above quotation were an accurate description of what constitutes corrupt intent under Section 1505 and/or

The indictment more than adequately alleges corrupt intent. Judge Joseph and her amici argue otherwise by mischaracterizing the allegations. They claim she is charged with having "acted 'corruptly' merely by knowingly 'preventing the ICE Officer from taking custody of A.S.' (at least, from doing so inside the courtroom)." Joseph Brief at 17-18 (quoting Ind. ¶ 25); *accord id.* at 10 (arguing that she did nothing more than "allow[] a defendant to leave the courtroom and proceed to lockup"); Amicus Brief of the Ad Hoc Committee for Judicial Independence (Doc. No. 85) at 2, 9 (asserting that Judge Joseph merely "mismanag[ed] the physical movements" of A.S. and "manag[ed] her courtroom in a way that allegedly made a party's federal civil arrest less likely rather than more likely"); Amicus Brief of Professor Jennifer M. Chacón, et al. (Doc. No. 81) at 18 ("the Indictment seeks to impose criminal liability on mere non-cooperation with federal enforcement").

The allegations, however, go much further. Judge Joseph knew that an ICE Officer was present in the courthouse with an immigration warrant stating that A.S. was subject to removal from the United States based on a final order by a designated official. To thwart A.S.'s arrest, she twice violated the Trial Court DHS Policy by ordering that the ICE Officer (a) leave the courtroom and (b) be prevented from entering the downstairs lockup to take custody of A.S. Still concerned that "ICE [was] gonna get him," Judge Joseph made two proposals at sidebar to try to keep A.S. out of ICE custody: hold the case over until the following day, or detain him even though the ADA was not seeking detention. When the Defense Attorney explained that neither of those alternatives would achieve the stated objective, Judge Joseph agreed with the Defense Attorney to engage in a

---

1512(c)(2), the indictment alleges it here. Judge Joseph acted with a hope or expectation of benefiting another person: A.S.

ruse to help A.S. evade arrest: pretend that A.S. needed to go downstairs to speak with the Defense

Attorney and the interpreter, which of course they could have done upstairs in the courtroom.[12]

She ordered that the courtroom recording device be shut off, in violation of a Massachusetts Court

Rule, to conceal their plot. Their scheme worked: A.S. was released out the downstairs sally port

at the rear of the courthouse while the ICE Officer, oblivious to the conspiracy, waited in the exact

location where the Clerk had said A.S. would appear: the front lobby upstairs. As a result of Judge

Joseph's actions, A.S. evaded arrest by the ICE Officer – not just "inside the courtroom," as she

argues, but at the courthouse.

### b.  The Indictment Alleges that Judge Joseph Obstructed or Impeded a "Proceeding."

Judge Joseph is charged with obstructing or impeding an "official proceeding," a term that

includes "a proceeding before a Federal Government agency which is authorized by law." 18

U.S.C. §§ 1512(c)(2), 1515(a)(1)(C). She also is charged with obstructing or impeding a "pending

proceeding . . . before any department or agency of the United States." *Id.* § 1505. Specifically,

she is charged with obstructing or impeding A.S.'s federal immigration removal proceeding. Ind.

¶¶ 38, 40, 42. Whether a proceeding qualifies under Section 1512(c)(2) and/or Section 1505 is a

question of law to be decided by the Court. *See, e.g., United States v. Fruchtman*, 421 F.2d 1019,

1021 (6th Cir. 1970).

---

[12] There is nothing in the indictment supporting Judge Joseph's assertion that she was "follow[ing] court security policies" by "send[ing] A.S. to the lockup to meet with his attorney and interpreter." Joseph Brief at 28. On the contrary, her decision to send A.S. downstairs was inconsistent with the normal custom and practice at Newton District Court. *See* Ind. ¶ 11. And her decision not to allow the ICE Officer to take custody of A.S. in the lockup violated the Trial Court DHS Policy. *See id.* ¶ 31.

The indictment alleges that A.S. had been deported twice, in 2003 and 2007, and somehow again had reentered the country illegally before his arrest on March 30, 2018. Ind. ¶ 7. He was subject to an order prohibiting him from reentering the United States until 2027. *Id.* ¶ 7. His warrant was issued pursuant to a provision of the Immigration and Nationality Act that authorizes the Attorney General, who has delegated his authority to the Secretary of Homeland Security, to issue a warrant for an alien's arrest and detention "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). The warrant advised Judge Joseph that A.S. was subject to removal from the United States based on a final order by a designated official, and that the ICE Officer was commanded to take custody of A.S. for removal from the United States. Ind. ¶ 8. Thus, Judge Joseph knew that the purpose of the ICE Officer arresting A.S. was to detain him in furtherance of an immigration proceeding concerning his removability, and that he already had been issued at least one order of removal.

Although the First Circuit has never addressed the issue, other circuits have held that the term "proceeding before a Federal Government agency which is authorized by law" under Section 1515(a)(1)(C) implies "some formal convocation of the agency in which parties are directed to appear, instead of any informal investigation conducted by any member of the agency." *United States v. Ramos*, 537 F.3d 439, 462-63 (5th Cir. 2008). A qualifying proceeding includes, for example, a Bureau of Prisons investigation into incidents involving use of force by BOP staff upon prisoners. *See United States v. Perez*, 575 F.3d 164, 169 (2d Cir. 2009). The *Perez* court noted that, under a BOP Program Statement, an After-Action Review Committee consisting of the warden and three other officials must review an official Use of Force Report, which includes a memorandum prepared by each corrections officer involved in the incident. The committee must

complete an After-Action Report containing its findings, including whether BOP policy was followed and whether further investigation is warranted. The warden may refer the matter for further investigation to the Department of Justice's Office of Inspector General, the BOP's Office of Internal Affairs, or the FBI. *Id.* at 165-66. The Second Circuit held that this "detailed process of review and decision-making" sufficed under Section 1515(a)(1)(C), and, therefore, was a "proceeding" under Section 1512(c)(2). *Id.* at 169. Proceedings that are less formal may not qualify under Section 1512(c)(2), *see, e.g.*, *United States v. Binette*, 828 F. Supp. 2d 402, 404 (D. Mass. 2011) (preliminary investigation in which SEC investigators questioned defendant over the phone), but still qualify under Section 1505, *see, e.g.*, *United States v. Price*, 951 F.2d 1028, 1029-32 (9th Cir. 1991) (IRS agents' attempt to interview defendant was a Section 1505 proceeding); *United States v. Leo*, 941 F.2d 181, 198-99 (3d Cir. 1991) (same; defense agency audit); *United States v. Schwartz*, 924 F.2d 410, 422-23 (2d Cir. 1991) (same; customs service interview during investigation); *United States v. Lewis*, 657 F.2d 44, 45 (4th Cir. 1981) (same; IRS investigation).

An immigration proceeding concerning an alien's removability qualifies as a "proceeding" under both Sections 1512(c)(2) and 1505. *See, e.g.*, *United States v. Kantengwa*, 781 F.3d 545, 563 (1st Cir. 2015) (affirming alien's conviction under Section 1505 for obstructing removal proceeding and asylum application by lying to immigration officials during interviews and on written submissions, and lying under oath in immigration court); *United States v. Tzeuton*, 370 F. App'x 415, 417 (4th Cir. 2010) (affirming immigration attorney's conviction under Section 1512(c)(2) for obstructing a proceeding to consider and rule on an alien's asylum application); *United States v. Abrams*, 427 F.2d 86, 90 (2d Cir. 1970) (stating that an alien's application for voluntary departure is a proceeding under Section 1505); *see also United States v. Naeem*, 389 F.

App'x 245, 246 (4th Cir. 2010) (per curiam) (affirming defendants' convictions under Section 1505 for lying to U.S. Citizenship and Immigration Services in connection with codefendant's application for lawful permanent residency); *United States v. Bejasa*, 904 F.2d 137, 142 (2d Cir. 1990) (affirming immigration attorney's conviction under Section 1505 for giving U.S. Citizenship and Immigration Services false information about client's marital status and coaching client to lie during USCIS interview).

Because A.S. previously had been removed, ICE had two options for determining his removability. One option was to serve him with a notice to appear at a proceeding where an immigration judge would decide whether he was removable. *See* 8 U.S.C. § 1229a. Under this scenario, A.S. would be entitled to a hearing with many due process protections, including the right to retain counsel, present evidence, and cross-examine witnesses. *See id.* § 1229a(b). Judge Joseph appears to concede that this qualifies as a "proceeding" under both Sections 1512(c)(2) and 1505. *See* Joseph Brief at 18-19.

The other route was for ICE to conduct an administrative proceeding to reinstate A.S.'s prior order of removal. *See* 8 U.S.C. § 1231(a)(5). This also was a "formal convocation of the agency in which parties are directed to appear." *Ramos*, 537 F.3d at 462-63. Before ICE may remove an alien based on a prior order of removal, it must make certain findings. *See* 8 C.F.R. § 1241.8(a). An immigration officer must obtain the person's alien file and locate the prior order of removal; the officer must confirm that the person is, in fact, the alien previously ordered removed; and the officer must confirm that the alien illegally reentered the United States. *Id.* § 1241.8(a)(1)-(3). If the officer determines that the alien is subject to removal, the alien is entitled to written notice of the determination, which the officer must reconsider if the alien contests it. *Id.*

1241.8(b). If the officer reinstates the prior order of removal and the alien expresses a fear of returning to the country designated in that order, the alien must be referred immediately to an asylum officer for a reasonable-fear interview. *Id.* § 1241.8(e). The purpose of the interview is to afford the alien the opportunity to "establish[] a reasonable possibility that he or she would be persecuted on account of his or her race, religion, nationality, membership in a particular social group or political opinion, or a reasonable possibility that he or she would be tortured in the country of removal." *Id.* § 1208.31(c). The asylum officer must conduct the interview in a non-adversarial manner out of public view; an interpreter must be provided if necessary; the alien may retain counsel and present evidence; the alien's attorney may give a closing statement; the asylum officer must create a summary of the material facts which the alien must be permitted to review for errors; and the asylum officer must prepare a written decision. *Id.* Whether or not the asylum officer determines that the alien's fear is reasonable, the alien is entitled to be heard by an immigration judge who may order that removal be withheld or deferred. *Id.* § 1208.31(e)-(g). That decision, in turn, is reviewable by the Board of Immigration Appeals. *Id.* § 1208.31(g)(2)(ii). In light of these formal requirements, an administrative reinstatement proceeding pursuant to 8 U.S.C. § 1231(a)(5) also qualifies as a "proceeding" under Sections 1512(c)(2) and 1505.

The only remaining question is whether A.S.'s immigration proceeding was "pending" as of April 2, 2018, thereby qualifying as a "pending proceeding . . . before any department or agency of the United States" under Section 1505. The answer is yes. The immigration proceeding concerning A.S.'s removal began in 2003, the first time he was encountered in the United States and deported. It was renewed/continued in 2007, when ICE discovered that he had reentered the country illegally and removed him again. It was renewed/continued again on March 30, 2018,

- 25 -

when ICE discovered that A.S. had reentered the country illegally again. As of April 2, 2018, A.S.'s immigration proceeding concerning his removal – which could follow either of the two routes described above – was pending. And of course Judge Joseph knew that an immigration proceeding regarding A.S.'s removal was pending, because the warrant informed her that A.S. was subject to removal from the United States based on a final order by a designated official, and that the ICE Officer was commanded to take custody of A.S. for removal from the United States.

For these reasons, the indictment sufficiently alleges that Judge Joseph "corruptly" obstructed or impeded a "proceeding" in violation of both Sections 1512(c)(2) and 1505.

### c.   Section 1512(c)(2) Is Not Limited to Evidence-Impairment Crimes

Section 1512(c) states:

> Whoever corruptly –
>
> (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
>
> (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,

commits a felony. For several reasons the Court should reject Judge Joseph's argument that Section 1512(c)(2) is limited to evidence-impairment crimes. *See* Joseph Brief at 21-23.

First, the text of Section 1512(c)(2) is unqualified. It reaches acts that "obstruct[], influence[], or impede[] any official proceeding," when done "corruptly." The text does not limit the provision to acts that impair evidence for use in an official proceeding. In contrast, Section 1512(c)(1) explicitly includes the requirement that the defendant act "with the intent to impair the object's integrity or availability for use in an official proceeding," a requirement that Congress also included in two other subsections of Section 1512. *See* 18 U.S.C. § 1512(a)(2)(B)(ii),

(b)(2)(B). No comparable "intent to impair" language appears in 1512(c)(2). Instead, the intent element comes from the word "corruptly." Congress is presumed to have acted intentionally in the disparate inclusion and exclusion of evidence-impairment language. *See Loughrin v. United States*, 573 U.S. 351, 358 (2014) ("when Congress includes particular language in one section of a statute but omits it in another – let alone in the very next provision – this Court presumes that Congress intended a difference in meaning") (citation and internal quotation marks omitted).[13] Moreover, the fact that subsection (c)(1) and (c)(2) each contains its own "attempt" prohibition, and their separation by the word "or," underscores that they are independent prohibitions. Furthermore, the introductory word "otherwise" signals that subsection (c)(2) covers obstructive acts that are different from those listed in subsection (c)(1).

---

[13] The two cases on which Judge Joseph relies are inapposite. *See* Joseph Brief at 22 (citing *Yates v. United States*, 135 S. Ct. 1074 (2015); *Begay v. United States*, 553 U.S. 137 (2008)). According to Judge Joseph, *Yates* and *Begay* hold that "when Congress sets out a list of specific acts that constitute a crime, and then follows that enumeration with a residual clause (like § 1512(c)(2)), the residual clause should be read through the lens of the enumerated examples." Joseph Brief at 22. But neither case so holds. In neither case did the Court interpret statutory language which itself contains a residual clause. In both cases the Court held that when a general term immediately follows specific terms *within a single statutory enumeration*, the general term is limited to interpretations that are similar to the specific terms. Thus, the term "tangible object" in 18 U.S.C. § 1519, which makes it a felony to "knowingly alter[], destroy[], mutilate[], conceal[], cover[] up, falsif[y], or make[] a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States," is limited to tangible objects that are similar to records and documents. *Yates*, 135 S. Ct. at 1086 (holding that the term does not include fish). Likewise, the phrase "or otherwise involves conduct that presents a serious potential risk of physical injury to another" in 18 U.S.C. § 924(e)(2)(B)(ii), which defines "violent felony" under the Armed Career Criminal Act in part as a crime that "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another," is limited to crimes that are similar to burglary, arson, extortion, and offenses involving the use of explosives. *Begay*, 553 U.S. at 142 (holding that the phrase does not include drunk driving). Neither 18 U.S.C. § 1519 nor 18 U.S.C. § 924(e)(2)(B)(ii) contains a residual clause.

In fact, the breadth of Subsection 1512(c)(2) is reinforced by the similarity of its language to the omnibus clause of 18 U.S.C. § 1503, which covers anyone who "corruptly . . . obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice." That clause follows two more specific clauses which protect jurors, judges, and court officers. The omnibus clause nevertheless has been construed to be "far more general in scope than the earlier clauses" of Section 1503. *United States v. Aguilar*, 515 U.S. 593, 598 (1995). Courts therefore have treated it as "a catch-all provision which generally prohibits conduct that interferes with the due administration of justice," *United States v. Brenson*, 104 F.3d 1267, 1275 (11th Cir. 1997), and have given it a "non-restrictive reading," *United States v. Kumar*, 617 F.3d 612, 620 (2d Cir. 2010). While the specific clauses "forbid certain means of obstructing justice . . . the omnibus clause aims at obstruction of justice itself, regardless of the means used to reach that result." *United States v. Howard*, 569 F.2d 1331, 1334 (5th Cir. 1978); *see also Republic of Iraq v. Beaty*, 556 U.S. 848, 860 (2009) ("the whole value of a generally phrased residual clause . . . is that it serves as a catchall for matters not specifically contemplated – known unknowns"). Given the similarity of Section 1512(c)(2) to Section 1503's omnibus clause, Congress would have expected Section 1512(c)(2) to cover acts that produced a similar *result* to the evidence-impairment provisions – *i.e.*, the result of obstructing justice – rather than covering only acts that were similar in *manner*.

Second, courts have not limited Section 1512(c)(2) to conduct that impairs evidence. They instead have read it to cover obstructive acts in any form. *See, e.g., United States v. Volpendesto*, 746 F.3d 273, 286 (7th Cir. 2014); *United States v. Ring*, 628 F. Supp. 2d 195, 224 (D.D.C. 2009) (stating that the meaning of Section 1512(c)(2) "is plain on its face"). And courts have upheld convictions under Section 1512(c)(2) that did not involve evidence impairment but instead resulted

from conduct which more broadly thwarted arrests or investigations. *See, e.g., United States v. Martinez*, 862 F.3d 223, 238 (2d Cir. 2017) (where defendant police officer and others conspired to rob drug dealers, court affirmed Section 1512(c)(2) conviction of defendant for notifying his co-conspirators when arrest warrants were issued, making it possible for them to evade arrest by absconding), *vacated on other grounds sub nom. Rodriguez v. United States*, 139 S. Ct. 2772 (2019); *United States v. Ahrensfield*, 698 F.3d 1310, 1324-26 (10th Cir. 2012) (affirming conviction of police officer under Section 1512(c)(2) for notifying target about covert investigation); *United States v. Phillips*, 583 F.3d 1261, 1265 (10th Cir. 2009) (affirming conviction under Section 1512(c)(2) for obstructing a grand jury proceeding by disclosing undercover officer's identity to target of investigation).

Finally, while there is no need to resort to legislative history given the straightforward language of Section 1512(c)(2), the legislative history is no reason to impose extratextual limitations on its reach. Congress enacted Section 1512(c)(2) as part of the Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, Tit. XI, § 1102, 116 Stat. 745. The relevant section of the statute was entitled, "Tampering with a Record *or Otherwise Impeding an Official Proceeding*." *Id.* § 1102 (emphasis added). That title indicates Congress intended the two clauses to have independent effect.

For all of these reasons, the indictment states an offense against Judge Joseph.

### 3.  The Prosecution of Judge Joseph Does Not Violate the Tenth Amendment.

The parties are in agreement that, under the Tenth Amendment anti-commandeering doctrine, the federal government cannot command state officials to enforce federal laws, including federal immigration policies. *Cf., e.g., Murphy v. NCAA*, 138 S. Ct. 1461, 1485 (2018) (holding

that federal government may not command state officials to enforce the federal Professional and Amateur Sports Protection Act); *Printz v. United States*, 521 U.S. 898, 935 (1997) (same; federal Brady Handgun Violence Prevention Act).

But Judge Joseph is not charged with failing to enforce federal immigration law. She is not charged with failing to assist the ICE Officer in executing an immigration detainer and warrant. She is charged with affirmatively, corruptly impeding an immigration proceeding by using a ruse to help a litigant appearing before her evade lawful arrest by a federal immigration officer.[14] The Trial Court DHS Policy, which was directed to all court personnel, including Judge Joseph, underscored the distinction between failing to assist and actively impeding ICE. It stated that if a DHS official sought to take custody of a person who was not in court custody – as was the case with A.S. once Judge Joseph ordered his release – court personnel, while prohibited from "assist[ing] in the physical act of taking that individual into custody," also were *prohibited from "imped[ing] DHS officials from doing so*." Doc. No. 60-1 at 5 (emphasis added).

None of the cases cited by Judge Joseph supports her position. *See Lunn v. Commonwealth*, 78 N.E.3d 1143, 1160 (Mass. 2017) (holding that "Massachusetts law provides no authority for Massachusetts court officers to arrest and hold an individual solely on the basis of a Federal civil

---

[14] Judge Joseph's assertion that she faced a choice between "follow[ing] court security policies [by] send[ing] A.S. to the lockup to meet with his attorney and interpreter" and "releas[ing] A.S. out the front door of her courtroom" contradicts the allegations in the indictment. Joseph Brief at 28. There were no security policies that required Judge Joseph to send A.S. to the lockup after she released him from court custody. On the contrary, the normal custom and practice in Newton District Court was for a defendant released from custody to be let out the glass dock into the courtroom. If the Defense Attorney really had needed, as Judge Joseph stated, to "interview" A.S. (an interview that the jury may infer did not occur, given the very short period of time that elapsed between the end of A.S.'s court proceeding and defendant MacGregor's release of A.S. out the sally port exit), he could have done so in the courtroom.

immigration detainer, beyond the time that the individual would otherwise be entitled to be released from State custody."[15]); *Ryan v. Immigration & Customs Enforcement*, 382 F. Supp. 3d 142, 146 (D. Mass. 2019) (preliminarily enjoining ICE from "civilly arresting parties, witnesses, and others attending Massachusetts courthouses on official business while they are going to, attending, or leaving the courthouse"[16]), *appeal docketed*, No. 19-1838 (1st Cir. Sept. 5, 2019); *City & County of San Francisco v. Sessions*, 349 F. Supp. 3d 924, 970 (N.D. Cal. 2018) (enjoining the enforcement of a federal law requiring state and local governments to share immigration status information with ICE in order to receive certain federal funds), *appeal docketed*, No. 18-17308 (9th Cir. Dec. 4, 2018); *City of Chicago v. Sessions*, 321 F. Supp. 3d 855, 879 (N.D. Ill. 2018) (same). None of these cases authorizes Massachusetts state officials to affirmatively obstruct or impede a federal immigration proceeding. On the contrary, state and local officials may not impede federal law enforcement officers from doing their job. *See, e.g.*, *United States v. Smith*, 831 F.3d 1207, 1215 (9th Cir. 2016) (affirming convictions of county sheriff's department employees under 18 U.S.C. § 1503 for obstructing FBI agents who were assisting grand jury's investigation into civil rights abuses at county jails).

For these reasons, the prosecution of Judge Joseph does not violate the Tenth Amendment.

---

[15] Judge Joseph can hardly hide behind *Lunn* given that her conduct violated the Trial Court DHS Policy issued *in response to Lunn*, both by ordering the ICE Officer out of the courtroom and by preventing him from entering the courthouse cellblock to take custody of A.S.

[16] Not only was *Ryan* decided well after the events in this case, the scope of the *Ryan* injunction would not have covered the factual situation Judge Joseph faced. *See Ryan*, 382 F. Supp. 3d at 146 (stating that the court's injunction "does not limit ICE's . . . civil arrests of individuals who are *brought to Massachusetts courthouses while in state . . . custody*," like A.S.) (emphasis added). The amicus brief of the Massachusetts Association of Criminal Defense Lawyers relies on *Ryan* without acknowledging this limitation on the scope of the *Ryan* preliminary injunction. *See* Doc. No. 84 at 3.

**4.  Neither Section 1505 Nor Section 1512(c)(2) Is Unconstitutionally Vague**

The Court should reject Judge Joseph's argument that Sections 1505 and 1512(c)(2) are unconstitutionally vague as applied to her conduct. *See* Joseph Brief at 29-30.

A criminal statute is unconstitutionally vague if it "'fails to give a person of ordinary intelligence fair notice that [her] contemplated conduct is forbidden by [the] statute.'" *United States v. Marquardo*, 149 F.3d 36, 41 (1st Cir. 1998) (quoting *United States v. Harriss*, 347 U.S. 612, 617 (1954)). "Of course the requisite fair warning can come from judicial decisions construing the law. And judges have no business junking a statute simply because we could have written it with greater precision." *United States v. Morosco*, 822 F.3d 1, 5 (1st Cir. 2016) (internal quotation marks and citations omitted).

As with other criminal laws, the Supreme Court has "exercised restraint" in interpreting obstruction-of-justice statutes, in part to ensure that individuals have "fair warning" of what a criminal statute prohibits. *Marinello v. United States*, 138 S. Ct. 1101, 1106 (2018). The nexus test, described *supra* at 17-19, alleviates fair-warning concerns by requiring that obstructive conduct have a close enough connection to existing or future proceedings to implicate the dangers targeted by Sections 1505 and 1512(c)(2) and to ensure that the defendant actually had the obstructive result in mind.

The nexus requirement also ensures that the statutes define crimes "with sufficient definiteness that ordinary people can understand what conduct is prohibited." *Skilling v. United States*, 561 U.S. 358, 402 (2010) (citation and internal quotation marks omitted); *see United States v. Aguilar*, 515 U.S. 593, 616-17 (1995) (Scalia, J., joined by Kennedy and Thomas, JJ., concurring in part and dissenting in part) (rejecting vagueness challenge to the word "corruptly," an issue not

- 32 -

addressed in the majority opinion, as used in Section 1503); *accord United States v. Brenson*, 104 F.3d 1267, 1280-81 (11th Cir. 1997); *United States v. Howard*, 569 F.2d 1331, 1336 n.9 (5th Cir. 1978) ("If anyone unwittingly runs afoul of § 1503, it will not be on account of a misconstruction but because of an ignorance for which there is no excuse."); *see also United States v. Gonzalez*, 540 F. App'x 967, 975 (11th Cir. 2014) (rejecting defendant's argument that Section 1505 was unconstitutionally vague as applied).[17]

### 5. The Court Should Reject the Additional Arguments Raised by Judge Joseph's Amici

Amici raise two additional arguments not raised by Judge Joseph. Neither has merit.

First, the amicus brief by the Massachusetts Association of Criminal Defense Lawyers and the amicus brief by the American Immigration Lawyers Association and Justice at Work argue that the prosecution of Judge Joseph impedes immigrants' right to access the courts. *See* Doc. No. 84 at 7-14; Doc. No. 92 at 2-16. That is untrue. Immigrants' right to access the courts remains the same whether or not Judge Joseph is prosecuted for affirmatively obstructing the immigration proceeding of an alien brought to district court in state custody. In any event, the Court lacks jurisdiction to dismiss an indictment based on alleged harm to third parties. *See, e.g., United States v. Payner*, 447 U.S. 727, 737 (1980) ("[the defendant] cannot take advantage of the Government's violation of the constitutional rights of Wolstencroft, for he is not a party to this case") (Burger, J., concurring); *United States v. Noriega*, 117 F.3d 1206, 1214 (11th Cir. 1997).

---

[17] In its amicus brief the Commonwealth of Massachusetts cites two decisions in which courts allegedly held the phrase "acting with an improper purpose" in Section 1505 to be unconstitutionally vague as applied. *See* Doc. No. 71 at 14-15. In fact, however, both courts *rejected* the vagueness challenge. *See United States v. Pac. Gas & Elec. Co*., 153 F. Supp. 3d 1076, 1084 (N.D. Cal. 2015); *United States v. Kanchanalak*, 37 F. Supp. 2d 1, 4 (D.D.C. 1999).

The argument raised by these amici is a thinly veiled attempt to justify Judge Joseph's crimes as a response to an allegedly unlawful act by the ICE Officer. That contention is based on a misunderstanding of both the law and the facts. The ICE Officer's actions at Newton District Court were perfectly lawful. Although Judge Talwani held in *Ryan* that ICE civil arrests at Massachusetts courthouses likely violate the common law privilege against civil arrests at courthouses,[18] she noted that the privilege applies only to parties, witnesses, and others who come to court voluntarily. The privilege does not extend to individuals who are brought to a courthouse in federal or state custody, like A.S. *Ryan*, 382 F. Supp. 3d at 157 n.5. Therefore, the preliminary injunction ordered in *Ryan* does not extend to ICE civil arrests of individuals like A.S. who are brought to court while in federal or state custody. *Id.* at 146. Moreover, to the extent Judge Joseph maintains that she believed ICE's arrest of A.S. would be unlawful – which in any event would not be a basis for a motion to dismiss – her belief was not held in good faith: the DHS Trial Court Policy expressly informed her that ICE officials were permitted to make civil arrests at courthouses.

Second, the Ad Hoc Committee for Judicial Independence argues: "When deciding how to respond to a federal officer's attempt to arrest a party at a courthouse, a judge must weigh multiple constitutional considerations, including whether facilitating the arrest would impair the targeted party's due process right to be treated fairly, and whether the law enforcement officer's attempts to arrest someone inside a courthouse could chill people's access to our courts, and thus impair both the targeted party's Sixth Amendment right to a public trial and the public's First Amendment

---

[18] The government, which has appealed Judge Talwani's decision, disputes this ruling. But this Court need not opine on whether it believes *Ryan* was correctly decided. That is because *Ryan* does not extend to the facts in this case since A.S. was brought to court in state custody.

right to access court proceedings." Doc. No. 85 at 2. The government is aware of no case law supporting this extraordinary assertion. None of the cases cited by the Committee so holds. *See id.* at 10 (citing *Tumey v. State of Ohio*, 273 U.S. 510 (1927); *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813 (1986); *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009)). *Tumey*, *Aetna*, and *Caperton* all concerned judges with a financial bias in cases they oversaw. They did not concern a judge's alleged authority to obstruct a federal officer's arrest of an individual at a courthouse. Even *Ryan* does not support the Committee's position that a judge may be authorized to obstruct an arrest. If an ICE official tried to make a civil arrest at a Massachusetts courthouse in violation of the *Ryan* injunction, a judge would not be authorized to obstruct that arrest. Instead, the remedy for the violation would be a contempt finding against the ICE official. *See, e.g., In re Grand Jury Investig.*, 545 F.3d 21, 27 (1st Cir. 2008) (traditional remedy for violation of an injunction is contempt sanction).

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny Judge Joseph's motion to dismiss the indictment.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By: */s/ Christine Wichers*
DUSTIN CHAO
CHRISTINE WICHERS
Assistant United States Attorneys

**<u>Certificate of Service</u>**

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on October 18, 2019.

*/s/ Christine Wichers*
CHRISTINE WICHERS