UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>SHELLEY M. RICHMOND JOSEPH,<br><br>Defendant. | Crim. No. 19-10141-LTS |

**DEFENDANT SHELLEY M. RICHMOND JOSEPH'S
OBJECTION TO MAGISTRATE JUDGE'S ORDER DENYING IN PART
DEFENDANTS' JOINT MOTION TO COMPEL PRODUCTION OF DISCOVERY**

**OBJECTION**

Pursuant to Fed. R. Crim. P. 59(a) the defendant Joseph respectfully objects to the Magistrate Judge's order denying a request for all Jencks material on due process grounds and further objects to the order denying a request for two discrete sets of Jencks material on particularized grounds. The defendant Joseph submits that the Magistrate Judge's order was clearly erroneous and contrary to law for the reasons set forth below.

**PROCEDURAL HISTORY**

An indictment charging the defendants Joseph and MacGregor with conspiracy to obstruct justice and the defendant MacGregor with perjury was returned on April 25, 2019. *See* Docket No. 1. The indictment alleges that both Joseph and MacGregor intentionally acted in a manner allowing a non-citizen to escape through the back door of the Newton District Court during normal court hours after an off-the-record sidebar conference which included just three people: (1) a Defense Attorney for the non-citizen; (2) an Assistant District Attorney; and (3) Judge Joseph. The indictment separately and further alleges that the defendant MacGregor

1

subsequently lied to a grand jury as to whether he knew ICE was at the courthouse waiting to take custody of the non-citizen.

After the automatic discovery process, the defendants Joseph and MacGregor filed a Joint Motion to Compel Production of Discovery (July 3, 2019). *See* Docket No. 32. The defendant Joseph also filed a Request for Production and Inspection of Notes Taken By Government Counsel and Agents During Interviews of Government Witnesses. The government opposed the core of these requests and the Magistrate Judge subsequently denied both motions in large part on October 8, 2019).[1] *See* Docket No. 86.

Within the Joint Motion to Compel Production of Discovery, the defendants first sought all Jencks material for government witnesses asserting due process as grounds for the request. Second, the defendants sought two sets of Jencks material in particular: (1) any statements of the Defense Attorney, and (2) any statements of the Assistant District Attorney. The defendants argued that the Indictment alleged the agreement occurred during one 52 second off-the-record sidebar conversation with the Defense Attorney and the Assistant District Attorney and therefore the early production of the Jencks material of those two particular witnesses was critical for all parties, the Court included, in assessing the issue of severance prior to trial.

Both in its written opposition and at oral argument, the government represented to the court that it did "not view this as a severable case. *See* Docket No. 40 at 3 n. 1 (written argument); Docket 101 at 16-17 (oral argument transcript).[2] The government argued that the

---

[1] The government did not oppose so much of the Defendants' Joint Motion to Compel Production of Discovery as sought leave to file any motion for grand jury instructions late. That request was subsequently allowed by the Magistrate Judge. Any such motion is now required to be filed on or before October 29, 2019. *See* Docket No. 93.

[2] At oral argument the government stated: "If they had some argument for severance – but they don't. It's all hypothetical. It's all, well, there may be some *Bruton*, there may be a statement. Yeah, that's true in every case, as your Honor pointed out, where you've got more than one defendant. And so there's nothing here." The Court: "Is there anything the Government can say about whether there is a basis to worry that severance might be necessary or might be advisable in this case.?" Government: "We do not view this as severable case." The Court: "I mean, you

2

defendants had failed to demonstrate a particularized need and that the request was "speculative." *Id.*

The Magistrate Judge's denial of the defendants' requests stated that because of the "general rule that those indicted together should be tried together, and on the basis of the arguments presented, the defendants have not demonstrated a particularized need for the grand jury minutes." *See* Docket No. 86.

## SUBSEQUENT "DISCOVERY"

After oral argument and before the due date for filing these objections, the defendant Joseph learned three additional pieces of information.

**First**, at the time of oral argument on these discovery motions (August 5, 2019), the defendant Joseph had received certain automatic discovery and the defendant MacGregor had separately received his own batch of automatic discovery. On August 5, 2019, the defendant Joseph was not aware of the specific nature of the automatic discovery provided the defendant MacGregor.

However, after oral argument the defendant Joseph was provided an opportunity to review MacGregor's automatic discovery (not by the government) and noted a not-insubstantial *Bruton* issue – one not flagged by the government for the Magistrate Judge.[3] Although on its face, the government could remedy the issue by simply agreeing to not using a certain statements

---

understand what the concerns are –." Government: "I do." Court: "—and having heard it, you're representing that, from the Government's vantage point sitting on this information, the Government does not view this as a severable case." Government: "Correct. Taking into account *Bruton* and every other basis for severance, we do not view this as a severable case." Docket 101 at 16, 6-17, 1.

[3] The defendant MacGregor was alleged to have said to a transportation officer that "he was told by his judge to release [him] out a different exit or a different way" (Bates M 0045, lines 15-16) and similarly he said to an arresting officer that "I only did what she told me to do." (Bates M 0717). (However, statements by the defendant MacGregor to the grand jury and to superiors do not mention the judge giving any direction to the Defense Attorney or to MacGregor.)

3

of the defendant MacGregor, the government may or may not choose that course and, still, that may well not be the final outcome regarding the issue.

**Second**, the government filed its response to the defendant's Motion to Dismiss just four days ago (October 18, 2019). In its response the government stated: "*The Defense Attorney and [the co-defendant] MacGregor conferred <u>and agreed that, if Judge Joseph ordered A.S. to be released from court custody</u>*, MacGregor would use his security access card to release A.S. out the rear sally port exit of the courthouse in order to evade arrest by the ICE Officer waiting in the front lobby (emphasis added)." *See* Docket No. 98-1 at 3. The indictment, however, merely alleged that: "It was part of the conspiracy that defendant MacGregor and the Defense Attorney agreed that defendant MacGregor would use his security access card to release A.S. [the noncitizen] out the rear sally-port exit in order for A.S. to evade arrest by the ICE Officer at the NDC Courthouse." *See* Docket No. 1, ¶ 26. The indictment did not specify <u>when</u> the Defense Attorney and the Court Officer conferred – <u>before</u> the case was last called and heard by the Judge <u>or after</u> A.S. was ordered released and went downstairs to the lockup with the Defense Attorney and the defendant MacGregor.

**Third**, the in the same response, the government stated: "During the unrecorded portion of the proceeding, Judge Joseph and the Defense Attorney <u>agreed</u> to create a pretext that would allow A.S. , after being released from court custody by Judge Joseph, to go downstairs to the lockup so that he could be let out the rear sally port exit in order to evade arrest by the ICE Officer waiting in the front lobby." *See* Docket No. 98-1 at 16 of 47. The indictment itself merely alleged that: "With the recorder off, defendant Joseph and the Defense Attorney <u>discussed</u> a way to have A.S. avoid being arrested by the ICE Officer (emphasis added)." *See* Docket No. 1, ¶ 30.

Together, the second and third disclosures change the case from a defense attorney discussion with the judge at sidebar followed by a defense attorney-initiated agreement with the court officer in the lockup to an agreement with the court officer before the court hearing and then another agreement with the judge made in 52 seconds.[4]

## ARGUMENT

The government representation to the Magistrate Judge that severance was not a "live" issue in this case and therefore neither was disclosure of the two sets of Jencks material; re-examination is required in light of these three disclosures.

**Bruton**

**First**, the statements contained within the discovery provided by the government to the co-defendant MacGregor directly implicate *Bruton*, which precludes a trial of two defendants where a post-arrest statement of one non-testifying defendant, allegedly implicating another defendant, is admitted and where the defendant making the statement does not take the witness stand so as to be subject to cross-examination. *Bruton v. United States,* 391 U.S. 123 (1968).

That is precisely the nature of the statement automatically disclosed by the government to the defendant MacGregor but not to the defendant Joseph.[5]

Of course, as noted, the government may choose to excise the statement from its case-in-chief, but neither the Magistrate Judge nor the defendant Joseph were on notice of the issue at the time of the government's representation. Although the *Bruton* issue alone may not compel release of the two, particular sets of Jencks statements sought, it nevertheless is the first step in establishing that severance denial is far from a foregone conclusion.

---

[4] These changes substantially exacerbate the antagonistic defense issue as described more fully *infra*.

[5] Again, the statements arguably differ markedly from other statements made by the defendant MacGregor but nevertheless, the statements exist.

**Antagonistic Defenses**

**Second**, the government has asserted that it intends to try the obstruction counts involving both Joseph and MacGregor together with the perjury count against MacGregor. The essence of MacGregor's perjury count is that MacGregor told the grand jury that he DID NOT know that ICE was in the courthouse waiting for the release of the non-citizen – which the government alleges was a false statement. At this juncture, it appears that the defendant Joseph cannot help but argue that virtually every single employee of the small courthouse DID know that ICE was there and that it would be preposterous to suggest that she would knowingly participate in any scheme to let the non-citizen out in a manner so obvious to all the court world so as to avoid ICE.

Should antagonistic finger-pointing arise, the question of severance turns on the degree of conflict. *Zafiro v. United States*, 506 U.S. 534, 537 (1993); *United States v. Luciano Pacheco*, 794 F.2d 7, 9 (1st Cir. 1986). Where acceptance of one defense will lead a jury to convict the other defendant, severance is warranted. *United States v. Serpoosh*, 919 F.2d 835, 838 (2nd Cir. 1990). (mutual conduct of counsel).

Here, if the jury accepts a defendant Joseph contention that most, if not every employee in the Newton District Court knew ICE was there to pick up the non-citizen, the jury will necessarily convict the defendant MacGregor of perjury. Thus, severance will be required.

**Third**, based upon the government's recent, written disclosure on October 18, 2019, and its contention that the Defense Attorney and the Court Officer MacGregor *together* concocted the scheme to release A.S. through the back door before the non-citizen's case was called by the court for the last time, it would seem necessary that the defendant Joseph pursue a line of defense throughout the trial suggesting that the now-revealed-and-fully-immunized architect of this

scheme (the Defense Attorney) and the court officer are both liars – and that is, birds of a feather – particularly given the perjury indictment. (The defendant Joseph's only other option is to stand silent as to role of the defendant MacGregor in the scheme created and directed by the immunized Defense Attorney – which presently seems impossible).

That is, it would appear at this stage inevitable that counsel for the defendant Joseph will become a second team of prosecutors against MacGregor at a joint trial – a set of circumstances that also warrants severance. *See United States v. Odom*, 888 F.2d 1014, 1018 (4th Cir. 1989) (conduct of one counsel); *United States v. Andrews*, No. 1:12-Cr-100, WL 6230450 (N.D. W. Va. Nov. 26, 2013); *United States v. Singer*, No. 9:05-CR-00928, 2009 WL 5194991 (D. S.C. Dec. 22, 2009).

**Sought-After Jencks**

However, without the sought-after Jencks material for the Defense Attorney and the Assistant District Attorney, which will provide the precise nature of the claimed statements of both the defendant Joseph and the defendant MacGregor, counsel for Joseph and MacGregor would be not fulfilling their obligations as zealous but careful lawyers if they jumped to filing a severance motion no matter how necessary it presently appears.

**Standard for Jencks**

After the Jencks Act's passage, the Supreme Court nevertheless noted: "In almost every enactment there are gaps to be filled and ambiguities to be resolved by judicial construction. This statute is not free of them." *See United States v. Palermo* 360 U.S. 343, 349 (1959). The Court in *Proctor & Gamble* had previously held that Jencks statements could be ordered provided <u>earlier</u> than after direct testimony when good cause was shown with particularity. 356

U.S. 677, 682 (1958)[6]  Although mere "relevancy or usefulness" were not to be deemed sufficient, the Court noted: "We do not reach in this case problems concerning the use of the grand jury transcript at the trial to impeach a witness, to refresh his recollection, to test his credibility and the like. Those are cases of particularized need where the secrecy of the proceedings is lifted discretely and limitedly." *Id*.

These few examples were not said to be self-limiting by character or category. For example, although Jencks material fitting within a constitutional right of the defendant would constitute good cause (see the *Brady* portion of the District of Massachusetts automatic discovery rules), a constitutional underpinning is not a prerequisite for "good cause."  In *Proctor & Gamble,* the Court noted that, if the government in fact been using a grand jury to gather material for its civil case, the flouting of the underlying policy of the law (the Sherman Act) would have amounted to "good cause." *Id*. At 683.  And certainly, this court has power to weigh disclosure when the timing may have a substantial impact on the "administration of justice*." Cf. Palermo v. United States,* 360 U.S. at 345.

A court called upon to determine whether grand jury transcripts should be released has substantial, though not unlimited, discretion. *See United States v. McMahon*, 938 F.2d. 1501, 1505 (1st Cir. 1991).  In general parties seeking disclosure must show that their request is structured to cover only material so needed. *Id*. This request is so structured.

**Substantial Impact on the Administration of Justice**

Here, failure to provide all the Jencks material early substantially impacts the defendants' due process rights and ability to adequately prepare for trial. Failure to provide these two

---

[6] The entire grand jury proceedings transcripts had been sought in *Proctor and Gamble*. The district judge allowed the request without making findings of particularized need as to any one witness before ordering all the minutes of the grand jury proceeding produced.

particular sets of Jencks material (of the Defense Attorney and the Assistant District Attorney) at this stage impacts both the quality of the defense and the administration of justice by the Court itself.

The alternative is for the government to provide the two sets of Jencks material a *mere* 21 days before trial. Counsel for the defendants will need a reasonable period to review the Jencks material and prepare a severance motion. All parties will be then sorting out severance issues on the eve of trial – after other items such as trial briefs, preliminary jury instructions and the like as would normally be due. In a run-of-the mill case, that might well not be an issue. Here, the defendant Joseph has made a more than substantial showing that this difficulty is not run-of-the-mill.

In balancing the competing interests in this case, it is also worthwhile noting that this matter is unlike the Sherman Act case in *Proctor & Gamble* where witnesses might testify expecting or desiring not to become known. Here all the names of the witnesses are already known to the defense.[7] Rather, this case is reasonably straight forward with a reasonable expectation by any witness called to the grand jury of also being called to testify at trial, more like any state grand jury matter where grand jury minutes are given out as part of automatic discovery in due and normal course. Moreover, this United States Attorney's Office, which has claimed to be applying the same law to all as the rationale for pursuing this prosecution in the first place, has time and again picked and chosen when it will provide early Jencks, not following any particular practice. For example, in *United States v. Perry*, 37 F. Supp. 3d 546, 560561 (D. Mass. 2014), a case actually cited by the government in response to the defendant's companion motion for the notes, the government in fact *agreed* to provide "early Jencks" some two months

---

[7] The Magistrate Judge at the initial appearance ordered the government to provide the names of the witnesses in response to the government's request for a stay-away order.

in advance – three times sooner than is likely to happen here – making its handling of Jencks in this matter an arbitrary "game of blind man's bluff" and no "fair contest." *See United States v. Proctor & Gamble*, 356 U.S. at 682. *See* Docket No. 41 at 2.

## CONCLUSION

This request, unlike *Proctor,* is strictly limited and tailored. It is not speculative as asserted by the government. Because of recent disclosures, it is now known that there is in fact a reasonable basis for severance either via *Bruton* or via antagonistic defenses both in the form of choices of truth for the jury between defendants and in the form of two sets of prosecution teams in the courtroom. Moreover, because of the government's response to the defendants' Motions to Dismiss, we know for certain that the defendant Joseph made statements in the presence of both the Defense Attorney and the Assistant District Attorney – allegedly concerning the presence of ICE.[8] Moreover, the Defense Attorney spoke with the defendant MacGregor both before and after the central court appearance – allegedly concerning the presence of ICE. Therefore, both sets of statements are essential to determining the degree of antagonism inherent in a joint trial – that is, the believability of the defendant MacGregor's position that he was not aware of the presence of ICE in the courthouse.

Consequently, the defendant Joseph asks that the Court set aside so much of the Magistrate Judge's order denying the defendants the particular Jencks material of the Defense Attorney and the Assistant District Attorney and find that there is in fact good cause to order those materials to be provided to the defense so that both counsel and the Court may properly

---

[8] At least one court has ordered the statements of any defendant made to any government witness, even if contained within Jencks material, must be turned over to each defendant pursuant to Fed. R. Crim. P. 16(a)(1)(B). *See United States v. Thevis*, 84 F.R.D. 47 (D. Georgia 1979).

10

prepare to address this severance issue, in the cause of, and in the administration of substantial justice.[9]

However, it should be noted that an equally critical issue, if not more, given the current briefing on the Motions to Dismiss, exists – that is the line between exculpatory *Brad*y material (due within 28 days as automatic discovery) and impeachment *Brady/Giglio* (not due until 21 days before trial).  That line is thin if non-existent, particularly say for example, if the defendant Joseph was arguably in charge not just of her courtroom but the courthouse including the choice of exits.  Surely, the government comes down on its side of the argument and so any statements by the defendant Joseph (and potentially the defendant MacGregor) to the Defense Attorney and to the Assistant District Attorney are at best fodder for impeachment and are thus 21-day disclosures – in its mind.  But the prosecution in this case is so unprecedented, so defined with uncertainty, that should the Court decline to provide the Jencks material of the Defense Attorney and the Assistant District Attorney directly to defense counsel now, the defendant Joseph respectfully requests that the Court order production of those materials to the Court itself for *in camera* review and an independent examination to determine whether the materials contain what may be deemed potentially exculpatory (automatic discovery) *Brady* content.[10]

Respectfully submitted,

---

[9] To the extent that it may be suggested that the new "discovery" required a motion for reconsideration before the Magistrate Judge, this matter has been reported as ready for conference to the District Judge.

[10] The requirement for court inspection when a dispute has arisen as to whether Jencks (<u>and</u> *Brady*) material exists and must be disclosed to defense counsel was first outlined in *Palermo,* 360 U.S. at 354 ("…when it is doubtful whether the production of a particular statement is compelled by statute, we approve the practice of having the Government submit the statement to the trial judge for an in camera determination"); *see also United States v. Scotti*, 47 F.3d 1237, 1248 (2d Cir. 1995).

11

SHELLEY M. RICHMOND JOSEPH

/s/ Thomas M. Hoopes
THOMAS M. HOOPES, ESQ.
BBO No. 239340
/s/ Douglas S. Brooks
DOUGLAS S. BROOKS, ESQ.
BBO No. 636697
LibbyHoopes, P.C.
399 Boylston Street
Boston, MA 02116
617.338.9300
thoopes@libbyhoopes.com
dbrooks@libbyhoopes.com

/s/ Elizabeth N. Mulvey
ELIZABETH N. MULVEY, ESQ.
Crowe & Mulvey
77 Franklin Street, 3rd Floor
Boston, MA 02110
617.426.4488
emulvey@croweandmulvey.com

Dated: October 22, 2019

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-participants on October 22, 2019.

/s/ Thomas M. Hoopes
Thomas M. Hoopes