UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Crim. No. 19-10141-LTS |
| SHELLEY M. RICHMOND JOSEPH, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' OPPOSITION TO DEFENDANT JOSEPH'S OBJECTION
TO THE MAGISTRATE COURT'S ORDER DENYING JOSEPH'S MOTION TO
COMPEL PRODUCTION OF (1) GRAND JURY TRANSCRIPTS OF TWO
WITNESSES AND (2) EARLY JENCKS FOR ALL TRIAL WITNESSES**

The government hereby responds to defendant Joseph's objection (Doc. No. 105, the

"Objection") to the portion of the Magistrate Court's Order, Doc. No. 86 (the "Mag. Order"),

denying Joseph's motion to compel the government to produce (a) the grand jury transcripts of the

witnesses identified in the Indictment as the Defense Attorney and the Assistant District Attorney

("ADA"), and (b) early Jencks for all trial witnesses. Because the Magistrate Court's decision

adheres to controlling precedent, because the Magistrate Court correctly applied the law to the

facts of this case, and because Joseph's so-called "additional pieces of information" do not change

the fact that Joseph still has not met her burden of showing "particularized need" for the two grand

jury transcripts she seeks or any legal basis to require early Jencks, the government requests that

the defendant's Objection be overruled.

**RELEVANT PROCEDURAL HISTORY**

The Indictment (Doc. No. 1, filed April 25, 2019, "Indt.") charged defendant Joseph and

defendant MacGregor with, among other things, conspiracy to obstruct justice, pursuant to 18

U.S.C. §§ 1512(k) and 1512(c)(2) for their respective roles in assisting in and coordinating the

release of an alien subject ("A.S.") from the rear lockup exit of the Newton District Courthouse in

order to prevent an ICE officer from taking custody of A.S. on April 2, 2018.

Notably, the Indictment charged a single conspiracy that consisted of two agreements:

> It was a part of the conspiracy that defendant MACGREGOR and the Defense Attorney agreed that defendant MACGREGOR would use his security access card to release A.S. out the rear sally-port exit in order for A.S. to evade arrest by the ICE Officer at the NDC Courthouse.

> It was a part of the conspiracy that defendant JOSEPH and the Defense Attorney agreed to create a pretext for A.S. to be brought back downstairs to the lockup so that A.S. could be released out the rear sally-port exit in order to evade arrest by the ICE Officer at the NDC Courthouse.

Indt. ¶¶ 26-27. There was no allegation that defendant Joseph and defendant MacGregor had ever

agreed with each other to release A.S. outside the rear lockup exit for the specific purpose of having

A.S. evade arrest by the ICE Officer at the NDC Courthouse. To confirm the obvious, the

government further described the charged conspiracy as a "'classic hub-and-spokes conspiracy,'

with the Defense Attorney serving as the hub." *See* Gov. Opposition to Defendant Joseph's Motion

to Dismiss, Doc. No. 98 at 4, n. 2.

From May 23, 2019 to July 18, 2019, the government produced over 19,000 individually

bates-stamped items/pages of discovery to defendant Joseph. Included among these items were

defendant Joseph's emails, prior recordings of her court proceedings, records associated with her

judicial appointment, Newton District Court and Newton Police Department records, government

records related to A.S., trial court orientation and training materials, and statements made by

defendant Joseph to other court officials to exculpate herself, among other things. To date, neither

defendant Joseph nor defendant MacGregor has produced any reciprocal discovery to the government.

From May 23, 2019 to July 18, 2019, the government provided defendant MacGregor with over 11,000 individually bates-stamped items/pages of discovery.  In particular, the May 23, 2019 discovery production (consisting of only 729 items) included (1) defendant MacGregor's April 2, 2018 statement to a transportation officer; and (2) defendant MacGregor's April 25, 2019 statement to law enforcement prior to his federal arraignment (together, the "MacGregor Statements").  Defendant Joseph has labeled the MacGregor Statements as "SUBSEQUENT 'DISCOVERY'" in her Objection, stating that she was unaware of such statements as of August 5, 2019.  Doc. No. 105 at 3, n.3.

On July 3, 2019, defendants Joseph and MacGregor jointly moved to compel the production of additional discovery, including all Jencks materials for all trial witnesses, specifically including the grand jury testimony of the Defense Attorney and the ADA.  *See* Doc. No. 32 at 6.  Neither party raised the MacGregor Statements as a basis for severance or additional discovery.  Instead, the defendants claimed that they had a particularized need for grand jury testimony because "in order to fully and effectively evaluate and present any Motion to Sever," the defense needed to know whether or not "the Defense Attorney grand jury minutes may or may not contain statements allegedly made by the co-defendant MacGregor inculpating the defendant Joseph … [and] the grand jury minutes of the Assistant District Attorney may or may not contain statements inculpating the defendant MacGregor."  *Id.*

The government responded on July 17, 2019 (Doc. No. 40), pointing out that the defendants' hypotheses and speculation that the grand jury minutes of the Defense Attorney and

the ADA "may" contain material supporting a severance motion did not suffice as "particularized need" as required by the Supreme Court for the production of grand jury proceedings.  Doc. No. 40 at 3.  The government also noted that the defendants had failed to cite to any case supporting their position that constitutional due process required the production of early Jencks.  *See id.* at 2.

The Magistrate Court heard oral arguments concerning the motion to compel on August 5, 2019 (*see* transcript attached as Exhibit A) and issued its Order on October 8, 2019 (Doc. No. 86). The Magistrate Court denied the defendants' joint motion to compel additional discovery, including the grand jury minutes, in its entirety:

> The defendants at the hearing on the motions first focused on their joint request for the grand jury minutes of the defense counsel and assistant district attorney in the underlying state court matter. The defendants contend that it may be appropriate or necessary to order a severance in this case and argued that the grand jury minutes were necessary to help them evaluate the issue. Accordingly, the defendants argue, there is a particularized need for the discovery that overcomes the secrecy typically afforded the grand jury. *See Douglas Oil Co. v. Petrol Shops Northwest*, 444 U.S. 211, 221 (1979).

> The government, however, countered that it has already produced the grand jury minutes of three witnesses that arguably could contain exculpatory evidence. The government further argued that, to the extent the defendants argued that the additional grand jury materials might tend to suggest that one defendant sought to place criminal responsibility on the other, that still would be insufficient to show a particularized need for the discovery because evidence of finger-pointing is not sufficient for severability; instead, the parties must have antagonistic defenses. *See, e.g., United States v. DeCologero*, 530 F.3d 36, 52-53 (1st Cir. 2008). The court finds that, given the general rule that those indicted together should be tried together, and on the basis of the arguments presented, the defendants have not demonstrated a particularized need for the grand jury minutes. As the remainder of the motion to compel goes to items the government has already produced or does not have in its possession, the motion is DENIED in its entirety.

Doc. No. 86.   Defendant Joseph now claims that the Magistrate Court's decision was clearly erroneous and contrary to law.

## ARGUMENT

### Relevant Legal Standards

In a recent decision involving a challenge to a magistrate court decision, a Massachusetts Federal District Court succinctly set forth the legal standard necessary to set aside such order:

> Federal Rule of Criminal Procedure 59(a) provides that the district court must "consider timely objections and modify or set aside any part of the [magistrate judge's] order that is contrary to law or clearly erroneous." Fed. R. Crim. P. 59(a); *see also United States v. Garcia*, 983 F.2d 1160, 1166 (1st Cir. 1993) ("A magistrate's discovery order may be set aside where the order is clearly erroneous or contrary to law.") The "clearly erroneous" standard, which applies to any factual findings made by the magistrate judge, *cf. Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 4 (1st Cir. 1999); *see also United States v. Gioia*, 853 F. Supp. 21, 26 n.3 (D. Mass. 1994), means that the Court "must accept both the trier's findings of fact and the conclusions drawn therefrom unless, after scrutinizing the entire record, [the Court] 'form[s] a strong, unyielding belief that a mistake has been made.'" *Phinney*, 199 F.3d at 4 (quoting *Cumpiano v. Banco Santander, P.R.*, 902 F.2d 148, 152 (1st Cir. 1990)) (alterations added). "While the First Circuit has not discussed the meaning of 'contrary to law,' other courts have found that an order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *United States v. Gorski*, 36 F. Supp. 3d 256, 264 (D. Mass. 2014) (collecting cases) (internal quotations and citation omitted).

*United States v. Facteau*, No. 1:15-CR-10076-ADB, 2016 WL 4445741, *3 (D. Mass. Aug. 22, 2016).

Further, central to her request for this Court to reject the Mag. Order is her claim that "additional information" should now entitle her to early production of grand jury testimony of the Defense Attorney and the ADA.  But because grand jury proceedings are secret, a defendant

seeking a grand jury transcript which is not otherwise discoverable, must show "'particularized need.'" *United States v. McMahon*, 938 F.2d 1501, 1505 (1st Cir. 1991) (quoting *United States v. Procter & Gamble*, 356 U.S. 677, 683 (1958)). Examples of particularized need include "problems concerning the use of the grand jury transcript at the trial to impeach a witness, to refresh his recollection, to test his credibility and the like." *Procter & Gamble*, 356 U.S. at 683.  To show particularized need, a defendant must demonstrate "'that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed.'" *United States v. Gurry*, Crim. No. 16-10343-ADB, 2019 WL 247205, at *2 (D. Mass. Jan. 17, 2019) (quoting *Douglas Oil Co. v. Petrol Stops N.W.*, 441 U.S. 211, 222 (1979)). "Speculative allegations" are insufficient to meet this burden.  *Id.*

Finally, under the Jencks Act a defendant is not entitled to a witness's statement "until said witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a); *see, e.g., United States v. Neal*, 36 F.3d 1190, 1197 (1st Cir. 1994).  District courts are not empowered to compel the government to produce a Jencks statement early except where the statement falls under *Brady* or *Giglio v. United States*, 405 U.S.150 (1972). *See United States v. Perry*, 37 F. Supp. 3d 546, 560-61 (D. Mass. 2014) (citing cases).

Because defendant Joseph has not shown that the Magistrate Court's Order denying her request for early Jencks, including the grand jury testimony of the Defense Attorney and the ADA, is "clearly erroneous" or "contrary to law," the Court should overrule the Objection.

**Defendant Joseph's Three Claims of "Additional Information" Do Not Establish Particularized Need for Early Disclosure of Grand Jury Minutes**

<u>First Claim</u>:  Joseph's first category of "additional information" consists of the MacGregor Statements, which were produced to defendant MacGregor on May 23, 2019.  This claim does not establish particularized need for early disclosure of the grand jury transcripts of the Defense Attorney or the ADA.  In the first instance, the MacGregor Statements do not implicate defendant Joseph in a conspiratorial agreement with defendant MacGregor.  This is consistent with the Indictment.  The April 2, 2018 court recording recounts the following exchange:

| | |
|---|---|
| Defendant MACGREGOR: | He's released, Mr. Clerk? |
| Clerk: | What's that? |
| Defendant MACGREGOR: | He's released? |
| Clerk: | He is. |
| Defense Attorney: | Yep. |
| Defendant JOSEPH: | **He is. Um, [Defense Attorney] asked if the interpreter can accompany him downstairs, um, to further interview him –** |
| Defense Attorney: | Yes, please -- |
| Defendant JOSEPH: | **- and I've allowed that to happen**. [2:54 p.m.] |

Indt. ¶ 22 at 10.  From the plain language of the Indictment, defendant Joseph had ordered A.S. released and had further ordered that the Defense Attorney was allowed to accompany A.S. downstairs (which led directly to the lockup area, and rear exit, of the NDC).  The MacGregor Statements are thus entirely consistent with the above courtroom exchange with the Newton District Court.  That is, defendant MacGregor will likely argue that he interpreted defendant Joseph's order to mean that Joseph, by allowing A.S. to be brought by MacGregor to the

- 7 -

downstairs lockup area, was implicitly directing MacGregor to release A.S. from the rear exit as a matter of convenience, and not as part of a conspiracy.  Because this interpretation does not inculpate Joseph, *Bruton* is not implicated.  *See, e.g., United States v. Vega Molina*, 407 F.3d 511, 520 (1st Cir. 2005) (holding that a *Bruton* severance may be required only if the codefendant's statement is "inculpatory on its face"); *United States v. Liberatore*, Crim. No. 16-10211-ADB, 2017 WL 2294283, at *4 (D. Mass. May 25, 2017) (denying defendant's severance motion where codefendant's statement was "ambiguous and open to interpretation," and did not "directly implicate" the moving defendant) (citing *Vega Molina*, 407 F.3d at 520).

Furthermore, because the government charged a hub-and-spokes conspiracy, and because the Indictment does not allege that defendant Joseph and defendant MacGregor agreed with one another to release A.S. for the purpose of evading ICE, the government does not anticipate introducing the MacGregor Statements at trial at this time.  As the defense has recognized (*see* Objection at 3-4), this too obviates a *Bruton* severance.

Finally, to the extent that defendant Joseph seeks severance based on the MacGregor Statements, she already has the information necessary to inform her motion.  And, therefore, defendant Joseph has failed to establish why early disclosure of the grand jury testimony is necessary to make her severance claim on this basis.  In other words, defendant Joseph has failed to link the MacGregor Statements to any particularized need for the early disclosure of the grand jury testimony of the Defense Attorney and the ADA.

Second Claim:  Joseph claims that the government's October 18, 2019 response (Doc. No. 98) to her Motion to Dismiss the Indictment (Doc. Nos. 59-60) contained a second category of "additional information" when the government stated that "The Defense Attorney and MacGregor

conferred and agreed that, if Judge Joseph ordered A.S. to be released from court custody, MacGregor would use his security access card to release A.S. out the rear sally port exit of the courthouse in order to evade arrest by the ICE Officer waiting in the front lobby.  *Id.* ¶ 26."  *See* Objection at 4.  This was entirely consistent with the Indictment, *see* ¶ 26; this is not a new fact; and this adds nothing to the "particularized need" calculus that the Magistrate Court had already considered in the Mag. Order.

What is more, the defendant's claim as to temporal vagueness in the Indictment as to when defendant MacGregor and the Defense Attorney conferred regarding A.S.'s release does not rise to the level of factual error.  That vagueness, if any, is neither erroneous nor consequential to the issue of severance that is spurring the defendant's request for early disclosure of grand jury material.

Third Claim:   Joseph claims that she received "additional information" when the government stated: "During the unrecorded portion of the proceeding, Judge Joseph and the Defense Attorney agreed to create a pretext that would allow A.S., after being released from court custody by Judge Joseph, to go downstairs to the lockup so that he could be let out the rear sally port exit in order to evade arrest by the ICE Officer waiting in the front lobby."  Objection at 4, Doc. No. 98 at 5.  This is entirely consistent with the Indictment, *see* ¶¶ 27, 29, 32 ("After ordering A.S.'s release, defendant JOSEPH ordered that A.S. be returned downstairs to the lockup for the Defense Attorney to 'further interview' A.S., which, in reality, was a pretext to allow A.S. to access the rear sally-port exit in order to avoid the ICE Officer."  *Id.* ¶ 32).  This, too, is not a new fact. And this adds no weight to the "particularized need" that the defendant was required to establish to the Magistrate Court.

In sum, the three categories of "additional information" do not constitute new information or, if "new," are entirely consistent with the Indictment.  Defendant Joseph has failed to link the so-called "additional information" to any particularized need for the early disclosure of the grand jury testimony of the Defense Attorney or the ADA.  And to the extent that defendant Joseph believes that she "now" has "additional information" to inform a severance motion, she has failed to demonstrate how the Mag. Order has prejudiced her from filing her motion.  In the absence of an "unyielding belief" that error was made, the Court "must accept both the [magistrate judge's] findings of fact and the conclusions drawn therefrom," *Facteau*, 2016 WL 4445741, at *3.  Based on this thin record, defendant Joseph now asks this Court to find that Mag. Order was clearly erroneous or contrary to law.  The Court should reject this invitation.

### Defendant Joseph's Claim of Antagonistic Defenses Does Not Establish a Particularized Need for Early Disclosure of Grand Jury Minutes

In her Objection, defendant Joseph argues that "antagonistic finger-pointing" will arise if her lawyers argue, essentially, that because everyone in the Newton courthouse knew that ICE was present in the courthouse, defendant MacGregor must have known that ICE was in the courthouse.  Objection at 6.  She also argues that finger-pointing will arise if she accuses defendant MacGregor and the Defense Attorney of being liars and the main culprits of the conspiracy.  *Id.* at 6-7.

First, these are general arguments as to severance and bear no relation to the issue at bar – that is, why defendant Joseph needs early disclosure of two grand jury transcripts to make these severance arguments.  Second, defendant Joseph does not explain why these arguments were not articulated to the Magistrate Court in her and MacGregor's joint motion to compel discovery or during the hearing on that motion.  *See* Transcript of Motion Hearing (Exhibit A) at 23-25 (Magistrate Judge asked MacGregor's counsel whether she was arguing finger-pointing with

regard to a hypothetical statement by MacGregor that Joseph told him to let A.S. out the back door; neither defendant argued finger-pointing with regard to potential trial testimony that everyone in the courthouse knew ICE was present that day). Third, defendant Joseph does not explain why the Magistrate Court's reasoning under *United States v. DeCologero*, 530 F. 3d 36, 52-53 (1st Cir. 2008) ("[W]here there is merely some dissonance," however, "we will usually not reverse a trial court's denial of severance.") (quoting *United States v. Tejada*, 481 F.3d 44, 55 (1st Cir. 2007)), was clearly erroneous or contrary to law. *See* Doc. No. 86. Fourth, defendant Joseph's assertions do not necessarily implicate antagonistic finger-pointing. For example, Joseph would only be permitted to testify that she was aware that ICE was present in the courtroom, *see* Fed. R. Evid. 602, and if other witnesses testified that they were aware that ICE was present, this issue would present itself at MacGregor's trial whether or not he is tried separately from Joseph. Moreover, because the government does not anticipate introducing the MacGregor Statements (*i.e.*, any claim by MacGregor that Joseph directed MacGregor to release A.S. with the specific purpose of evading ICE), any Joseph allegation that MacGregor is a liar would serve no purpose. Finally, antagonistic finger-pointing is not necessarily a basis for severance in any event. "[A]ntagonistic defenses only require severance if the tensions between the defenses are so great that the finder of fact would have to believe one defendant at the expense of the other." *United States v. Rose*, 104 F.3d 1408, 1415 (1st Cir. 1997). Defendant Joseph's potential testimony that she knew ICE was at the courthouse would not require the jury to believe that defendant MacGregor also had such knowledge.

Joseph's severance arguments do not relate to particularized need for early production of grand jury testimony, and they do not demonstrate any error of law or fact by the Magistrate Court,

much less clear error.  Therefore, defendant Joseph's Objection should be overruled on these grounds.  *See United States v. Aboshady*, 297 F. Supp. 3d 232, 235 (D. Mass. 2018) (review of factual error is more deferential to the magistrate judge).

>    **Defendant Joseph's Renewed Request for Early Jencks Does Not Demonstrate that the Magistrate Order Constituted Clear Error or was Contrary to Law**

In her Objection, defendant Joseph renews her request for early production of Jencks material for all trial witnesses based upon "good cause" and the fair "administration of justice."  Objection at 8-9.  These arguments are without merit.  To begin, defendant Joseph fails to demonstrate any nexus between those principles and the Rule 59(a) standard, *i.e.*, that the Mag. Order was clearly erroneous or contrary to law.  Further, the case law cited by the defendant does not support her contentions.

Defendant Joseph cites *United States v. Proctor & Gamble*, 356 U.S. 677 (1958) for the proposition that the "Court in *Proctor & Gamble* had previously held that Jencks statements could be ordered provided <u>earlier</u> than after direct testimony when good cause was shown with particularity."  Objection at 7-8 (emphasis in original), citing *Proctor & Gamble*, 356 U.S. at 682.  The Supreme Court made no such holding regarding early Jencks.  *Proctor & Gamble* did not address the Jencks Act, but instead dealt with civil discovery rules pursuant to Fed. R. Civ. P. 26 and 34.  Moreover, even under the more liberal civil discovery rules, and even though the party seeking discovery had established the "relevance and usefulness of the testimony sought," the Supreme Court found that "good cause" had not been established to require disclosure of grand jury proceedings.  *Proctor & Gamble*, 356 U.S. at 682-683.

Further, in arguing that the Court should proactively grant early Jencks material, defendant Joseph quotes *United States v. Palermo*, 360 U.S. 343, 349 (1959) as follows: "In almost every

- 12 -

enactment there are gaps to be filled and ambiguities to be resolved by judicial construction.  This statute is not free of them."  Objection at 7 (citing *Palermo*).  The next sentence, however, omitted from her brief, reads:  "Here, however, the detailed particularity with which Congress has spoken has narrowed the scope for needful judicial interpretation to an unusual degree.  The [Jencks] statute clearly defines procedures and plainly indicates the circumstances for their application." *Palermo*, 360 U.S. at 349-350.  A selective reading of Supreme Court jurisprudence should not form the basis for impugning the Magistrate Court's decision.

Finally, defendant Joseph cites to *United States v. Perry*, 37 F. Supp. 3d 546, 560-561 (D. Mass. 2014) to support her early Jencks request.  But the circumstances of *Perry* – a complex case involving four defendants, 30 separate counts, including a RICO conspiracy spanning several years – are not analogous to this case.  The defendant concedes as much: "[T]his case is a reasonably straight forward case with a reasonable expectation by any witness called to the grand jury of also being called to testify at trial[.]"  Objection at 9.  Moreover, in *Perry* the government voluntarily produced early Jencks; it was not court-ordered.

These grounds do not form a basis to find that the Magistrate Court acted contrary to law or rendered its decision in a clearly erroneous fashion.

**CONCLUSION**

The Magistrate Court adhered to controlling precedent and correctly applied the law to the facts of this case when it denied the defendants' joint motion to compel the production of early Jencks for all trial witnesses, specifically including the grand jury testimony of the Defense Attorney and the ADA.  Defendant Joseph has failed to demonstrate factually or legally that the Magistrate Court committed clear error or acted contrary to law in rendering its decision. Therefore, and for all of the foregoing reasons, the government respectfully requests that the Court deny defendant Joseph's Objection.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:  *s/ Dustin Chao*
DUSTIN CHAO
CHRISTINE WICHERS
Assistant U.S. Attorneys

**Certificate of Service**

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on November 6, 2019.

*s/ Dustin Chao*
Dustin Chao