UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Crim. No. 19-10141-LTS |
| SHELLEY M. RICHMOND JOSEPH, | ) | |
| | ) | (Leave to file granted 11/18/2019) |
| Defendant. | ) | |

**UNITED STATES' SUR-REPLY IN OPPOSITION TO
DEFENDANT JOSEPH'S MOTION TO DISMISS THE INDICTMENT**

Defendant Shelley Joseph's reply brief in support of her motion to dismiss the indictment (Doc. No. 115) largely repeats the arguments raised in her principal brief (Doc. No. 60). The government submits this sur-reply to address only three arguments contained in the reply brief. For the remaining issues, the government relies on its Opposition (Doc. No. 98).

**ARGUMENT**

**1. The Action Judge Joseph Took to Facilitate the Obstruction Scheme Was Not a Judicial Act.**

The government has explained that Joseph's judicial immunity defense fails because the crime she allegedly committed was not a judicial act, and, even if it were, judicial immunity does not apply in a criminal case. Doc. No. 98 at 7-16. Joseph responds in part that the question of whether she committed a judicial act should focus not on her alleged crime but on "the acts that constitute the charged offense." Doc. No. 115 at 3. But that argument does not help her because the act she committed to facilitate the alleged obstruction – allowing A.S. to go downstairs to the lockup so that he could be released out the back of the courthouse to evade arrest by the ICE Officer – was not a judicial act.

Contrary to Judge Joseph's assertion, not all courtroom management tasks are judicial acts. "[M]any [acts] involved in . . . overseeing the efficient operation of a court . . . may [be] quite important in providing the necessary conditions of a sound adjudicative system" but are "not themselves judicial or adjudicative." *Forrester v. White*, 484 U.S. 219, 229 (1988) (holding that a judge's decisions to demote and discharge a probation officer were not judicial acts); *accord, e.g.*, *Heyde v. Pittenger*, 633 F.3d 512, 517 (7th Cir. 2011) ("Absolute immunity . . . applies only to judicial acts and does not protect the official from acts that are ministerial or administrative in nature."). *Compare Mireles v. Waco*, 502 U.S. 9, 13 (1991) (holding that "the function of directing police officers to bring counsel in a pending case before the court" is a "general function normally performed by a judge," and, therefore, a judicial act), *with Ex parte Virginia*, 100 U.S. 339, 348 (1879) (holding that the task of selecting names of persons eligible for jury service is not a judicial act because "it might as well have been committed to a private person as to one holding the office of a judge" and "often is given to county commissioners, or supervisors, or assessors").

The government does not dispute that a judge sitting in Newton District Court engages in a judicial act when she orders a criminal defendant to be released from court custody. At that point, however, the judge's role in connection with the defendant's release ends. Effecting the release – removing handcuffs, returning property, opening the door, etc. – is not a judicial act. It is a ministerial act normally accomplished by a court officer. Normally, the court officer releases the defendant from the glass dock in the courtroom out into the courtroom. Ind. ¶ 11. If a decision is made to allow a defendant to return downstairs, it is typically made by a court officer (*e.g.*, if the defendant needs to retrieve personal property) or a probation officer (*e.g.*, if the defendant needs to visit the Probation office before his release). Judge Joseph and the Defense Attorney

circumvented this normal process by agreeing to pretend that A.S. needed to go downstairs to speak with the Defense Attorney and the interpreter. Ind. ¶ 27. To execute that ruse, the Defense Attorney asked for permission to go downstairs with A.S. and Judge Joseph granted the request. Ind. ¶ 32. This exchange was not a "general function normally performed by a judge" in Newton District Court. *Mireles*, 502 U.S. at 13. It was necessitated only to facilitate the agreed-upon ruse. Accordingly, it was not a judicial act.

## 2. The Immigration Proceeding Concerning A.S.'s Removability Was Pending as of April 2, 2018.

On April 2, 2018, the immigration proceeding concerning A.S.'s removability was a "pending proceeding . . . before any department or agency of the United States" under 18 U.S.C. § 1505.[1] That proceeding began in 2003, the first time A.S. was encountered in the United States and deported. It was renewed/continued in 2007, when ICE discovered that he had reentered the country illegally and removed him again. And it was renewed/continued again on March 30, 2018, when ICE discovered that he had reentered the country illegally yet again. *See* Doc. No. 98 at 25-

---

[1] Judge Joseph incorrectly asserts that the formality required for a "proceeding" under Section 1512(c)(2) is also required under Section 1505. *See* Doc. No. 115 at 7 n.4. In fact, the statutes define the term differently. A proceeding under Section 1512(c)(2) must be "official" whereas a proceeding under Section 1505 need only be "before any department or agency of the United States." In recognition of this distinction, courts have held that a proceeding under Section 1512(c)(2) implies "some formal convocation of the agency in which parties are directed to appear," *United States v. Ramos*, 537 F.3d 439, 462-63 (5th Cir. 2008), whereas a proceeding under Section 1505 "has been defined broadly," *United States v. Schwartz*, 924 F.2d 410, 423 (2d Cir. 1991); *accord United States v. Fruchtman*, 421 F.2d 1019, 1021 (6th Cir. 1970) (holding that the term as used in Section 1505 is "of broad scope" and not limited to "only to those steps before a federal agency which are juridical or administrative"). *See generally* Govt. Opp. to Joseph's Mot. to Dismiss (Doc. No. 98) at 23 (citing cases). The proceeding concerning A.S.'s removability qualified as a "proceeding" under both Sections 1512(c)(2) and 1505. *See id.* at 23-25.

26. According to Judge Joseph, "the government argues . . . that an 'immigration proceeding' commences with respect to a noncitizen as of the moment he or she encounters an ICE agent for the first time and continues forever, such that any act that in any way impairs the government's ability to apprehend and deport such a person constitutes the obstruction of justice." Doc. No. 115 at 10; *accord id.* at 1, 17-18. This is an inflammatory distortion of the government's position.

First of all, the proceeding that Judge Joseph allegedly obstructed was an immigration proceeding *concerning removability*, not any immigration proceeding. There are many types of immigration proceedings that are not at issue in this case, *e.g.*, proceedings to adjust status and naturalization proceedings.

Second, the government is not contending that an immigration proceeding concerning removability always begins the first time an alien encounters ICE. Many immigrants who encounter ICE, either at the border or within the interior of the United States, have been lawfully admitted and are not subject to removal. A.S., however, was never lawfully admitted to the United States. He was removed in 2003 and again in 2007. Ind. ¶ 7. His alien file reflects those two removals. When ICE encountered him again in the United States on March 30, 2018, the Department of Homeland Security ("DHS") did not create a new alien file for him or assign him a new alien number. The immigration detainer and warrant of removal that Judge Joseph had in her possession on April 2, 2018, bore A.S.'s name, the alien number he was assigned in 2003, and a statement that A.S. was subject to removal from the United States based on a final order by a designated official, *i.e.*, the 2007 removal order. To say that no immigration proceeding concerning A.S.'s removal was pending as of April 2, 2018, is equivalent to saying that he was a brand new ICE encounter. This position elevates form over substance.

More fundamentally, Judge Joseph's argument misconstrues the charges against her. The government does not argue, as Judge Joseph claims, that "any act that in any way impairs the government's ability to apprehend and deport [an undocumented immigrant] constitutes the obstruction of justice." Doc. No. 115 at 10. Rather, the government maintains that certain affirmative actions taken for the purpose of interfering with an immigration proceeding concerning an alien's removability can constitute obstruction of justice if the person acts with corrupt intent. The grand jury found probable cause that Judge Joseph did precisely that.

**3. The Indictment Alleges that Judge Joseph Acted Corruptly.**

Judge Joseph contends that, to prove *mens rea* under Sections 1505 and 1512(c)(2), the government must prove corrupt intent in addition to the *Aguilar* nexus requirement. Specifically, she argues that the government must prove corrupt intent, which she defines as acting "'with an intent to procure an unlawful benefit either for [herself] or for some other person,'" *and* it must prove that her actions had the natural and probable effect of interfering with an existing or foreseeable federal proceeding, *i.e.*, the nexus test. Doc. No. 115 at 14 (quoting *United States v. Floyd*, 740 F.3d 22, 31 (1st Cir. 2014)). The government disagrees that these are separate requirements. "'The nexus limitation is best understood as an articulation of the proof of wrongful intent that will satisfy the *mens rea* requirement of "corruptly" obstructing or endeavoring to obstruct' – that is, the first element of proving a § 1512(c)(2) charge." *United States v. Erickson*, 561 F.3d 1150, 1159 (10th Cir. 2009) (quoting *United States v. Quattrone*, 441 F.3d 153, 170 (2d Cir. 2006)). But in any event, the indictment alleges that Judge Joseph acted with an intent to

procure an unlawful benefit for another person: A.S.[2]

## CONCLUSION

For these reasons and the reasons stated in its Opposition, the United States respectfully requests that the Court deny Judge Joseph's motion to dismiss the indictment.

                Respectfully submitted,

                ANDREW E. LELLING
                United States Attorney

By: *s/ Christine Wichers*
     DUSTIN CHAO
     CHRISTINE WICHERS
     Assistant United States Attorneys

### Certificate of Service

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on November 18, 2019.

                *s/ Christine Wichers*

---

[2] Judge Joseph argues that this benefit for A.S. was lawful. Doc. No. 115 at 14 n.7. It plainly was not. The benefit to A.S. was his successful evasion of arrest by a federal law enforcement officer possessing a duly authorized immigration detainer and warrant of removal.