

Thomas M. Hoopes
Email: thoopes@libbyhoopes.com

April 14, 2020

Dustin Chao
Christine Wichers
Assistant United States Attorneys
U.S. Courthouse, Suite 9200
1 Courthouse Way
Boston, MA 02210

    **RE:**    *United States v. Shelley M. Richmond Joseph*
              *Crim. No.: 19-cr-10141-LTS*

Dear Counsel:

    Pursuant to Local Rule 116.3, the defendant Shelley M. Richmond Joseph requests that the government provide discovery as follows:

    After June 6, 2019 (when the defendant Joseph made the appropriate L.R. 116.3(a) requests) and through February 2020, numerous public statements have been made by supervisory members of case-relevant, governmental entities:

- the United States Attorney for the District of Massachusetts;
- the Attorney General for the United States;
- the Department of Homeland Security through the Boston SAC for Investigations;
- the Acting Director of ICE National (Washington, D.C.)
- the ICE Director of Enforcement and Removal Operations National
- the ICE Boston Acting Field Director of Enforcement and Removal Operations

    Those statements, together with other materials, raise a substantial question of **political bias** against the defendant Joseph on the part of the various "prosecution team" entities within the meaning of those terms as set forth in *United States v. Abel*, 469 U.S. 45, 52 (1984). Moreover, the combined public statements also raise a substantial question of bias in connection with **grossly improper government leaks** to the Boston Globe on December 1, 2018 and May 23, 2019. Finally, the defendant Joseph became aware that critical discovery was provided by the prosecution team to the co-defendant MacGregor but not to her; that discovery is **clearly exculpatory** and certainly more exits.

    The defendant Joseph requests that the prosecution team search for, gather, and produce the following information to the defendant, whether the information is presently

AUSA Dustin Chao
AUSA Christine Wichers
April 14, 2020
Page 2

contained in written form or whether it must necessarily be reduced to writing in accordance with its own United States Department of Justice's Justice Manual (hereinafter "Justice Manual"), Title 9-5.001: Policy Regarding Disclosures of Exculpatory and Impeachment Information, Section 9-5.002.B.5.

## I. BIAS ON THE PART OF INDIVIDUALS WITHIN CERTAIN RELEVANT GOVERNMENT ENTITIES

An element of the defense theory is that the government's key witness, (the "Defense Attorney" in the Indictment), created a fictitious version of a 52 second, off-the-record courtroom conversation with the defendant Joseph and the prosecutor, in order to exculpate himself from a previously-formed agreement, an agreement which he and he alone hatched and initiated with "another" long before his courtroom appearance, an agreement which he then executed, and an agreement for which he was to be compensated.

The Defense Attorney first told his fictious version of the courtroom conversation to the United States Attorney's Office months after the events in question. The United States Attorney's Office, in exchange for this testimony, did not seek a plea bargain in which the Defense Attorney would plead guilty and receive cooperation credit and a recommendation for a reduced sentence. Instead, it gave the Defense Attorney, the architect of the plan to enable the alien to avoid ICE, **complete immunity** from prosecution – contingent on him telling the *same* (fictious) story to a grand jury and to a petite jury at trial. The written agreement for immunity contained the language specifically *requiring* the Defense Attorney to testify *"truthfully,"* that is, to tell this *same* story that he had already told the United States Attorney's Office.

An element of the defense theory is that the prosecution team was and is "biased" against the defendant Joseph, and in pursuit of its own political objectives, used its power of immunity to buy a corrupted version of the facts, a version it very much wanted to hear. The "bias" would impact the evidence to be proffered and evaluated by the trier of fact at multiple points in the process. The defendant Joseph is constitutionally entitled to advance her theory and to seek and receive evidence in the possession of the government which would advance this theory.

Direct evidence of bias is not often available. Therefore, circumstantial evidence of bias is admissible. And circumstantial *information* regarding bias may lead to admissible *evidence* of such bias.

AUSA Dustin Chao
AUSA Christine Wichers
April 14, 2020
Page 3

     As to circumstantial evidence, there has been considerable tension between federal and state officials over immigration since the inauguration of the current president. In this period, federal officials have taken certain actions and made many statements regarding the topic, especially regarding so-called "sanctuary cities." The current president has issued executive orders detailed in *Ryan v. United States Immigration and Customs Enforcement*, 382 F.Supp. 142 (D. Mass. 2019). He has made public statements attacking sanctuary cities; he recently proposed further legislation penalizing sanctuary cities. At least once he has requested his prior Attorney General to prosecute a sanctuary city official for her conduct in that regard (which was ignored).

     His subsequent and current Attorney General has initiated legal action against states and cities over their sanctuary policies. An ICE National official, Thomas D. Homan, who was the acting director of ICE on April 2, 2018, joined the president in publicly commenting that "politicians in so-called 'sanctuary cities' should be arrested and charged with crimes." Homan, as indicated below, also publicly acknowledged that he sought to have the instant case investigated and prosecuted.

     The current president has also made multiple public attacks on the judiciary, particularly where a judge has ruled or acted in a manner that does not comport with his view of the world. Following the president's lead, the current Acting Field Director of ICE Boston, along with his predecessor, has specifically criticized the decision by the Massachusetts Supreme Judicial Court in *Commonwealth v. Lunn*, 477 Mass. 517 (2017), which holds that state law enforcement officials may not detain undocumented immigrants solely based upon civil ICE detainers and civil "warrants."

     In a clear demonstration of his bias, the same Acting Field Director of ICE Boston has repeatedly, and publicly, criticized the presiding first justice of the Newton District Court for her courtroom conduct concerning the release of an undocumented immigrant on April 25, 2017. The criticism occurred nearly a year *before* this indictment. That judge is a key witness in this matter.

     Apparently following the lead of this Acting Field Director of ICE Boston (whose organization has two agents as central witnesses in this case), the current United States Attorney for the District of Massachusetts took similar action very recently.

     On February 11, 2020, this United States Attorney, whose name appears as the ultimate authority on the letter giving the Defense Attorney complete immunity – that is, a "free pass" – in return for his version ["concocted version" as the defense would have it] at trial, wrote a Boston Herald Op Ed piece. The writing, specifically designed to take

AUSA Dustin Chao
AUSA Christine Wichers
April 14, 2020
Page 4

a political and highly critical position against sanctuary cities, claimed "cities and towns that pride themselves on *resisting federal laws* passed by Congress and designed to ensure our safety – have become a persistent threat to our communities and the rule of law." It is not clear how rules or laws passed by the cities which may differ from those laws that the United States Attorney favors are a threat to the "rule of law" – unless they are a threat to a vision of law that he favors – which is not necessarily "the rule of law" as we commonly understand the term.

Most importantly, he said in his Op Ed piece: "In 2017, a man previously deported for drug and gun crimes – but now illegally back in the United States – raped a Boston College student while working as an Uber driver. <u>*Despite knowing his immigration status*, *a judge* in Newton</u> gave him bail and local authorities released him. No one notified ICE. He fled the country …" (emphasis added).

The judge whom he was criticizing had already been previously criticized both by a columnist of the Boston Herald and certain news outlets opposed to sanctuary cities, as well as by the Acting Field Director of ICE (Boston). But the judge whom he was criticizing was the very judge who promulgated the "no-ICE-officers-in-my-Newton-courtroom" policy which the defendant Joseph was *simply following* even according to government witnesses – a cold fact previously known to the United States Attorney and to his prosecution team but which was somehow absent from the indictment in this case.

Why the United States Attorney wrote a *political* op-ed piece at all in his position as a supposedly unbiased law enforcement officer of the United States is unclear. Why he chose to attack a judge for setting a lower bail in the context of a piece opposing sanctuary cities is also unclear. There is no logical connection between the two strands – other than that the presiding first justice also set the "no-ICE-officers-in-my-Newton-courtroom" policy. Bail, ICE-in-the-courtroom, and sanctuary cities are three entirely separate legal concepts – under the rule of law.

But what is critical is that this presiding first justice, as the architect of a "no-ICE-in-my-Newton-courtroom" policy, is a central witness in the trial of this case. And the head of the United States Attorney's Office for Massachusetts and <u>the</u> responsible author of an immunity letter for the mastermind of the alien's release plan – has expressed bias against this presiding Newton first justice – publicly and unequivocally. The United States Attorney has elevated a presiding justice's implementation of a policy to maintain order and decorum in her courthouse to a transgression roughly analogous to allegedly releasing an undocumented immigrant out the back door to thwart ICE agents. Otherwise, he would not have inserted her into his Op Ed – and thereby directly bolted his bias like a crossbar to the presiding first justice and to this case. A bias that he has

AUSA Dustin Chao
AUSA Christine Wichers
April 14, 2020
Page 5

publicly acknowledged is "political" – despite protestations that he is always governed by the rule of law.

In summary, at this point, there is clear <u>public</u> evidence demonstrating that the chief executive of the United States Attorney's Office for the District of Massachusetts is guilty of political bias directly and inextricably connected to the prosecution of the defendant Joseph. Further, his published statements closely mirror public statements of bias by ICE (Boston) attacking the same judge. There are public statements of bias by the current Attorney General against sanctuary city officials. There are public statements by the president and ICE National seeking indictments against sanctuary city officials. There are also public statements directly connected to this case by the then National Director of Enforcement Removal operations (and now ICE National's Acting Director) expressing anger at what he believed happened at the Newton District Court and admitting that he – at a national level – interjected himself and sought to have the United States Attorney for the District take action. Again, anger is bias.

It is therefore reasonable to expect that similar statements of bias are hidden in the files of these public officials and their agencies – despite the admonition in the Justice Manual <u>not</u> to put such things in writing. That a United States Attorney would pen political speech to be read by thousands of readers in the potential jury pool and not consult with anyone else inside or outside his office regarding the content of the Op Ed piece, that such a United States Attorney would not have previously conveyed the "sense" of the scathing criticism of a key witness in this trial to his staff or to other "agency" officials, strains credulity. To the contrary, the United States Attorney has publicly admitted explained that the Joseph prosecution was discussed extensively within his office before proceeding. The information sought exists and is potentially devastating to the prosecution.

All of the above is written so that the prosecution team fully and completely understands the position of the defendant Joseph as well as the background and context of that position when the prosecution team decides whether to honor these requests or whether to force a more public airing before the trial judge. These are the same arguments that will be made before the trial court but with more detail and are set out here so that there will be no misunderstanding either as to the nature or underlying rationale of the requests.

**What the defendant Joseph is looking for:**

Therefore, the defendant Joseph seeks any information from which a trier of fact may draw any inference of "bias" or "hostile animus" directly, implicitly, or inferentially,

AUSA Dustin Chao
AUSA Christine Wichers
April 14, 2020
Page 6

as that term is defined in *United States v. Abel* and elsewhere, <u>against Shelley Richmond Joseph</u> by individuals in any manner related to the instant case. The term "individuals" would relates to either government witnesses or to those in supervisory positions within these agencies whose views have impacted or potentially may impact the instant case to any degree.

The defendant Joseph seeks similar information regarding any "bias" against the current presiding first justice of the Newton District Court.

The defendant Joseph seeks similar information regarding "bias" against sanctuary cities.

**Where to look: The Prosecution Team**

Pursuant to 9-5.00.B.2, the Justice Manual guidelines state that: "Members of the prosecution team include federal, state, and local law enforcement officers and other government officials participating in the investigation and prosecution of the case against the defendant (citing *Kyles v. Whitley*, 514 U.S. 419, 437 (1995)). The defendant requests that the government conduct a broader search/review than arguably suggested by the Justice Manual in its definition of the "prosecutorial team" simply because the entities and supervisory individuals within those entities likely to be possessing relevant information will be broader for this particular matter. Justice Manual, 9-5.002.A. (In fact, the guidelines note that the working definition of prosecutorial team may well need to be expanded in more complex cases.)

Because of the nature of the evidence sought, expressions of bias (direct, implicit and inferential) from "influencers and approvers," the defendant requests that the search include:

- United States Attorney's Office for the District of Massachusetts;
- Department of Justice (DOJ);
- Department of Homeland Security (DHS) National and Boston (whose Boston SAC of Investigations spoke at the United States Attorney's post-indictment press conference on April 25, 2019);
- ICE National and Boston (whose national chief officers both have commented to the press as to their involvement in this matter).

As noted in the Justice Manual, "Prosecutors are encouraged to err on the side of inclusiveness when identifying the members of the prosecution team for discovery purposes. Carefully considered efforts to locate discoverable information are more likely

AUSA Dustin Chao
AUSA Christine Wichers
April 14, 2020
Page 7

to avoid future litigation over *Brady* and *Giglio* issues and avoid surprises at trial." Justice Manul, Section 9-5.002.A. Factors include "Whether the prosecutor has obtained other information and/or evidence from the agency" and "[t]he degree to which decisions have been made jointly regarding ... criminal ... charges .... Justice Manual, 9-5.002.A.

**What to Review**

The defendant requests that the government review the substantive and investigative files and any other file or document the prosecution team has reason to believe may contain discoverable information related to this request including any such files held by individuals who had contact with the prosecution team entities concerning this case matter. With respect to outside agencies, the defense asks that the prosecution request access to all files potentially containing such discoverable material rather than simply rely upon representations of these agencies for compliance purposes. Justice Manual, 9-5.002.B.

The review should include all written materials, all case-related communications, including "emails, memoranda, or notes." Justice Manual, 9-5.002.B.

In particular the defense requests that the government review all "'substantive' case-related communications" which may contain discoverable information as sought above – between prosecutors, their prosecutorial supervisors, agents and their supervisors – which may be memorialized in emails, memoranda, or notes. As specified in the Guidelines, "'Substantive' communications include factual reports about investigative activity, factual discussions of the relative merits of evidence, factual information obtained during interviews ... and factual issues relating to credibility." Justice Manual, 9-5.002.B. In this case, communications involving case impressions or investigative or prosecutive strategies may well contain such information.

As always, the format of the information does not determine whether it is discoverable. Justice Manual, 9-5.002.B "..[M]aterial exculpatory information that the prosecutor receives during a conversation with an agent (or a witness) is no less discoverable than if that same information were contained in an email." Justice Manual, 9-5.002. (Thus, the Manual's "guidance" to avoid substantive e-communications containing factual information relating to witnesses, evidence, or investigative activity is "trumped" by the requirement to reduce any discoverable information to writing).

Communications between entities are requested to include communications among individuals participating in the investigation and communications regarding *supervisor approvals* which may contain the information sought.

AUSA Dustin Chao
AUSA Christine Wichers
April 14, 2020
Page 8

**When (for what time period)?**

The requested time period for the information sought is from April 25, 2017 (the date of the court matter involving the presiding first justice of the Newton District Court – the handling of which was criticized by ICE Boston periodically and the United States Attorney recently) until the present.

**Please note**

"[T]his policy encourages prosecutors to err on the side of disclosure in close questions of materiality." Justice Manual, 9-5.001.F.

"Department policy recognizes that a fair trial will often include examination of relevant exculpatory or impeachment information that is significantly probative or issues before the court but that may not, on its own, result in an acquittal or, as is often colloquially expressed, make the difference between guilt and innocence. As a result, this policy requires disclosure by prosecutors of information beyond that which is 'material' to guilt as articulated in *Kyles v. Whitely*, 514 U.S. 419 (1995) and *Strickler v. Greene*, 527 U.S. 263, 280-281 (1999) (emphasis added)." Justice Manual, 9-5.001.C.

"Agency witnesses and Agency Officials should make broad disclosures of potential impeachment information to the prosecutor so that the prosecutor can assess the information in light of the role of the agency witness, the facts of the case, and known or anticipated defenses, among other variables." Justice Manual, 9-5.100, 5(c).

"'[S]uch information relating to agency employees may include, but is not limited to "information that may be used to suggest that the agency employee is biased for or against a defendant. *See* Justice Manual, 9-5.100(c)(vi) (citing *United States v. Abel*, 469 U.S 45, 52 (1984). The Supreme Court has stated, "[b]ias is a term used in the 'common law of evidence' to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party. Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness's self-interest." Justice Manual, 9-5.100.5 (c)(vi).

Although *Abel* is far from as limited as portrayed in the Justice Manual, it is useful to see that the Department of Justice understands that *Abel* may be applied to the prosecution team entities as well as the defense. *Abel* reaches these entities and tenets of those entities, as well as supervisors of those entities – and non-supervisors. Perhaps also

useful to consider in this context are the policies underlying responsible corporate officer prosecutions and corporate bias employment cases.

## II. <u>6(e) AND OTHER PRESS "LEAKS"</u>

**Request**

The defendant Joseph requests forthwith as further evidence of bias:

**First**, any information, in written form or in oral form (and for these purposes necessarily reduced to writing), which indicates the identity and agency for any person or persons involved in "leaking" or conspiring to "leak" (1) the Rule 6(e) disclosures in Boston Globe story on December 1, 2018 and (2) the Boston Globe story on May 23, 2019 purporting to disclose case resolution discussions between the parties.

**Second**, any written or oral communication by the United States Attorney for the District of Massachusetts or any member of the prosecution team which, at any time prior to this request, *initiated and executed an investigation* into the identity of that source or leak.

**Basis for the Request**

The December 1, 2018 Globe article stated that "<u>five</u> people with <u>direct</u> knowledge" told the Globe reporters that "the US [A]ttorney in Boston has convened a grand jury to investigate" and "[t]he actions of the judge and court personnel that afternoon [of April 2, 2018] are the focus of a probe into whether they broke the law in helping Medina-Perez evade federal authorities." "Several court employees have recently testified before the grand jury, one of the sources said."

The person or persons who went to such lengths to leak information, particularly Rule 6(e) information, certainly had malicious intent – or bias. The person or persons who leaked both sets of information clearly had direct knowledge and there could only have been a very limited number of individuals within and without the United States Attorney's Office with such a detailed understanding of the leaked material in question. Any failure to either completely inquire within the United States Attorney's Office, the Department of Justice, the Department of Homeland Security (National and Boston), ICE (National and Boston,) or to inquire with vigor and depth as to the source of those leaks, is evidence of bias.

AUSA Dustin Chao
AUSA Christine Wichers
April 14, 2020
Page 10

Parenthetically, at this moment, it is unnecessary to inquire as to whether the person(s) who leaked the 6(e) information was attempting to influence or override a December 12, 2018 public statement by the United States Attorney for the District of Massachusetts that he had no plans to prosecute the defendant Joseph. (Presumably, by that time, the United States Attorney had been fully briefed on the proffer made by the Defense Attorney since the proffer letter is dated a month before – on November 8, 2018 and any attorney proffer would have occurred even earlier.) Likewise, at this moment is unnecessary to inquire as to whether the person(s) who leaked the information regarding the supposed resolution discussions was attempting to counteract negative press coverage of the indictment itself.

**Scope of the Request**

The defendant Joseph requests that the search be conducted in the same manner as set forth above regarding her first request.

III. **STATEMENTS BY ICE AGENTS AT NEWTON DISTRICT COURT ON APRIL 2, 2018**

The defendant Joseph requests that the prosecution produce forthwith any and all statements (written or oral and reduced to writing for purposes of this request) made by either of the two ICE agents identified on the prosecution's witness list, which contain their narratives of the events at the Newton District Court (NDC) on April 2, 2018.

On May 23, 2019, the prosecution provided the defendant Joseph with certain automatic discovery. That discovery did not include grand jury testimony of any NDC court officers on duty on April 2, 2018.

Sometime after June 6, 2019, from a non-prosecution team source, counsel for the defendant Joseph received a copy of the grand jury transcript of one of the NDC court officers on duty on April 2, 2018, who stated that one of the ICE agents at the courthouse was offered the option of entering the lockup through the rear sally port (rather than through the court room) by the chief court officer. According to the court officer's transcript, the ICE agent chose to wait for the undocumented immigrant to come out the courtroom door.

It appears that the prosecution team's failure to provide a copy of the transcript containing this critical information as part of automatic discovery was a conscious decision. To make that choice, the prosecution team could only have concluded that the transcript was not *Brady* (exculpatory) material but rather either *Gigilio* material or

AUSA Dustin Chao
AUSA Christine Wichers
April 14, 2020
Page 11

simply *Jencks* material – and that the statement by the court officer did not in any way impact its evidence as to the intent of the defendant Joseph (still in the courtroom).

Counsel for the defendant Joseph takes the position that the statement made by the chief court officer, the only proper court official authorized to make such a statement regarding ICE lock-up access under the state court's *Lunn* policy, constituted *Brady* material. That the ICE officer was in fact authorized to "take" the undocumented alien from the back <u>directly undercuts</u> in multiple ways the inference of "corrupt intent" suggested in the indictment – as to the custom and practice for the manner in which custodies in the Newton District Court might be released, as to custom and practice as to how ICE might taking custody of prisoners in the Newton District Court (clearly not always from the courtroom front door), as to whether ICE might well be out back at the sally port – just like the sheriff's department. The court officer's transcript containing this information was clearly exculpatory, it should have been produced to the defendant Joseph – and it is a poor harbinger of discovery "things" to come.

Consequently, the defense is concerned that ANY statements of the ICE agents at the courthouse (none of which have been disclosed) must contain narratives which support the court officer's statement. If so, these ICE officers' statements are *Brady* also. In the alternative, the ICE officers' statements *failed* to even mention this court officer's statement. That failure would also make their statements *Brady* as well. (By "statements" the defendant Joseph means "statements" not just to the United States Attorney's Office but "statements" made to any person within DHS or ICE or *contained within* the statement of any person employed by ICE or DHS.)

The prosecution's own manual requires disclosure of ANY statements of the ICE agents to the prosecution team as exculpatory. Under the heading of "Additional exculpatory information that must be disclosed.": "A prosecutor must disclose information that is inconsistent with any element of any crime charged against the defendant." Justice Manual, 9-5.001.C.

"Unlike the requirements of Brady and its progeny, which focus on evidence, the disclosure requirement of this section applies to <u>information</u> regardless of whether the information subject to disclosure would itself constitute admissible evidence (emphasis added)." Justice Manual, 9-5.001.C.

**Scope of the Request**

The defendant Joseph requests that the search be conducted in the same manner as set forth above.

Case 1:19-cr-10141-LTS   Document 123   Filed 04/14/20   Page 12 of 12

AUSA Dustin Chao
AUSA Christine Wichers
April 14, 2020
Page 12

                                  Sincerely,

                                  */s/ Thomas M. Hoopes*
                                  THOMAS M. HOOPES, ESQ.
                                  DOUGLAS S. BROOKS, ESQ.

                                  ELIZABETH N. MULVEY, ESQ.
                                  Crowe & Mulvey

TMH/ch