UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 1:19-cr-10141-LTS |
| | ) | |
| | ) | |
| SHELLEY M. RICHMOND JOSEPH | ) | |
| and | ) | |
| WESLEY MACGREGOR | ) | |

**MEMORANDUM IN SUPPORT OF
JUDGE SHELLEY M. RICHMOND JOSEPH'S SECOND SUPPLEMENTARY
MOTION TO COMPEL REGARDING BIAS ARISING OUT OF IMPERMISSIBLE
LEAKS AND REQUEST FOR INDEPENDENT INVESTIGATION OF LEAKS IF NO
INVESTIGATION HAS YET BEEN DONE**

In this motion, Judge Shelley M. Richmond Joseph seeks exculpatory information regarding two important "leaks" of information to the Boston Globe in this matter – one on December 1, 2018 and another on May 23, 2019. The first leak impermissibly disclosed grand jury 6(e) information.[1] The second leak concerned a government offer for pre-indictment disposition, a clear violation of Massachusetts ethical rules for prosecutors.[2] (The story headline from the second leak was: "Indicted Newton judge declined plea deal.") Both of these leaks involved information uniquely in possession of the government and its affiliates, and are highly prejudicial to Judge Joseph's defense. Judge Joseph therefore seeks information regarding the source and circumstances of those leaks in support of her claim of bias.

---

[1] Andrea Estes & Maria Cramer, *ICE Agent Was in Courthouse. Did Judge and Others Help Man Flee?* BOSTON GLOBE (Dec. 1, 2018), https://www.bostonglobe.com/metro/2018/12/01/newton-judge-role-reportedly-examined-after-immigrant-evades-ice/Mshdn3gIlPZhVA7mZ9fa3M/story.html

[2] Andrea Estes, Shelley Murphy, & Maria Cramer, *Suspended Newton Judge Declined Plea Deal That Would Have Meant No Criminal Charges*, BOSTON GLOBE (May 23, 2019), https://www.bostonglobe.com/metro/2019/05/23/suspended-newton-judge-declined-plea-deal-that-would-have-meant-criminal-charges/5m6v0odAszNCTFxD0SC9WP/story.html

1

The factual background and arguments underlying Judge Joseph's claims of bias are set out at length in her memorandum supporting her First Supplementary Motion to Compel filed contemporaneously this day and are incorporated herein. As a result of the discoveries, by letter dated April 14, 2020, Judge Joseph requested, *inter alia*, production of certain information in the possession of the government concerning both of the leaks as evidence of bias. *See* ECF No. 123.[3] The government denied all of Judge Joseph's requests, including those pertaining to the leaks. *See* ECF No. 124.

As to the first leak (regarding the existence of an on-going grand jury investigation), the December 1, 2018 Globe article stated that "<u>five</u> people with <u>direct</u> knowledge" told the Globe reporters that "the US [A]ttorney in Boston has convened a grand jury to investigate" and "[t]he actions of the judge and court personnel that afternoon [of April 2, 2018] are the focus of a probe into whether they broke the law in helping Medina-Perez evade federal authorities." "Several court employees have recently testified before the grand jury, one of the sources said." (Emphasis added). The government responded to the request for information regarding the first leak (of grand jury information) that Judge Joseph "ignores the fact that the government already had issued numerous grand jury subpoenas to entities and persons who were not prohibited from disclosing grand jury information." *See* ECF No. 124.

As to the second leak (regarding a government offer for a pre-indictment disposition), the May 23, 2019 Globe article stated that Judge Joseph turned down a "plea deal" – *if* she admitted

---

[3] Judge Joseph requested as evidence of bias: "**First**, any information, in written form or in oral form (and for these purposes necessarily reduced to writing), which indicates the identity and agency for any person or persons involved in "leaking" or conspiring to "leak" (1) the Rule 6(e) disclosures in Boston Globe story on December 1, 2018 and (2) the Boston Globe story on May 23, 2019 purporting to disclose case resolution discussions between the parties. **Second**, any written or oral communication by the United States Attorney for the District of Massachusetts or any member of the prosecution team which, at any time prior to this request, *initiated and executed an investigation* into the identity of that source or leak."

helping an undocumented immigrant elude arrest by ICE "according to several people briefed on the federal prosecutor's offer." The government responded as to this second leak that "Joseph admits the second disclosure did not violate Rule 6(e)." And that is all the government said. This "non-response" ignores the serious ethical concerns and prejudice to Judge Joseph involving a leak regarding a possible plea agreement. Indeed, because of the potential for irremediable tainting of the jury pool flowing from release of this information, the second leak is more consequential than the first.

As to first leak, again, the Globe article stated that there were five (5) sources. The government's reply noted that there were many people subpoenaed by the time of the leak (who inferentially could have been a source of the leaks). Yet there were only three groups of people with knowledge of the grand jury proceeding: (1) persons within the United States Attorney's Office; (2) persons within DHS Boston and Ice Boston; and (3) persons and entities subpoenaed. To the defendant's knowledge, there certainly were not five separate lawyers for witnesses at that time. Nor was it likely that such witnesses themselves were sufficiently connected to work together to provide the reporters the information obtained. Nevertheless, it is difficult to say conclusively at first glance that the source of the information had to have been leaked by the government (groups one and two).

The second leak, however, revealed information known only to persons employed by or associated with the government. No one in the third group, that is, those subpoenaed, would have even a clue about a resolution offer. That information could only have come from groups one (the United States Attorney's Office or DOJ) or two (DHS Boston or ICE Boston – or their superiors in Washington D.C.) Certainly, the defense team had no conceivable motive for to leak information about a rejected plea deal – nor did it.

So, the leak came from the government side. Assuming arguendo good faith and lack of misconduct on the part of the United States Attorney's Office, the leak could only have come from DHS or ICE. The information published was simply too specific. The reporter said as much when she sourced the story as "several people briefed on the federal prosecutor's offer." And if that was so, then the leaker was likely the same for both stories. The main reporters were the same. So, it follows logically that the source would be the same.

The leak regarding the "plea" offer is particularly egregious, both for its obvious prejudicial nature and for its clear violation of the applicable rules of professional responsibility regarding public statements. While Mass. R. Prof. Conduct Rule 3.6 and Rule 3.8, offer mostly general advice about the scope of permitted public statements, there are topics that are deemed so inappropriate for comment that they are singled out for special mention. One of these is plea offers, which are covered by Comment [5](2), which states:

> There are, on the other hand, certain subjects that are more likely than not to have a material prejudicial effect on a proceeding, particularly when they refer to a … criminal matter, or any other proceeding that could result in incarceration. These subjects relate to:
> …
> (2) in a criminal case or proceeding that could result in incarceration, the possibility of a plea of guilty to the offense or the existence or contents of any confession, admission, or statement given by a defendant or suspect or ***that person's refusal or failure to make a statement;*** (emphasis added).

Not only does the disclosure generally alert the public that there were discussions about a possible plea or resolution (whether or not there ultimately was a plea) possibly implying some guilt in the defendant's mind to the public, but the disclosure came squarely within the rule prohibiting any reference to "a person's refusal or failure to make a statement." The story said, under the headline "Indicted Newton judge declined plea deal":

> "US Attorney Andrew Lelling had offered Joseph a "deferred prosecution agreement" under which she would not have bene indicted and, in a year, as long as she didn't repeat

      the conduct, prosecutors would abandon the obstruction charges, according to the people familiar with the deal. But Joseph **refused** to admit she violated federal law and now faces the possibility of up to 20 years in prison if convicted of obstruction of justice." (Emphasis added).

The May 23, 2019 leak virtually tracks the prohibited conduct of the ethical rule and if it should develop that the leaker was not merely a member of the government team, but a licensed attorney, would warrant potential disciplinary action.

      Moreover, Rule 3.8(f) states: "(2) [the prosecutor in a criminal case shall] take reasonable steps to prevent investigators, law enforcement personnel, employees or other persons assisting or associated with the prosecutor in a criminal case from making an extrajudicial statement that the prosecutor would be prohibited from making under Rule 3.6 or this Rule." The statements published in the Globe certainly qualify as being prohibited under the rule. A prosecutor has an obligation not just to provide notice of this duty to all of the "prosecution team" as others before him have done in high profile cases, but also to enforce the law evenly by investigating fully to determine what person or persons who were "briefed" broke an ethical law." Judge Joseph is entitled to learn the source of this impermissible comment, what steps were taken by the government as a result of this leak, and to explore the motive that would prompt such a violation.

      What motivation would that "leaker," that person, have? As to the first leak (the existence of a grand jury investigation concerning Judge Joseph), the story certainly put pressure on the United States Attorney, who responded to that pressure with a public announcement of his intended course of action just a few days later (December 12, 2018) stating that he had "no plans to indict judges" and "no plans to prosecute Newton District Judge Shelly M. Joseph." Despite these public proclamations, barely a month later, he radically changed course, signing a sweetheart immunity deal with the main artist of the undocumented immigrant's escape, the

5

uncharged Defense Attorney. No prosecutor, especially in such a high-profile situation, changes course so abruptly, makes a 180-degree about-face that fast unless under intense pressure.

Where did that pressure come from? The defense theory, made clear in Judge Joseph's First Supplementary Motion to Compel filed contemporaneously this day, is that the United States Attorney was under enormous political pressure from (at least) Thomas Homan of ICE to indict, and this leak was therefore logically part of that pressure. But what, on the surface, would the leaker of the second story gain?  Because the story helped answer criticism for indicting in the first place. Taken together, the motivation was: (1) pressure for indictment; and (2) protection for indicting. Very few people in groups one and two have the sophistication to manage both leaks. Maybe one. A law enforcement person. A few questions under oath to those "briefed" as it was described in the new story should suffice to get to the necessary bottom.

The second part of the defendant's request for information asks simply whether the United States Attorney's Office conducted an investigation to determine the source of either leak. If it did, then the identified source or sources of the leak are certainly potential evidence of bias. If the Office did not investigate, and it is hard to imagine why it would not unless the "government" was afraid of offending a politically powerful force in its governmental life, that too is evidence of bias. Either way, the government should be compelled to answer: did it conduct an investigation? Yes or no? If it did, what did it learn? The process is simple. And the process will provide relevant information concerning bias to which Judge Joseph is constitutionally entitled.

In its reply letter on this issue, the government cited *United States v. Kearney*, 436 F.Supp. 1108 (S.D.N.Y. 1977) for the proposition that it did not have to answer as requested. The government's reliance on *Kearney* is misplaced. In *Kearney*, the defense propounded what

the court characterized as a "set of interrogatories" regarding the leaks; moreover, the defense theory for that set of requests was not grounded in exculpatory bias.  Here, the defense theory for making the request *is* grounded in exculpatory bias and Judge Joseph has asked only two questions: did the government investigate or not?  If so, what result?  The court in *Kearney* denied the request for "interrogatories," saying the request was beyond the scope of Rule 16.  Here, exculpatory bias trumps Rule 16. *United States v. Snell*, 899 F.Supp.17, 21 (D. Mass. 1995) ("It is inconceivable that a statutory obligation should supersede a constitutional one, especially where even the statutory obligations have a constitutional Due Process basis").  However, the government's response, while citing the court's refusal to order the government in *Kearney* to answer "interrogatories," neglected to mention that the court in Kearney **did take action**.  The court ordered **an independent investigation** into the leak saying, "[T]he Times article raises a matter of serious important and lays an allegation of grave impropriety at the government's doorstep.  I will follow the path blazed by my brother Lasker in Archuleta and direct the government to conduct an internal investigation to determine whether there existed, in fact, a Justice Department source for the disclosure and if so, his or her identity." *Id.* at 1119.[4]

As the court ordered for the defendant in *Kearney*, Judge Joseph asks for both an answer and an investigation as to at least the second leak if the government has not done one for either.

                                                   Respectfully submitted,

                                                   SHELLEY M. RICHMOND JOSEPH
                                                   /s/ Thomas M. Hoopes

---

[4] The Times article referenced by the court reported that a (Justice) department official provided information regarding the grand jury testimony of a particular witness. *Id.* at 1118.  Here, neither story is quite so specific in describing the source of the leaks.  But with a little investigative logic, we know that the second leaker had been "briefed" by the United States Attorney's Office on the proposed "plea offer" and that means the second leaker was a member of the "prosecution team" and at least as likely to be the first leaker as the source in *Kearney* – where the judge ordered the investigation with no more certainty than we have here.

        THOMAS M. HOOPES, ESQ.
        BBO No. 239340
        /s/ Douglas S. Brooks
        DOUGLAS S. BROOKS, ESQ.
        BBO No. 636697
        LibbyHoopes, P.C.
        399 Boylston Street
        Boston, MA 02116
        617.338.9300
        Email: thoopes@libbyhoopes.com

        /s/ Elizabeth N. Mulvey
        ELIZABETH N. MULVEY, ESQ.
        Crowe & Mulvey
        77 Franklin Street, 3rd Floor
        Boston, MA 02110
        617.426.4488
        emulvey@croweandmulvey.com

Dated: May 7, 2020

## CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-participants on May 7, 2020.

        /s/ Thomas M. Hoopes
        Thomas M. Hoopes, Esq.