UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 1:19-cr-10141-LTS |
| | ) | |
| | ) | |
| SHELLEY M. RICHMOND JOSEPH | ) | |
| and | ) | |
| WESLEY MACGREGOR | ) | |

**MEMORANDUM IN SUPPORT OF JUDGE SHELLEY M. RICHMOND JOSEPH'S
FIRST SUPPLEMENTAL MOTION TO COMPEL EVIDENCE REGARDING BIAS**

**INTRODUCTION**

On April 2, 2018, the defendant, Shelley Richmond Joseph, a judge in the Massachusetts

district court who had been appointed to the bench less than five months earlier, was presiding

over an arraignment and governor's warrant issue for an undocumented immigrant defendant,

"A.S.", in the Newton District Court.  Sometime during the day, Judge Joseph learned that A.S.

was the subject of a civil ICE detainer, and that two ICE agents were at the courthouse to take

him into federal custody.  Consistent with the policy established by the presiding judge in the

Newton District Court, where Judge Joseph was sitting that day as a visiting judge, she directed

that the ICE agents be requested to wait outside the courtroom while she conducted the afternoon

portion of the proceedings.

In the courtroom, once the issues related to the governor's warrant, arraignment, bail and

drug warnings were resolved, all that remained from Judge Joseph's perspective was the

ministerial action of processing A.S.'s release from custody, a function routinely handled by the

court officers.  Judge Joseph acceded to a request by the attorney for A.S. ("Defense Attorney")

to confer with his client in the lockup downstairs in the courthouse before his release, and considered her role in the case concluded for the day.

Unbeknownst to Judge Joseph, the defense attorney had formulated a plan to help A.S. evade the ICE agents by having him released from the sally port in the lockup, a secured, rear, courthouse door generally used for custodial prisoners.  The Defense Attorney accompanied A.S. downstairs, where within a few minutes, a court officer, co-defendant Wesley MacGregor, opened the sally port and allowed A.S. to leave the building.  A.S. apparently met friends or family members in the parking lot and left the area, while the ICE agents waited upstairs in the lobby of the courthouse with the prosecutor who handled A.S.'s arraignment.

Within a few hours, news that the ICE agents had failed to apprehend A.S. had reached Washington, D.C., where Thomas Homan, the Acting Director of ICE, immediately determined to seek prosecution by a United States Attorney, vowing to do whatever he could to achieve that result.  This vow was part of a larger campaign by the federal government in general, led by the President of the United States and supported by various federal officials, to punish those whom they viewed as being too "soft" or lenient in their treatment of undocumented immigrants.  Thus, the *alleged* actions of one state district court judge, in an unexceptional case in an ordinary courtroom, have become the vehicle through which the federal government seeks to threaten those in state government whom they view as insufficiently supportive of its immigration policies.  As a result, Judge Joseph has been charged with a federal crime carrying potentially devastating personal and professional consequences because of actions taken in fulfilling her responsibilities as a sitting judge in the Massachusetts state court.

The prosecution of a sitting state court judge for actions taken within the scope of her judicial duties is itself unprecedented and has a potentially chilling effect on judges throughout

the country.  However, the government has not limited itself to the permissible policy goals of prioritizing prosecutions, but rather has embarked on an improper campaign to exact vengeance and retribution for this particular incident by indicting a party not responsible for the alleged scheme with the aim of intimidating other state court officials.  These improper actions include:

- an astounding about-face by the United States Attorney, who during the investigation phase of the case originally stated that he had no plans to indict Judge Joseph only to become a vocal proponent of this prosecution, presumably in response to pressure exerted on him at a national level;

- an extraordinary sweetheart deal granting complete immunity to the Defense Attorney—the architect and ringleader of the plan that permitted A.S. to evade the waiting ICE agents—in exchange for his creation of a narrative that would permit the government to prosecute a much higher profile target in the person of a state court judge, and thereby achieve the desired effect of using this prosecution to advance the federal government's immigration policies, regardless of the underlying facts;

- a concerted campaign to intimidate similarly situated judges and to coerce them to ignore the explicit law and policy of their state and their courthouse in favor of a different federal policy;

- public statements aimed at intimidating a key witness, First Justice of the Newton District Court Mary Beth Heffernan, whom the government views as "guilty" of a similar offense to that charged in this indictment; and

- a blatant attempt to influence public opinion and to hold Judge Joseph up to widespread condemnation by repeated and prejudicial comments about the case, including a leak about a potential plea deal that is clearly violation of Rule 3.6, Mass. R. Prof. Conduct.

The case against Judge Joseph rests almost entirely on the proposed testimony of the immunized Defense Attorney, who, because of his willingness to implicate Judge Joseph, will not face any consequences for his admitted central role as the principal force behind A.S.'s release from the sally port.  The political climate and pervasive institutional ***bias*** that led to Judge Joseph's indictment is an important factor for the jury to consider in evaluating the credibility of the Defense Attorney and ICE agents.  The defense contends that, because of its

political objectives and bias, the government targeted Judge Joseph, a high-profile defendant whose prosecution would send a message to other public officials, and used its power to grant immunity to purchase the narrative it needed to indict her.  The present motion therefore seeks all exculpatory information relevant to its theory.

## BACKGROUND

**The Alleged Conspiracy and Resulting Investigation.**

The alleged incident giving rise to the Indictment took place on April 2, 2018. Unbeknownst to Judge Joseph until more than a year and one-half later, on the very day of the alleged incident, then Acting Director of ICE Homan, an outspoken opponent of sanctuary cities, learned about the alleged incident and *immediately sought prosecution of the matter by the United States Attorney* while vowing to do whatever he could to make it happen. Consistent with the Acting Director's directive, the U.S. Attorney's Office for the District of Massachusetts quickly commenced an investigation.

The defense maintains that Judge Joseph did not knowingly participate in the Defense Attorney's scheme to send A.S. out the courthouse backdoor to avoid ICE – a plan he hatched long before his courtroom appearance and for which he was to be compensated.  The defense maintains that months after the events, he created a **fictitious version** of a 52 second, off-the-record sidebar conversation he had with Judge Joseph and the Newton District Court prosecutor, which conversation forms the core of the government's charges against Judge Joseph, its higher profile and politically desirable target.

On November 6, 2018, the Defense Attorney proffered to the United States Attorney's Office and apparently claimed that during the 52-second conversation, Judge Joseph acceded to his request to allow his client to evade ICE.  Yet, weeks later, on December 12, despite knowing

of the Defense Attorney's story from the November proffer concerning Judge Joseph's alleged action, U.S. Attorney Lelling publicly stated that he had *no plans* to indict Judge Joseph.[1] The statement was reported nationally.[2]

Suddenly, as a result of apparent pressure from Washington as well as ICE to send a strong message to state officials by pursuing a sitting state court judge rather than a private defense attorney, the US Attorney's Office quickly changed its tune. ***Apparently also so desperate at that point for any testimony it could use to indict Judge Joseph, on January 17, 2019, the government gave*** <u>***complete immunity***</u> ***to the Defense Attorney, taking the highly unusual step of allowing an admitted architect and prime mover of an alleged criminal conspiracy to avoid*** <u>***any***</u> ***consequences for his actions.***

**The Government's Extra-Judicial Statements Concerning the Case Subsequent to the Letter Request Deadline**

On November 16, 2019, some six and one-half months after Judge Joseph's letter request for discovery was due, the New York Times published a story concerning this case (first online and then in print).[3]  In the story, Acting Director Homan made the statements discussed above. From this news story, Judge Joseph learned for the first time that senior levels of the current president's administration had been active in seeking an indictment in this matter.[4]

---

[1] *See* Ex. 1. Maria Cramer, *MS-13 'all but eradicated,' US Attorney says,* (Dec. 12, 2018, 9:20 PM), https://www.bostonglobe.com/metro/2018/12/12/all-but-eradicated-attorney-says/ODIj16BXqOOYD3P0etoOON/story.html

[2] *See* Ex. 2. Aaron Leibowitz, *Mass. US Atty Sees No Issue With ICE Courthouse Arrests,* (Dec. 12, 2018, 5:47 PM), https://www.law360.com/articles/1110787/mass-us-atty-sees-no-issue-with-ice-courthouse-arrests

[3] On May 23, 2019, the government produced automatic discovery pursuant to L.R. 116.1. The defendant filed a letter request pursuant to L.R. 116.3 on June 6, 2019.  ECF No. 25. On June 20, 2019, the government responded. *See* ECF No. 31. On July 3, 2019 the defendant and the co-defendant filed discovery motions pursuant to L.R. 116(g). The government responded on July 19, 2019.  *See* ECF Nos. 40 and 41. Subsequently the disputed discovery motions were heard by the magistrate judge.  These motions focused primarily on standard discovery disputes over witness statements.

[4] Ellen Barry, *When the Judge Became the Defendant*, N.Y. TIMES (Nov. 16, 2019), https://www.nytimes.com/2019/11/16/us/shelley-joseph-immigration-judge.html.

Then, on February 11, 2020, some nine months after Judge Joseph's initial letter request for discovery had been due, the United States Attorney for the District of Massachusetts wrote an Op Ed piece attacking the presiding justice of the state's Newton District Court— *who is also a potential government witness in this matter* – while criticizing sanctuary cities for "resisting" federal laws.  The piece was published in the Boston Herald (online first with a print version the next day).[5]

From the date of Mr. Homan's statements in the Times story, counsel for Judge Joseph began researching for related, circumstantial information concerning the issues of bias raised by his statements. That research was expanded after Mr. Lelling's Op Ed piece and eventually revealed additional related statements by the Acting Boston Field Office Director of ICE in Boston, Todd Lyons, whose two agents attempted to apprehend the undocumented immigrant at the Newton District Court, thus making them central witnesses in the case.  Mr. Lyons, in making many media appearances after the date of this incident to get out "ICE's message," commented on, among other things, (i) the instant prosecution, (ii) sanctuary cities, and (iii) "bleeding heart judges" generally, while particularly attacking the presiding justice of the Newton District Court, Judge Heffernan.

**Procedural Background**

It is against this backdrop and the federal/state tension concerning the current president's immigration policies (set forth in further detail below) that the present motion arises.  On April 14, 2020, Judge Joseph filed a letter requesting discovery pursuant to L.R. 116.3.  The letter sought information concerning: (1) political bias (2) bias demonstrated by press leaks (3)

---

[5] *See* Ex. 4. Andrew Lelling, *U.S. Attorney Andrew Lelling: Sanctuary Cities  are a 'genuine and persistent threat'* (February 10, 2020, 8:38 PM) https://www.bostonherald.com/2020/02/10/u-s-attorney-andrew-lelling-sanctuary-cities-are-a-genuine-and-persistent-threat/.

exculpatory information related to ICE witnesses.  *See* Defendant Shelley Richmond Joseph's

Discovery Letter, dated April 14, 2020, ECF. No. 123, attached as Exhibit 27. On April 23,

2020, the government responded and declined to search for the information sought. *See*

Government's Discovery Letter, dated April 23, ECF No. 124, attached as Exhibit 28.

Specifically, as it relates to *this* motion, Judge Joseph seeks exculpatory evidence

concerning the government's bias that has unfairly infected this prosecution.  In summary, Judge

Joseph seeks the following relevant and exculpatory discovery: (1) communications between the

current president and the Department of Justice, the Department of Homeland Security (in

Washington D.C. and Boston);[6] (2) communications between the Department of Justice to and

from the United States Attorney Office for Massachusetts, the Department of Homeland

Security, ICE National and ICE Boston; (3) communications between the Department of

Homeland Security to and from ICE National, ICE Boston, and the United States Attorney's

Office for the District of Massachusetts; (4) communications from ICE National to and from ICE

Boston and the United States Attorney's Office for the District of Massachusetts; (5)

communications from ICE Boston to the United States Attorney's Office for the District of

Massachusetts; and (6) communications *within* each of the named entities, that is, within the

Department of Justice, the Department of Homeland Security (National and Boston), ICE

National and Boston, and the United States Attorney's Office for the District of Massachusetts.

**The Federal Government's Immigration Policies and Corresponding Politically-Motivated Bias**

---

[6]  The Department of Homeland Security Investigations in Boston coordinated this investigation according to the US Attorney's press conference on April 25, 2019.

The government's politically-motivated bias, which has infected this prosecution as summarized above, cannot be understood in a vacuum without examining the current president's immigration policies and the reaction to those policies here in Massachusetts.

### The President of the United States

There has been considerable tension between federal and state officials over immigration after the current president's successful political campaign and inauguration – tension noted by, among others, a federal Court of Appeals[7] as well as a local Massachusetts political pundit while interviewing the current United States Attorney for Massachusetts.[8] The current president promised to take a hard line on all immigration issues – at the country's border and internally[9]  – and has worked to achieve that objective, even as recently as in the midst of the Covid-19 crisis.[10] On January 25, 2017, as one of his first acts in office, the current president issued an executive order prioritizing certain non-citizen or "alien" arrests as

---

[7] Judge Raggi, writing for the Second Circuit in February of this year regarding sanctuary city funding, stated: "The case implicates several of the most divisive issues confronting our country and, consequently, filling daily news headlines: national immigration policy, the enforcement of immigration laws, the status of illegal aliens in this country, and the ability of States and localities to adopt policies on such matters contrary to, or at odds with, those of the federal government." *See State v. Department of Justice*, 951 F.3d 84, 90**,** 2020 (2nd Cir. 2020).

[8] The current United States Attorney for Massachusetts acknowledged as much in a media moment with Dan Rea on June 17, 2019 (less than two months after this Indictment): "MR. REA: I want to come to an area, you mentioned immigration  before.  Right now there's this  – there's this ***test of wills**, if you will, between the federal government and in some states, particularly Massachusetts, in terms of immigration and also in terms of ICE enforcement*, and I know that that touches on one of the cases, the Judge Joseph case, which I'm sure you can't get into.  But what – why is it – why is an issue so important that ICE agents should be able to be in wherever they need to be to enforce the law up to and including courthouses because I think that's the federal argument as I understand it. MR. LELLING:  Well, there's a few things going on here." *See* Ex. 22. Transcript of Interview with Andrew Lelling, Nightside with Dan Rea June 17, 2019 at 9, audio available at https://podcasts.google.com/?feed=aHR0cHM6Ly93d3cuc3ByZWFrZXIuY29tL3Nob3cvMjc1MzA4MS9lcGlzb2Rlcy9mZWVk&episode=aHR0cHM6Ly9hcGkuc3ByZWFrZXIuY29tL2VwaXNvZGUvMjM3NzcxMzM&hl=en&ved=2ahUKEwj1juy404vpAhUVHc0KHWfVDa4QjrkFegQIBRAE&ep=6

[9] Julia Preston, *Explaining What Donald Trump Wants to Do Now on Immigration*,  N.Y. TIMES (Sept. 1, 2016), https://www.nytimes.com/2016/09/02/us/politics/donald-trump-far-from-softening-lays-out-tough-immigration-plans.html

[10]Nik DeCosta-Kilpa, *Charlie Baker and Marty Walsh rebuke Trump's suggestion that coronavirus aid be used against sanctuary cities* (Apr. 29, 2020) https://www.boston.com/news/coronavirus/2020/04/29/donald-trump-coronavirus-aid-sanctuary-cities-charlie-baker-marty-walsh

detailed in *Ryan v. United States Immigration and Customs Enforcement*, 382 F. Supp. 142 (D. Mass. 2019).  He also convened at least one "forum" of like-minded political officials criticizing so-called "sanctuary states" (California and New York).[11]  Mr. Homans and Attorney General Sessions were in attendance. The president recently proposed further legislation penalizing sanctuary cities in his February 2020 State of the Union address.[12]

      Since even before his election, the president has also attacked the judiciary relentlessly whenever a judge has ruled or acted in a manner not comporting with his views.[13]  He has targeted Supreme Court Justices Ginsburg and Sotomayer, Courts of Appeals judges, and federal district court judges.[14]  In response to these multiple attacks on the judiciary and its individual members, the Chief Justice of the Supreme Court felt it necessary to issue a statement, which was not just ignored but contradicted by the president.[15]  In February 2020, a meeting of one thousand federal district court judges was initially scheduled to deal with the threat to judicial independence.[16]  The president has even gone so far as to tell his Attorney General that he, as president, can legally interfere in any criminal proceeding.[17]

---

[11] *See* Ex. 5 *Remarks by President Trump at a California Sanctuary State Roundtable*, THE WHITE HOUSE (May 16, 2018), https://www.whitehouse.gov/briefings-statements/remarks-president-trump-california-sanctuary-state-roundtable/

[12] President Donald Trump, *Remarks by President Trump in State of the Union Address,* (February 4, 2020) https://www.whitehouse.gov/briefings-statements/remarks-president-trump-state-union-address-3/

[13] Kevin Judd & Keith Watters, *Trump's Attack on Courts Undermine Judicial Independence,* ABA JOURNAL (Jun. 28, 2018), https://www.abajournal.com/news/article/trumps_attacks_on_courts_undermines_judicial_independence

[14] Peter Baker, *Trump, in India, Demands 2 Liberal Justices Recuse Themselves From His Cases,* N.Y. TIMES (Feb. 25, 2020), https://www.nytimes.com/2020/02/25/us/politics/trump-supreme-court.html

[15] *In His Own Words: The President's Attacks on the Courts*, BRENNAN CENTER FOR JUSTICE (Jun. 5, 2017), https://www.brennancenter.org/our-work/research-reports/his-own-words-presidents-attacks-courts

[16] *Group of More Than 1,000 Judges Calls Emergency Meeting Amid Trump Concerns,* THE GUARDIAN (Feb. 19, 2020), https://www.theguardian.com/us-news/2020/feb/18/trump-barr-judges-emergency-meeting-concerns>

[17] Edward Helmore, *Trump Claims He Has 'Legal Right' to Intervene in Criminal Cases*, THE GUARDIAN (Feb. 14, 2020), https://www.theguardian.com/us-news/2020/feb/14/trump-claims-legal-right-intervene-criminal-cases-william-barr-plea-not-tweet

The president has sought to advance his immigration agenda at all levels of the federal government, and his officials have taken actions and made statements in accordance with his policies, especially regarding so-called "sanctuary cities."  At the national legal level, the president's Attorneys General have actively taken steps to cut federal funding for states and cities over their sanctuary policies[18] and publicly trumpeted these efforts.[19] The president also publicly criticized two local public officials (Massachusetts District Attorneys Marian Ryan and Rachael Rollins) for bringing a federal lawsuit against ICE concerning ICE actions in and near courthouses.[20] The United States Attorney for the District of Massachusetts himself weighed in stating "I don't see the basis for the suit," before the relief sought was granted by the judge.[21]

### The Role of ICE in the Enforcing the Current Administration's Immigration Policies

The current president has also actively coordinated with ICE officials.  On January 2, 2018, ICE Acting Director Homan publicly joined the president's views, declaring the president was against sanctuary cities. Mr. Homan then said, "We got to work *with* the *Department of Justice.*  The Department of Justice needs to … file charges against sanctuary

---

[18] In resulting legal action, three Courts of Appeals have enjoined the federal government from withholding funds from sanctuary states and cities, but one has recently ruled to the contrary. *See City of Los Angeles v. Barr,* 941 F.3d 931 (9th Cir. 2019) (ruling as to Notice and Access Conditions); *City of Philadelphia v. Attorney Gen.*, 916 F.3d 276 (3d Cir. 2019) (ruling as to all three conditions);  *City of Chicago v. Sessions*, 888 F.3d 272 (7th Cir. 2018) (ruling as to Notice and Access Conditions), *reh'g en banc granted in part, opinion vacated in part*,  No. 17-2991, 2018 WL 4268817 (7th Cir. June 4, 2018) (vacating nation-wide injunction), *reh'g grant vacated*, No. 17-2991, 2018 WL 4268814 (7th Cir. Aug. 10, 2018).  *But compare*, *State v. Department of Justice*, 951 F.3d 84, 90 (2nd Cir. 2020).
[19] *Feds suing NJ, Seattle county over 'sanctuary" policies* Boston Herald (Feb. 10, 2020 7:48 PM), https://www.bostonherald.com/2020/02/10/feds-suing-nj-seattle-county-over-sanctuary-policies/.
[20] The president said: "These are people that probably don't mind crime, he said." Lisa Kashinsky, *President Trump slams DA Rachael Rollins on Boston Herald Radio*, BOSTON HERALD (May 1, 2019), https://www.bostonherald.com/2019/05/01/live-blog-president-trump-on-boston-herald-radio/ https://www.bostonherald.com/2019/05/01/live-blog-president-trump-on-boston-herald-radio/
[21] Eliza Dewey, *US Attorney Andrew Lelling Doubles Down on Judge Joseph Indictment* (May 6, 2019) https://www.wgbh.org/news/politics/2019/05/06/us-attorney-andrew-lelling-doubles-down-on-judge-joseph-indictment

cities … [and] they need to hold back their funding…"  He added, "[and] hold these politicians accountable for their actions… *we got to start charging some of these politicians with crimes.*" When asked, "Does the president share your views, sir?"  Mr. Homan answered, "Absolutely, he does."[22]

On February 28, 2018, Oakland Mayor Libby Schaff openly tipped off undocumented immigrants that an ICE raid was imminent, causing hundreds to flee apprehension. Schaff stood by her actions.[23]  In response, Mr. Homan said of the mayor, "What she did is no better than a gang lookout yelling 'police' when a police cruiser comes in the neighborhood, except she did it to a whole community. This is beyond the pale."[24] Mr. Homan also confirmed a Department of Justice investigation.[25] On May 16, 2019, at a meeting attended by Mr. Homan, *the president himself* requested that then Attorney General Sessions prosecute Ms. Schaff for *obstruction of justice* for her conduct.[26]Mr. Sessions' Department of Justice, despite at least one comment in support of such action from a former federal prosecutor, did not oblige the president or Mr. Homan. By November 7, 2019, Mr. Sessions had resigned.[27]

---

[22] Acting ICE director: California made a foolish decision, Fox New, (Jan. 2, 2018.) https://www.foxnews.com/transcript/acting-ice-director-california-made-a-foolish-decision Mr. Homans, now retired, acts as an analyst for Fox News with reportedly continued direct access to the president. Matthew Albence is now the Acting Director of ICE. Steve Miller New Yorker

[23] Meagan Flynn, *Oakland Mayor Libby Schaaf Tipped Off Immigrants About ICE Raid And Isn't Sorry She Did*, WASHINGTON POST (Feb. 28, 2018), https://www.washingtonpost.com/news/morning-mix/wp/2018/02/28/oakland-mayor-libby-schaaf-tipped-off-immigrants-about-ice-raid-and-isnt-sorry-she-did/.

[24] *ICE Director: 800 Criminal Aliens Unable to Be Located After CA Mayor's 'Incredible' Warning,* FOX NEWS INSIDER (Feb. 28, 2018), https://insider.foxnews.com/2018/02/28/ice-director-800-criminal-aliens-unable-be-located-after-oakland-mayors-warning.

[25]Meagan Flynn, *Oakland Mayor Who Tipped Off Immigrants to ICE Raid Draws Justice Department Scrutiny*, WASHINGTON POST (Mar. 2, 2018), https://www.washingtonpost.com/news/morning-mix/wp/2018/03/02/justice-department-reviewing-actions-of-oakland-mayor-who-tipped-off-immigrants-of-ice-raid-white-house-says/

[26] *See* Ex. 5 "Remarks by President Trump at a California Sanctuary State Roundtable," May 16, 2018, https://www.whitehouse.gov/briefings-statements/remarks-president-trump-california-sanctuary-state-roundtable/

[27] Mr. Sessions was a staunch opponent of undocumented immigration, although apparently not staunch enough; he resigned for disappointing the president on a number of issues. <https://www.nytimes.com/2018/11/07/us/politics/sessions-resigns.html>. However, Steven Miller, Mr. Sessions' hard-line, chief aide on immigration issues was with Mr. Sessions at the May 16, 2018 California presidential conclave on sanctuary states and cities presidential conclave.  Mr. Miller, now acts as the president's point person on

However, in the midst of the Schaff review by the Department of Justice, one undocumented immigrant (rather than the hundreds in Oakland) left the back door of the Newton District Court on April 2, 2018.  Mr. Homan learned of the incident that *very day* – and sought a federal investigation and prosecution immediately.[28]  It is not hard to see the direct line connecting the instant indictment to this long history of attacks on both sanctuary cities and judges under the purported guise of the "rule of law."

**Massachusetts**

The current president's political positions and policies have met resistance from Massachusetts officials.  Both sides have vigorously defended their respective positions.

**The *Lunn* decision and ICE Boston's Reaction**

In July 2017, the existing federal-state tension heightened significantly when the Massachusetts Supreme Judicial Court decided *Commonwealth v. Lunn,* 477 Mass. 517 (2017), holding that state law enforcement officials may not detain undocumented immigrants solely based upon civil ICE detainers and civil "warrants." ICE's Boston Acting Field Director, Christopher Cronen, issued a relatively simple written statement saying:

---

all things "immigration." <https://www.washingtonpost.com/immigration/stephen-miller-audio-immigration-coronavirus/2020/04/24/8eaf59ba-8631-11ea-9728-c74380d9d410_story.html>; <https://www.nytimes.com/2019/08/17/us/politics/stephen-miller-immigration-trump.html>. Mr. Homan, who sought Oakland Mayor Schaff's prosecution for obstruction of justice, still apparently has the president's ear. Johnathan Blitzer, *ICE Agents Are Losing Patience with Trump's Chaotic Immigration Policy*,

[28] The Times story stated: "Word of what had happened moved quickly up the chain of command, reaching Washington in a matter of hours, said Thomas D. Homan, who was the acting director of ICE at the time. 'I heard about it the same day it happened,' Mr. Homan said. 'I was dumbfounded. I said, 'Well, now, things are going a bit too far.' For an officer of the court to help someone escape ICE arrest. I've done this 35 years and never seen anything like that.' Informed of the decision by Matthew Albence, then the director of enforcement removal operations and now ICE's acting director, Mr. Homan said he immediately began asking about legal recourse. 'I remember I got angry,' he said. "I asked, 'Is there a legal action I could take?' **I was looking to do whatever I could do to make that happen**.' He said he considered it a clear case of obstruction of justice, but that his agency did not have the power to bring charges. **'We've got to find a U.S. attorney who is willing to indict**. I talked to my legal staff, they said it would be up to the U.S. attorney's office.' The **idea of such a prosecution was popular** in Washington." https://www.nytimes.com/2019/11/16/us/shelley-joseph-immigration-judge.html

Thereafter, Mr. Cronen was promoted to Washington, D.C., and soon Todd Lyons became Acting Director of the Boston ICE Field office.  The intergovernmental tension has continued to escalate, even while events surrounding this indictment unfolded. Unlike his predecessor's low-key approach, Mr. Lyons chose to model Mr. Homan's aggressive stance toward state officials whom he views as uncooperative.  On multiple occasions in multiple forums, Mr. Lyons has characterized the *Lunn* decision as hindering ICE. Ex. 6.; Ex. 7 at 3:19-21. and allowing "violent" and "dangerous" and "predatory" people to be released.  *Lunn*, he has said, affects "OUI all the way to Homicide." Ex. 25 at 4:15-18; Ex. 8 at 5:15-17;12:9-11; Ex. 17 at 62:12-13.

Mr. Lyons further stated that because of *Lunn* and the sanctuary cities, his ICE agents feel "demonized" Ex. 7 at 1:8;  Ex. 26 at 10:11.  "frustrated" and view their hands as being tied" Ex. 9 at 8: 20 and 9:17; "villainized"  Ex. 10 at 6:13, and "stigmatized" Ex. 6 at 9, 19.  and they feel particularly like they have  been "slap(ped) in the face" by Boston's Trust Act. Ex. 11 at 3:8-10.

More generally, Mr. Lyons has complained about cooperation with ICE in this Commonwealth.  According to Mr. Lyons, "We had great cooperation (with local law enforcement) under the past administration." Ex. 7 at 8:22-23. But there is little cooperation now. Ex. 12 at 2:19-21.

Mr. Lyons has also claimed sanctuary cities are political, saying that their proponents are "politicizing law enforcement" Ex. 13 at 3, 11; use "political rhetoric" Ex. 14 at 10:22*; and* take a "political social view instead of a public safety view" Ex. 15 at 5:4.  Mr. Lyons says that sanctuary cities "haven't learned any lessons through history when it comes to terrorism"  Ex. 15 at 3:13-14. because sanctuary cities attract criminals. Ex. 16 at 2:18-20.

**ICE's Attack on Judge Heffernan**

Like the president he serves, Mr. Lyons has also taken aim at the judiciary.  Ex. 14 at 7:6-19. including an altogether different but specifically-named Massachusetts judge. Ex. 17 at 53:1-4. "I think plenty of times you – you've pointed out especially with the situations we've had with certain judges in the state where, you know, almost being illegal or here, you know, undocumented, gives you a free pass to commit crime." Ex. 18 at 11:14-19.

Specifically, Mr. Lyons repeatedly attacked Judge Heffernan for her courtroom conduct in the release of an undocumented immigrant on April 25, 2017 – a year before the incident here and precisely two years to the day Judge Joseph was indicted.  The full ICE onslaught against this presiding justice began in early summer 2018 when the Boston Field Office's Enforcement and Removal Operations ("ERO") issued a press statement complaining about how "its" cases were being handled within the Massachusetts court system. The ICE criticism of the presiding justice was the very first example leading its list of complaints – even above the matter presently under indictment. As to the presiding justice, the press statement said:

> "Several recent cases have highlighted the risk to public safety created by this lack of cooperation between state and local agencies and ICE.  A few examples are outlined below.  On April 25, 2017, the Newton, MA Police Department arrested a citizen of [the] Dominican Republic on a [sic] after he allegedly raped a female Boston College student in the back seat of his car after he picked her up in the Boston Seaport while driving for Uber.  The subject was taken to Newton District Court for arraignment on 4/25/17 with an ICE detainer.  The subject was previously deported from the U.S. on 2/17/2010 and had previous criminal convictions for assault and battery with a dangerous weapon and possession of controlled substance.  ERO officers spoke with the ADA handling the case and assured her of ICE's interest in taking custody of the subject if there was a chance he could be released from state custody.  **The ICE detainer was discussed in open court and the judge was aware of the immigration issue and ICE's interest in the defendant.  Despite these facts, the judge set bail at $2500 and allowed the subject to**

**post bail at the courthouse and abscond without prior notification to ICE.** That subject remains at large."

Mr. Lyons has continued to publicly make the same attack on Judge Heffernan on several other occasions: October 22, 2018, March 3, 2019, October 24, 2019, and as recently as February 20, 2020.  Ex. 10 at 3:22-4:23; Ex. 17 at 60:4-15; Ex. 14 at 5:17-5-6:5; Ex. 19 at 11:21-12:5.

**ICE's Commentary on this Case**

Mr. Lyons' media campaign includes the instant case.  On April 25, 2019, he went on the Howie Carr radio show and said the following:

MR. LYONS:· Hi, Howie.· … We were really excited that we have **such a good local leader like the US Attorney Andy Lelling,** that, you know, had the courage to bring this case forward.· You know, we're excited to the fact that, you know, our hard work is actually seeing the fact that we're actual law enforcement officers and that when someone impedes what we do, they should be held accountable. You know, and it's a sad day, too, that we have, you know, judicial officials and, you know, sworn officers that have to be brought in front of the court and held accountable, you know, when they go against the oath that they took.· But overall, this is – I mean, it's a **great day for us, for ERO, for HSI because, you know, this validates that our law enforcement mission is real here, here in Boston**. Ex. 20 at 2:3-3:9."[29]

**United States Attorney for the District of Massachusetts.**

The current United States Attorney for the District of Massachusetts has followed the lead of ICE and publicly criticized the presiding justice of the Newton District Court where the matter under indictment occurred. Specifically, on February 10, 2020, during the pendency of this case, he published an Op Ed piece in the Boston Herald attacking sanctuary cities and Judge Heffernan.[30] The writing is highly critical of sanctuary cities, claiming that "cities and towns that

---

[29] It can be inferred that Mr. Lyons is engaged in this media campaign with the authority and approval of ICE National.  He called into the media and announced "on the air" that he was "**down here at our headquarters**" Ex. 14 at 3:22- 4:3.  and "**here in DC for some meetings this week.**" Ex. 14 at 7:19-8:7. Therefore, he certainly had authority when he commented on the present case  His unwarranted extrajudicial statement, like any of Mr. Lyons' statements which could be construed as having a material impact upon this case, are the responsibility of the United States Attorney's Office for Massachusetts.  *See* Mass R. Prof. Conduct Rule 3.6.

[30] *See* Ex. 4. Andrew Lelling, *U.S. Attorney Andrew Lelling: Sanctuary Cities  are a 'genuine and persistent threat'* (February 10, 2020, 8:38 PM) https://www.bostonherald.com/2020/02/10/u-s-attorney-andrew-lelling-sanctuary-cities-are-a-genuine-and-persistent-threat/.

pride themselves on *resisting federal laws* passed by Congress and designed to ensure our safety – have become a persistent threat to our communities and the rule of law."

The piece also directly attacked Judge Heffernan: "In 2017, a man previously deported for drug and gun crimes – but now illegally back in the United States – raped a Boston College student while working as an Uber driver. *Despite knowing his immigration status*, **a judge** in **Newton** gave him bail and local authorities released him. No one notified ICE. He fled the country …" (emphasis added). This judge, as noted above, had already been attacked by ICE on multiple occasions. She also had been previously lambasted by a Herald columnist, Howie Carr, who conducted many of Mr. Lyons' media interviews.[31]

The public criticism of Judge Heffernan by government officials is itself surprising. Considering she is a key witness in this case, the attacks are downright shocking. Indeed, Judge Heffernan's role in this case is central to the defense theory because, among other things:

- Before April 2, 2018 (the date of the alleged incident giving rise to the Indictment) the presiding justice had issued an order that ICE officers should be requested to leave the courtroom for court proceedings – at least those proceedings involving the target immigrant.

- On April 2, 2018, Judge Joseph, as a "visiting judge" in the Newton courthouse, simply followed that policy when she directed that ICE officers be asked to leave the courtroom during proceedings for the target immigrant identified in the Indictment A.S. – and remain outside.

- The government has alleged in the Indictment that such request was a part of Judge Joseph's participation in the conspiracy to facilitate A.S.'s escape out the back door – yet the Indictment makes no mention of the presiding justice's policy.

The United States Attorney has himself provided some portions of the context for his attack on sanctuary cities and Judge Heffernan. He has:

---

[31] Carr: Bail-fail judge has baleful history, (May 1, 2017) https://www.bostonherald.com/2017/05/01/carr-bail-fail-judge-has-baleful-history/

- Acknowledged owing his position as United States Attorney to the current president (just as the United States Attorney General) and needing to pay attention to the "president's priorities."[32]
- Appeared with hardline-immigration Attorney General Sessions in a Boston visit focused on immigration issues.[33]

- Criticized at least one member of the federal judiciary generally saying, "Some of our judges are motivated by their personal conclusions that it's not fair in certain instances to deport someone." Judges' comments, he said, stem from two factors: their intense dislike of Trump's immigration policies and ICE's procedural missteps as it works fast to carry out the administration's orders to ramp up enforcement." [34]

- Noted that he values using prosecutions and sentences to "send a message."[35]

Moreover, after the indictment of Judge Joseph, the United States Attorney accelerated his publicity efforts and moved from quotations for use in print media to actual guest appearances on electronic and visual media: the Jim Braude Show (WGBH) (May 5, 2019), Nightside with Dan Rea (June 17, 2019), On-The-Record (WCVB – Channel 5 Boston) (October 6, 2019); Adrianna Cohen (March 10, 2020); Nightside with Dan Rea (March 11, 2020) – seemingly tilting toward friendly outlets – the same strategy utilized by Acting Boston ICE Field Director Lyons. *See* Ex. 21; Ex. 22; Ex. 23.

- During the US Attorney's appearance on the Jim Braude Show on May 5, 2019, nearly two weeks after the indictment press conference, the supposed justifications for prosecution were repeated (rule of law).[36]  The US Attorney also commented that he

---

[32] Commonwealth Magazine, "US Attorney Carries Trumps Message on Immigrants." Jack Sullivan, *US Attorney Carries Trumps Message on Immigrants*, COMMONWEALTH MAGAZINE (Jul. 26, 2018), https://commonwealthmagazine.org/back-story/us-attorney-carries-trumps-message-on-immigrants/

[33] Commonwealth Magazine, "Lelling: Trump's Point Man in Massachusetts." Bruce Mohl, *Lelling: Trump's Point Man in Massachusetts,* COMMONWEALTH MAGAZINE (Jul. 27, 2018), https://commonwealthmagazine.org/politics/lelling-trumps-point-man-in-massachusetts-2/

[34] Ellen Barry, *When the Judge Became the Defendant*, N.Y. TIMES (Nov. 16, 2019), https://www.nytimes.com/2019/11/16/us/shelley-joseph-immigration-judge.html.

[35] Ex. 22. Transcript of Andrew Lelling Interview on Nightside with Dan Rea (June 17, 2019) audio available at https://podcasts.google.com/?feed=aHR0cHM6Ly93d3cuc3ByZWFrZXIuY29tL3Nob3cvMjc1MzA4MS9lcGlzb2Rlcy9mZWVk&episode=aHR0cHM6Ly9hcGkuc3ByZWFrZXIuY29tL2VwaXNvZGUvMjM3NzcxMzM&hl=en&ved=2ahUKEwj1juy404vpAhUVHc0KHWfVDa4QjrkEegQIBRAE&ep=6

[36] The United States Attorney for Massachusetts publicly and repeated offered the "rule of law" justification for this indictment – somehow suggesting that it was not political.  As noted by another former United States Attorney, "The rule-of-law mantra may mask a judgment call, a value-based decision, or some other policy decision, Preet Bharara, *Doing Justice: A Prosecutor's Thoughts on Crime, Punishment and the Rule of Law*, BLOOMSBURY PUBLISHING (2019).  Regardless, such comment is not "lawfully" within the areas permitted under L.R. 83.2.1(d).

knew of no state court referral of Judge Joseph to the state court's Committee on Judicial Conduct. Both statements arguably ran afoul of Mass R. Prof. Conduct Rule 3.6 and Rule 3.8; L.R. 83.2.1(c). 28 C.F.R. § 50.2(b)(2).[37]

- On June 17, 2019, the US Attorney was a "guest" on of Dan Rea's Nightline show. Mr. Rea, an opponent of sanctuary cities, delightedly noted that no United States Attorney had appeared on his show before. Mr. Lelling voiced his own opposition to sanctuary cities. He then stated that he was not told what to do on the Judge Joseph matter.[38] Mass R. Prof. Conduct Rule 3.6 and Rule 3.8; L.R. 83.2.1(c). 28 C.F.R. § 50.2(b)(2). After his comments, the United States Attorney for the District of Massachusetts *took radio calls from listeners and fielded questions*.

- On October 6, 2019, the US Attorney was a "guest" on WCVB (Channel 5 Boston)'s program "On the Record." After discussing Judge Joseph's indictment, the current US Attorney  shared how the Joseph matter came to his attention.[39] That conduct ran afoul of Mass R. Prof. Conduct Rule 3.6 and Rule 3.8; L.R. 83.2.1(c). 28 C.F.R. § 50.2(b)(2).*The United States Attorney for the Attorney played **Trivia** with his television program hosts immediately after his comments about two other pending cases and then the Joseph matter.*

## ARGUMENT

**Legal Framework**

Judge Joseph is entitled to present and advance her theory of defense in all phases of this case. *See Taylor v. Illinois*, 484 U.S. 400, 409 (1988), quoting *United States v. Nixon*, 418 U.S. 683, 709 (1974); *Chambers v. Mississippi*, 410 U.S. 284, 302-303 (1973); *Washington v. Texas*, 388 U.S. 14, 19 (1967).[40]  The defendant may cross-examine and offer extrinsic evidence of bias,

---

[37] 28 C.F.R. § 50.2(b)(2) provides in part that "Disclosures should include only incontrovertible, factual matter, ad should not include subjective observations."

[38] Ex. 22. Transcript of Andrew Lelling Interview on Nightside with Dan Rea (June 17, 2019) audio available at https://podcasts.google.com/?feed=aHR0cHM6Ly93d3cuc3ByZWFrZXIuY29tL3Nob3cvMjc1MzA4MS9lcGlzb2R lcy9mZWVk&episode=aHR0cHM6Ly9hcGkuc3ByZWFrZXIuY29tL2VwaXNvZGUvMjM3NzcxMzM&hl=en&ve d=2ahUKEwj1juy404vpAhUVHc0KHWfVDa4QjrkEegQIBRAE&ep=6

[39] Ex. 23. Transcript of OTR:Andrew Lelling believes Varsity Blues scandal is Widespread at 9 (Oct. 6, 2019), audio available at https://www.wcvb.com/article/on-the-record-andrew-lelling-believes-varsity-blues-scandal-is-widespread/29378929

[40] "Bias is a term used in the "common law of evidence" to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party. Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest. Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." *See United States. v. Abel*, 469 U.S. 45, 52(1984) The forms of bias are "infinite." Federal Practice and Procedure (Wright & Miller), Federal Rules of Evidence, 27 Fed. Prac. & Proc. Evid., Sec. 6095 (2d ed.) at n.12.

particularly as it bears on her theory of defense. *See Davis v. Alaska*, 415 U.S. 308, 316, (1974).

Bias or motive to lie may be *the* crucial component in the jury's assessment of credibility

including the "[cross-examination and] exposure of a witness' motivation in testifying." *See*

*Delaware v. Van Arsdall*, 475 U.S. 673, 677-78 (1986); *United States v. Lynn*, 856 F.2d 430, 432

n. 3 (1st Cir. 1988) (bias is always relevant to discredit a witness); *See generally United States v.*

*Sanabria*, 645 F. 3d 505 (1st Cir. 2011) (defendant improperly denied opportunity to impeach a

witness, explore potential witness intimidation, and explore bias).

Especially broad latitude is afforded the questioning of *an alleged accomplice* now acting

as a government witness, particularly in relation to the alleged co-conspirator's importance to the

prosecution's case, degree of involvement by the alleged co-conspirator in the crime, and

pecuniary or penal interest. *United States v. Barrett*, 766 F.2d 609**,** 614 (1st Cir. 1985); *United*

*States v. Boylon*, 898 F.2d 230, 255 (1990). *United States v. Tracey*, 675 F.2d 433, 437-38 (1st

Cir. 1982); [41]  *United States v. Brooke*, 4 F.3d 1480, 1489, n.11 (1993) (information suggesting

sole responsibility for a crime brings out a concrete reason for fabricated testimony… and

impeaches a witness' testimony far more directly than does simple presentation of the witness's

plea bargain benefits).

Bias may be tied to both individuals and organizations. *See United States. v. Abel*, 469

U.S. 45, 52 (1984) (cross-examination of a defense witness and extrinsic evidence[42] permitted as

to his gang membership, a tenet of which was to lie to protect fellow gang members). *See also,*

---

[41] *"It is the essence of a fair trial that reasonable latitude be given the cross-examiner, **even though he is unable to state to the court what fact a reasonable cross-examination might develop**"* – including the coercive effect of his interactions with "officers of the United States. *Alford v. United States* 282, U.S. 687, 692 (1931).

[42] The "common law of evidence" allowed the showing of bias by extrinsic evidence, while [otherwise] requiring the cross-examiner to "take the answer of the witness" with respect to less favored forms of impeachment. *See* generally McCormick on Evidence, *supra*, § 40, at 89; Hale, Bias as Affecting Credibility, 1 Hastings L.J. 1 (1949). *United States v. Abel*, 469 U.S 45, 52 (1984)

*DiBenedetto v. Hall*, 272 F.3d 1, 8-9 (1st Cir 2001) (cross-examination regarding third party bias – the Cosa Nostra – proper. *Accord Blackmon v. Booker*, 696 F.3d 536 (6th Cir. 2012) (the fact, *source,* and *strength* of that bias all admissible); *See also United States v. Sommerstedt*, 752 F.2d 1494, 1499 (9th Cir. 1985) *opinion amended* C.A.9th, 1985, 760 F.2d 999 (9th Cir. 1985), *cert. denied*, 474 U.S. 851 (fact that defendant and defense witnesses were associated with an individual and shared that person's antitax beliefs admissible to prove bias). The Department of Justice's Justice Manual recognizes *Abel* applies not just to the government's case against the defense, but also to the defense's case against the government.[43]

**Defense Theory**

Based on the above, the defense theory is that political motivation and bias led the government to indict Judge Joseph on not only flimsy—but patently false—evidence.  Although the government claims this prosecution is not political, it has kicked the door open for that theory and for trial evidence on that issue.

- The Defense Attorney can be cross-examined as to his thoughts and believes as to what he thought the government wanted to hear – and extrinsic evidence offered no matter what his answer;

- The extraordinary deal the government bestowed upon the Defense Attorney can be attacked as politically-based and extrinsic evidence offered;

- The Silent Witness (the immunity agreement's "truth provision") can be attacked as politically-based with no real enforceability – and extrinsic evidence offered.

---

[43]Required impeachment disclosures include "information that may be used to suggest that the agency employee is biased for or against a defendant.  *See* Justice Manual, 9-5.100(c)(vi) (citing *United States v. Abel*, 469 U.S 45, 52 (1984)).  While the Justice Manual's focuses only on individual members of the government, by analogy, employment law, well-developed by the Supreme Court, illustrates the full and proper development of the *Abel* concept for application here.  Organizations can act and can be held liable for their actions before a trier of fact through long-standing organizational tenets or through actions promulgated or undertaken by individuals *with sufficient organizational authority.  See Atlantic Stages*, 78 NLRB 553 (1948)

- The two ICE agents can be cross-examined under *Abel* regarding Mr. Lyons' statements to show that the whole Boston Field Office is biased because of *Lunn* and sanctuary cities and "bleeding heart" judges – and extrinsic evidence offered;

- Judge Heffernan can be questioned as to how she felt about being bullied by both the US Attorney and the Acting ICE Boston Field Director – and what she understood the source to be – and whether that did or did not impact her actions in the case – and extrinsic evidence offered.[44]

If the government continues to claim the prosecution and these related attacks were not related to this case, nor political, it need only look to the press as the eyes of the public to see how a juror might view it. *See* Boston Globe ("Joseph is not the first judge in Newton to show leniency toward a defendant on an immigration issue. Last year, the court's presiding judge, Mary Beth Heffernan freed a previously deported immigrant …)[45] and the Boston Herald headline the day after Judge Joseph's indictment: "Feds Send Message to Sanctuary Cities".[46]

### Standard for Production

Within this framework, Judge Joseph is entitled to evidence of bias in the government's possession.  Each of the inferences asserted as elements of the defense theory are supported by factual statements or other documents.  The government need not agree with the defense assertions or the defense theory – it would be stunning if it did.  But production is not contingent on agreement.  If the government possesses information supporting the defendant's assertions, the information must be produced.

The foundation for the request is not remote,  speculative, or collateral.   *See Davis* at 318 (to support the "defense theory" defense counsel is entitled to make a record that a "crucial"

---

[45] Andrea Estes and Maria Cramer ICE agent was in courthouse. *Did judge and others help man flee?* Boston Globe (Dec. 1, 2018, 7:24 PM) https://www.bostonglobe.com/metro/2018/12/01/newton-judge-role-reportedly-examined-after-immigrant-evades-ice/Mshdn3gIlPZhVA7mZ9fa3M/story.html

[46]*See* Ex. 24. Chris Evans, *Feds Send Message: Feds Charge judge and court office*, Boston Herald (Apr. 26, 2019)

prosecution witness "might" have acted to shift suspicion from himself or "might" have been subject to "undue pressure from the police.")  *See United States v. Sanabria*, 645 F.3d 505, 515 (1st Cir. 2011); (rejecting government suggestions that allegations of law enforcement intimidation were part of a "speculation-fueled fishing expedition); *United States v. Delgado-Marrero*, 744 F.3d 167, 181(1st Cir. 2014) (barring testimony regarding personal relationships of police officer relevant rather than "collateral").

For discovery, the government has an obligation to search for exculpatory evidence.  L.R. 116.2  Evidence of bias is exculpatory. Therefore, the government has an obligation to search for and produce the material sought above – regardless of any defense motion. *See United States v. Jensen*, 2011 WL 1302908 (April 5, 2011 D. Alaska).

### TIMING OF PRODUCTION

L.R. 116.2(a) provides that "Exculpatory information is information that is material and favorable to the accused and includes, *but is not necessarily limited to*, information that tends to "cast doubt on the defendant's guilt as to any essential element in any count in the indictment or "on the credibility or accuracy of any evidence that the government anticipates using in its case-in-chief." At this time, the nature and quantity of information supporting an inference of bias, politically-based bias in particular, is such as to "cast doubt on the credibility or accuracy" of the government witness (the Defense Attorney) to such a degree that any further information to be provided by the government rises to the level of "exculpatory" and the defendant asks that the Court treat it as such and thus disclosable pursuant L.R. 116.2(b)(1) rather than as bias (L.R. 116(b)(2).  The Defense Attorney is the *architect* of the plan, the *key* witness to the supposed to an unrecorded 52 second courtroom conversation supposedly supporting his version of the plan,

and possesses *substantial motive* to fabricate.  *See United States v. Brooke*, 4 F.3d 1480, 1489 n

11 (1993).[47]

<div style="margin-left:40%">

Respectfully submitted,

SHELLEY M. RICHMOND JOSEPH
/s/ Thomas M. Hoopes
THOMAS M. HOOPES, ESQ.
BBO No. 239340
/s/ Douglas S. Brooks
DOUGLAS S. BROOKS, ESQ.
BBO No. 636697
LibbyHoopes, P.C.
399 Boylston Street
Boston, MA 02116
617.338.9300
Email:thoopes@libbyhoopes.com

/s/ Elizabeth N. Mulvey
ELIZABETH N. MULVEY, ESQ.
Crowe & Mulvey
77 Franklin Street, 3rd Floor
Boston, MA 02110
617.426.4488
emulvey@croweandmulvey.com

</div>

Dated: May 7, 2020

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-participants on May 7, 2020.

<div style="margin-left:40%">

/s/ Thomas M. Hoopes
Thomas M. Hoopes, Esq.

</div>

---

[47] Of course, politically-based bias may give rise to a claim of selective prosecution and a motion to dismiss.  Such a motion may be ripe after the government makes its disclosures. (*See United States v. Torquato*, 602 F.2d 564, 568, (3rd Cir. 1979) (arbitrary prosecutions based upon "personal or political bias" violate due process).