UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | Crim. No. 19-10141-LTS |
| SHELLEY M. RICHMOND JOSEPH, ) | |
| ) | |
| Defendant. ) | |

**UNITED STATES' OPPOSITION TO DEFENDANT JOSEPH'S
THREE MOTIONS TO COMPEL DISCOVERY (Doc. Nos. 127, 128, 130)**

The United States respectfully opposes the following three discovery motions filed by defendant Shelley Joseph: (a) "First Supplemental Motion to Compel Evidence of Bias" (Doc. No. 130); (b) "Second Supplementary Motion to Compel Evidence Regarding Bias Arising Out Impermissible Leaks and Request for Independent Investigation of Leaks If No Investigation Has Yet Been Done" (Doc. No. 127); and (c) "Third Supplementary Motion to Compel Brady Information Regarding Statements or Non-Statements by Two ICE Officers Concerning Material Events at the Newton District Court on April 2, 2018" (Doc. No. 128). The Court should deny the motions, which are based on unfounded factual allegations and meritless legal arguments. Joseph seeks discovery above and beyond what she is entitled to under the Constitution, the Federal Rules of Criminal Procedure, and the Local Rules.

**ARGUMENT**

1. **The Court Should Deny Joseph's "First Supplemental Motion to Compel Evidence of Bias" (Doc. No. 130)**

In her first motion, Joseph asks the Court to compel the government to produce "discovery in the form of exculpatory evidence demonstrating politically motivated governmental bias that has infected this prosecution." First Mot. (Doc. No. 130). She alleges that United States Attorney Andrew Lelling, former Attorney General Jeff Sessions, Acting ICE

Director Thomas Homan, Acting ICE-Boston Director Todd Lyons, and the President are all politically biased against her, and that, while Mr. Lelling made the decision to prosecute her, the others must have played a role in that decision. To support her conspiracy theory, Joseph seeks an order compelling the government to search for and produce communications between the following persons and governmental entities:

> (1) communications between the current president and the Department of Justice, the Department of Homeland Security (in Washington D.C. and Boston); (2) communications between the Department of Justice to and from the United States Attorney Office for Massachusetts, the Department of Homeland Security, ICE National and ICE Boston; (3) communications between the Department of Homeland Security to and from ICE National, ICE Boston, and the United States Attorney's Office for the District of Massachusetts; (4) communications from ICE National to and from ICE Boston and the United States Attorney's Office for the District of Massachusetts; (5) communications from ICE Boston to the United States Attorney's Office for the District of Massachusetts; and (6) communications *within* each of the named entities, that is, within the Department of Justice, the Department of Homeland Security (National and Boston), ICE National and Boston, and the United States Attorney's Office for the District of Massachusetts.

Memo. in Support of First Mot. (Doc. No. 131) at 7 (footnote omitted).

Joseph has not identified the specific topic of the requested communications. She appears to request communications concerning all of the following: national immigration policy; tension between the federal government and certain states over the enforcement of national immigration policy; ICE enforcement generally; sanctuary cities; Department of Justice grant awards to state and local governments that are conditioned on cooperation with ICE; *Ryan v. ICE*, 382 F. Supp. 3d 142 (D. Mass. 2019); *Lunn v. Commonwealth*, 78 N.E.3d 1143 (Mass. 2017); and this case. Joseph also has failed to identify the time period for her request. She appears to seek communications dating from President Trump's inauguration through the present.

The information Joseph seeks is not discoverable. To the extent she is seeking communications about this case, Rule 16(a)(2) specifically provides that "reports, memoranda, or

other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case" are not discoverable. To the extent she is seeking communications not about this case, they are irrelevant and not exculpatory. And, regardless of their subject matter, the communications Joseph seeks are protected by the deliberative-process privilege, which covers "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (internal quotation marks omitted). The deliberative process privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." *Id*. at 8-9 (internal quotation marks omitted).

Joseph argues that the requested communications are exculpatory because they "support[] an inference of bias, politically-based bias in particular." Memo. in Support of First Mot. (Doc. No. 131) at 22. Discoverable bias information, however, is evidence of bias against the defendant by a witness the government plans to call at trial. *See* L.R. 116.2(b)(2)(D).[1] None of the officials

---

[1] Contrary to Joseph's position, discoverable bias information does not include government criticism of a potential government trial witness. *See* Memo. in Support of First Mot. (Doc. No. 131) at 3, 6, 14-16 (discussing comments by Mr. Lyons and Mr. Lelling criticizing a 2017 decision by a potential government witness, Judge Mary Beth Heffernan, not to notify ICE when she released an undocumented immigrant accused of rape, who then fled the country).

Joseph also complains about Mr. Lelling's public statements concerning sanctuary cities (although she attacks only his criticism of sanctuary cities that refuse to enforce federal immigration laws, not his criticism of sanctuary jurisdictions that refuse to enforce federal gun laws) and this case. *See id.* at 6, 8 n.8, 10 n.21, 15-18 & nn.30-39. Mr. Lelling's anti-crime statements were no more unusual than any of his other statements criticizing criminal behavior, from healthcare fraud to narcotics distribution. His statements did not reflect a bias against any

3

Joseph accuses of being politically biased against her is a potential trial witness. If the government is or becomes aware of any information reflecting bias or prejudice against Joseph by any witness it plans to call in its case-in-chief, the government will produce it 21 days before trial, as Local Rule 116.2 requires.

As Joseph acknowledges, Mr. Lelling has consistently and candidly stated that no one directed him to prosecute Joseph. *See* Memo. in Support of First Mot. (Doc. No. 131) at 18 & n.38. Joseph's allegation to the contrary is based on pure speculation. Moreover, it is a legally insufficient basis for discovery. Arguing that one's prosecution is politically motivated is a common tactic employed by defendants on both sides of the political divide, including activists (*e.g.*, Dinesh D'Souza, Julian Assange), politicians (*e.g.*, Chris Collins, Chuck Turner), presidential advisors (*e.g.*, Scooter Libby, Greg Craig), and friends of presidents (*e.g.*, Roger Stone, Webster Hubbell). It is also a common rallying cry of indicted judges (*e.g.*, Harry Claiborne, Joan Orie Melvin). It is not a basis for discovery.

Joseph argues: "[T]he defense theory is that political motivation and bias led the government to indict Judge Joseph on not only flimsy – but patently false – evidence." *Id*. at 20. The first part of her defense theory, political motivation/bias, appears to be a claim of either selective prosecution or vindictive prosecution.[2] In either case, Joseph faces a high hurdle:

> In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion. Within the limits set by the legislature's constitutionally

---

particular criminal defendant, including Joseph. Indeed, the fact that Mr. Lelling offered Joseph a deferred prosecution agreement belies her claim that he is biased against her.

[2] "A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Armstrong*, 517 U.S. 456, 463 (1996). "Vindictive prosecution occurs when the actions of the judge or prosecutor somehow punish a defendant for exercising constitutional or statutory rights during the prosecution." *United States v. Bassford*, 812 F.2d 16, 20 (1st Cir. 1987).

> valid definition of chargeable offenses, the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation so long as the selection was not deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.

*Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (footnote and internal quotation marks omitted). "The concept of separation of powers underlies the courts' concern that the prosecutorial function be relatively untrammeled. . . . These separation of powers concerns are reinforced by the presumption that a prosecution for violation of a criminal law is undertaken in good faith and in nondiscriminatory fashion for the purpose of fulfilling a duty to bring violators to justice." *United States v. Torquato*, 602 F.2d 564, 569 (3d Cir. 1979) (internal quotation marks omitted), *cited in* Joseph's Brief (Doc. No. 131) at 23 n.47.

The standard of proof for a selective-prosecution claim is "demanding." *United States v. Armstrong*, 517 U.S. 456, 468 (1996). A defendant is not entitled to discovery in support of such a claim unless she presents "some evidence" of both the allegedly discriminatory effect of the prosecution and the government's allegedly discriminatory intent. *United States v. Lewis*, 517 F.3d 20, 25 (1st Cir. 2008) (affirming district court's denial of defendant's discovery request in support of selective-prosecution claim). "Some evidence" means a "credible showing" that (a) the government chose to prosecute the defendant at least in part because of some constitutionally protected characteristic, and (b) the government has not prosecuted similarly situated persons lacking that characteristic. *Id.*; *Armstrong*, 517 U.S. at 470.

The standard of proof for a vindictive-prosecution claim is similarly demanding. "It is difficult to [prove vindictive prosecution] pretrial . . . in light of the broad discretion afforded the prosecutor to determine who should be prosecuted and for what crime, and the presumption that the prosecutor has exercised that discretion in good faith." *United States v. Bucci*, 582 F.3d 108, 112 (1st Cir. 2009) (citing *United States v. Goodwin*, 457 U.S. 368, 382 (1982)). A defendant is

not entitled to discovery in support of a vindictive-prosecution claim unless she presents "some objective evidence tending to show the existence of prosecutorial vindictiveness." *Id.* at 113 (internal quotation marks omitted). Identifying a potential motive for prosecutorial animus is not sufficient. *See id.* (affirming district court's denial of defendant's discovery request in support of vindictive-prosecution claim).

Joseph has not identified the constitutionally protected characteristic or activity that supposedly is the reason for her prosecution, much less pointed to any evidence in support of a claim for either selective or vindictive prosecution.

The second part of Joseph's defense theory is a claim that the Defense Attorney must be lying because he testified before the grand jury pursuant to an immunity agreement. Joseph insinuates that a grant of use immunity is improper or even sinister. It is not. Publicly available manuals for federal prosecutors explain when use immunity may be appropriate and spell out the approval process. *See* https://www.justice.gov/jm/jm-9-23000-witness-immunity; https://www.justice.gov/archives/jm/criminal-resource-manual-701-799. Use immunity can be obtained by court order ("formal immunity"), *see* 18 U.S.C. §§ 6001-6005, or, as here, it can be conferred in an informal immunity agreement, *see* https://www.justice.gov/archives/jm/criminal-resource-manual-719-informal-immunity-distinguished-formal-immunity. The First Circuit has repeatedly held that informal immunity agreements are enforceable. *See, e.g.*, *United States v. Melvin*, 730 F.3d 29, 37 (1st Cir. 2013). Moreover, when immunity is granted in a conspiracy case, the immunized witness is almost always an unindicted co-conspirator, as is the case here. *See, e.g.*, *United States v. Morosco*, 822 F.3d 1, 5 (1st Cir. 2016); *In re Vazquez-Botet*, 464 F.3d 54, 56 (1st Cir. 2006); *United States v. Dwyer*, 843 F.2d 60, 63 (1st Cir. 1988); *United States v. Medina*, 761 F.2d 12, 17 n.5 (1st Cir. 1985); *United States v. Peters*, 732 F.2d 1004, 1006 (1st Cir. 1984); *United States v. Tashjian*, 660 F.2d 829, 831 n.5 (1st Cir. 1981).

Joseph's characterization of an immunity agreement as "virtually unheard-of" is perplexing. First Mot. (Doc. No. 130) at 1. Immunity agreements are not at all uncommon in federal criminal prosecutions. For example, six immunized witnesses testified at the recent healthcare fraud trial against Insys executives, *United States v. John Kapoor, et al*., Crim. No. 16-10343-ADB, and two immunized witnesses testified at the recent "Boston Calling" trial, *United States v. Kenneth Brissette and Timothy Sullivan*, Crim. No. 16-10137-LTS. Joseph's lead attorney is well aware of the immunity agreements in the Boston Calling trial because he represented one of the main victims, who testified on the same day as one of the immunized witnesses.

Finally, Joseph's allegation that the Defense Attorney is lying cannot go unaddressed. *See* Memo. in Support of First Mot. (Doc. No. 131) at 4. It appears the purpose of including that accusation was to unfairly smear a government witness in a public court filing. Joseph's counsel is aware that Local Rule 83.2.1(c)(4) prohibits attorneys from making extrajudicial public statements about the credibility of a prospective trial witness. Joseph's counsel ought not be litigating a witness's credibility in public, hoping for media coverage that will poison the jury pool. Whether the Defense Attorney is lying is for the jury to decide.

For these reasons, the Court should deny Joseph's first discovery motion.

2. **The Court Should Deny Joseph's "Second Supplementary Motion to Compel Evidence Regarding Bias Arising Out Impermissible Leaks and Request for Independent Investigation of Leaks If No Investigation Has Yet Been Done" (Doc. No. 127)**

Joseph's motion relates to two *Boston Globe* news stories. The first came out on December 1, 2018.[3] It recounted the events of April 2, 2018, at Newton District Court, with the

---

[3] Andres Estes and Maria Cramer, "ICE agent was in courthouse. Did judge and others help man flee?," BOSTON GLOBE (Dec. 1, 2018), *available at* https://www.bostonglobe.com/metro/2018/12/01/newton-judge-role-reportedly-examined-after-

7

online version including a link to the audio-recorded portion of the sidebar discussion. The story included the following statement: "The actions of the judge and court personnel that afternoon are the focus of a probe into whether they broke the law in helping [A.S.] evade federal authorities, according to five people with direct knowledge. Several court employees have recently testified before the grand jury, one of the sources said." The story did not provide any identifying information about the five people who spoke with the *Globe*. The article did not say whether the sources were, for example, witnesses who already had testified before the grand jury, subpoenaed witnesses who had not yet testified, persons affiliated with the employers of any of those witnesses,[4] attorneys for any of those witnesses,[5] or friends or family members in whom those witnesses, employers, or attorneys had confided. Rule 6(e) did not prohibit any of those individuals from disclosing the existence of the grand jury investigation.[6]

---

immigrant-evades-ice/Mshdn3gIlPZhVA7mZ9fa3M/story.html.

[4] It is public knowledge that defendant Wesley MacGregor, an employee of the Massachusetts Trial Court, testified before the grand jury – where, according to the indictment, he perjured himself. In addition, Joseph has publicly disclosed that at least one other employee of the Massachusetts Trial Court, a Newton District Court Officer, testified before the grand jury. *See* Doc. No. 128 at 1.

[5] Joseph baldly asserts: "To the defendant's knowledge, there certainly were not five separate lawyers for witnesses at that time." Joseph has no idea how many witnesses had testified at the time the *Globe* story was published or how many witness attorneys were involved.

[6] Rule 6(e) prohibits the following persons from disclosing "a matter occurring before the grand jury": "(i) a grand juror; (ii) an interpreter; (iii) a court reporter; (iv) an operator of a recording device; (v) a person who transcribes recorded testimony; (vi) an attorney for the government; or (vii) a person to whom disclosure is made under Rule 6(e)(3)(A)(ii)," which is defined as "any government personnel – including those of a state, state subdivision, Indian tribe, or foreign government – that an attorney for the government considers necessary to assist in performing that attorney's duty to enforce federal criminal law." Prosecutors are not permitted to direct grand jury witnesses not to disclose grand jury information. *See In re Grand Jury Proceedings*, 814 F.2d 61, 70 (1st Cir. 1987).

Joseph was indicted on April 25, 2019. That same day, after she pled not guilty at her arraignment, her lawyer told reporters outside the courthouse that Joseph's prosecution was "absolutely political" and she was "absolutely innocent."[7] A month later, on May 23, 2019, the *Globe* reported that Joseph had rejected a deferred prosecution agreement because it would have required her to admit that she had acted illegally and she says she is not guilty.[8] The story focused on Joseph's assertion of innocence. *See* Memo. in Support of Second Mot. (Doc. No. 129) at 1.[9] The article stated in relevant part:

> Suspended Newton Judge Shelley Richmond Joseph turned down a deal that would have allowed her to avoid prosecution – and possibly preserve her career – if she admitted that she illegally helped an undocumented immigrant elude arrest by an Immigration and Customs Enforcement agent, according to several people briefed on the federal prosecutor's offer.
>
> US Attorney Andrew Lelling had offered Joseph a "deferred prosecution agreement" under which she would not have been indicted and, in a year, as long as she didn't repeat the conduct, prosecutors would abandon the obstruction of justice charges, according to the people familiar with the deal.
>
> But Joseph refused to admit she violated federal law and now faces the possibility of up to 20 years in prison if convicted of obstruction of justice. "Our client has pleaded not guilty because she is not guilty," said Joseph's lawyer, Thomas Hoopes.

---

[7] Maria Cramer, Andrea Estes, and Matt Stout, "Mass judge faces federal charges over defendant's evasion of ICE," BOSTON GLOBE (Apr. 25, 2019), *available at* https://www.bostonglobe.com/metro/2019/04/25/federal-prosecutors-charge-mass-judge-with-obstructing-justice/XuNadgoVjMjlRkc9cjPH0L/story.html.

[8] Andrea Estes, Shelley Murphy, and Maria Cramer, "Suspended Newton judge declined plea deal that would have meant no criminal charges," BOSTON GLOBE (May 23, 2019), *available at* https://www.bostonglobe.com/metro/2019/05/23/suspended-newton-judge-declined-plea-deal-that-would-have-meant-criminal-charges/5m6v0odAszNCTFxD0SC9WP/story.html?event=event12.

[9] Joseph contends that a comment to Massachusetts Rule of Professional Conduct 3.6 prohibits prosecutors (and defense counsel) from publicly disclosing that a defendant has refused to admit criminal liability. *See* Memo. in Support of Second Mot. (Doc. No. 129) at 4-5. It does not. The rule permits attorneys to disclose "information contained in a public record." Rule 3.6(b)(2). That includes a defendant's plea of not guilty, *i.e.*, her refusal to admit criminal liability.

9

\*   \*   \*

> Retired Supreme Judicial Court Justice Geraldine Hines, who has been critical of the indictment, said she understood why Joseph would turn down such a deal. "The fact that she denied it makes sense to me if her position is that the indictment is not true," Hines said. "Just like any other defendant who would say, 'Well yeah, that's nice of you to want to offer me a plea but I'm not guilty.' " . . .

The article provided no further identifying information about the "several people" who spoke with the *Globe*.

Undersigned counsel did not disclose information pertaining to the grand jury investigation or the plea negotiations to the *Globe*, and did not direct any other party to disclose such information to the *Globe*. Further, undersigned counsel are unaware of any other member of the U.S. Attorney's Office disclosing such information, or directing another party to disclose such information, to the *Globe*.

Joseph has moved to compel the government to produce information about "the source and circumstances" of both disclosures to the *Globe*. Second Mot. (Doc. No. 127), ¶ 3. The Court should deny the motion. First, Joseph claims to need the requested information to support her claim of political bias, *see id.* ¶¶ 3-4, but, as explained above, that claim is factually unfounded and legally irrelevant. Second, Joseph has offered no evidence that anyone responsible for the first disclosure was covered by Rule 6(e), and the second disclosure did not even implicate Rule 6(e). And finally, Joseph's defense is not prejudiced by either disclosure. The *Globe's* decision to publicize Joseph's being the target of a federal grand jury investigation was undoubtedly distressing to her at the time. But the issue became moot once she was indicted. And the second story favorably depicted Joseph as someone who, when offered a generous plea deal, turned it down because she maintains her innocence. Furthermore, the fact that Joseph was extended a plea offer necessarily would have become public because Local Rule 116.5(b)(9) required the parties' joint interim status report to include a statement on "the status of any plea

10

discussions." *See* Doc. No. 45 (Joint Interim Status Report filed July 23, 2019, stating that Joseph had rejected a plea offer).[10] The details of that offer necessarily would have come out before trial in a *Frye* hearing, that is, a public hearing in which the district court ensures that defense counsel has fully and accurately conveyed the details of any formal plea offer extended to the defendant. *See, e.g., United States v. Albarran*, 943 F.3d 106, 113 n.5 (2d Cir. 2019) (citing *Missouri v. Frye*, 566 U.S. 134, 145 (2012)). If anything, the earlier disclosure of the deferred prosecution agreement will likely have lessened the press scrutiny of the offer than if it had been disclosed on the eve of trial.[11]

Joseph also has asked the Court to order an investigation into the disclosure about plea negotiations. Second Mot. (Doc. No. 127) ¶ 3. (She has not requested an investigation into the grand jury disclosure.) The Court should deny Joseph's request for the reasons stated above: she is hoping the investigation will unearth information supporting a defense theory that is legally irrelevant; Rule 6(e) is not implicated; and the story did not prejudice Joseph.

The case cited in Joseph's brief does not help her. *United States v. Kearney*, 436 F. Supp. 1108 (S.D.N.Y. 1977), *cited in* Memo. in Support of Second Mot. (Doc. No. 129) at 6-7. Kearney, a former FBI supervisor, had overseen agents who had illegally opened mail and

---

[10] Joseph's claim of "serious ethical concerns and prejudice to Judge Joseph involving a leak regarding a possible plea agreement" is baseless. Prosecutors and defense counsel routinely state in open court whether plea discussions are ongoing.

[11] Although Joseph complains that press coverage of her plea offer is prejudicial, it was her attorneys' decision to increase its publicity. There was no press coverage of the plea offer after the May 2019 *Globe* article, even when it was mentioned in the parties' joint status reports filed in July and October 2019 (Doc. Nos. 45, 91). Then last month, the day after Joseph's counsel emailed a discovery request and the prosecutors agreed to produce the requested documents, the defense, instead of conferring in a non-public setting, filed an inflammatory letter accusing the Defense Attorney of lying and the U.S. Attorney of being biased, and highlighting the plea discussion disclosure. That letter garnered its intended response: several articles in local and national media.

tapped telephones in their search for Weather Underground fugitives. After Kearney's indictment, the *New York Times* published an article stating that Kearney had given grand jury testimony indicating that "he knew the techniques his agents were employing were illegal." The story attributed the leak to an unidentified Justice Department official and quoted him/her as saying, "In criminal law intent is a key factor, and Kearney admitted that he knew what was going on was wrong." *Id.* at 1118. Kearney filed a motion to compel discovery to identify the leaker. The court denied the motion because it exceeded the scope of Rule 16. *Id.* It added:

> Moreover, it would appear that the appropriate remedy for improper disclosure of grand jury evidence is contempt and not dismissal of the indictment. This is so, particularly here, where the information allegedly "leaked" could not have affected the grand jury proceeding and any resulting prejudice defendant might suffer can be cured in the jury selection process through voir dire.

*Id.* at 1118-19 (citations omitted).

The *Kearney* court denied the defendant's motion to compel even though the disclosure was serious: it identified a grand jury witness, disclosed the substance of grand jury testimony, and reported a defendant's incriminating admission. None of that occurred here. In addition, the *Kearney* court denied the motion even though it had evidence that the disclosure was made by someone covered by Rule 6(e). That is not the case here. In short, the facts were much more compelling in *Kearney* and still the court denied the defendant's motion. The Court should do the same here.

Because it had evidence that the leaker was a government official, and because the disclosure was so serious, the *Kearney* court ordered the government to conduct an internal investigation to confirm whether the leaker was indeed employed by the Justice Department, and, if so, to ascertain that person's identity and report back to the court. *See id.* at 1119 (stating that "the *Times* article raises a matter of serious import and lays an allegation of grave impropriety at the government's doorstep"). The same is not true here. Furthermore, Joseph has

12

not even requested an investigation into the disclosure that she speculates violated Rule 6(e). She has requested an investigation only into the plea offer disclosure. *See* Second Mot. (Doc. No. 127), ¶ 3. There is even less reason to order an investigation into a disclosure of information not covered by grand jury secrecy rules.

For these reasons, the Court should deny Joseph's second discovery motion.

3. **The Court Should Deny Joseph's "Third Supplementary Motion to Compel Brady Information Regarding Statements or Non-Statements by Two ICE Officers Concerning Material Events at the Newton District Court on April 2, 2018" (Doc. No. 128)**

Joseph's final motion seeks copies of all statements made by the two ICE officers who went to Newton District Court on April 2, 2018, to take custody of A.S.

Joseph alleges that, according to a court officer who testified in the grand jury,[12] the Chief Court Officer offered the first-arriving ICE officer the opportunity to access the lockup through the sally port at the back of the courthouse, but the ICE officer declined when he was told that A.S. would be released through the courtroom. Joseph contends that this alleged offer is exculpatory *Brady* information because it undercuts the government's allegation that she acted with corrupt intent. From there, Joseph argues that any statement by either ICE officer that is either consistent or inconsistent with the Chief Court Officer's alleged offer is *Brady* material and therefore discoverable. Third Mot. (Doc. No. 128) at 1-2.[13] The Court should deny Joseph's

---

[12] Apparently Joseph's attorneys obtained the grand jury transcript from MacGregor's counsel. As part of automatic discovery, the government produced to MacGregor all grand jury transcripts in which witnesses testified to statements made by MacGregor exculpating himself, and it produced to Joseph all grand jury transcripts in which witnesses testified to statements made by Joseph exculpating herself.

[13] Joseph also argues, either in addition or in the alternative (the motion is unclear), that any inconsistent statement would be "*Giglio* bias material." Third Mot. (Doc. No. 128) at 3. *Giglio* material, of course, is not yet discoverable.

13

motion because the premise of her argument, that the Chief Court Officer's alleged offer is exculpatory, is incorrect.

Joseph plans to argue at trial that she did not intend to prohibit the ICE officer from taking custody of A.S. She will argue that, in ordering the ICE officer out of the courtroom, she intended only to prevent him from accessing the lockup (where she would later send A.S.) via the courtroom. The ICE officer was free, she says, to access the lockup through either of the two other entrances: the outside door at the sally port or the interior door leading to Probation. *Id.* at 2-3.

This narrative, while interesting, does not make the Chief Court Officer's alleged offer exculpatory. Even assuming he made the offer, *Joseph overruled it*: She ordered that the ICE officer be prevented from entering the lockup. Ind. ¶ 31. After Joseph ordered the ICE officer out of the courtroom, she knew that he was waiting in the front lobby. *Id.* ¶¶ 19, 24. The Defense Attorney told her, "ICE is going to pick him up if he walks out the front door." Joseph responded with concern that "ICE is gonna get him." *Id.* ¶ 20. To try to prevent A.S. from walking out the front door into the arms of the ICE officer, Joseph proposed either holding over A.S.'s case until the following day, or detaining A.S. even though the ADA was not seeking detention. *Id.* ¶¶ 17, 20. But the Defense Attorney explained that neither of those alternatives would keep A.S. out of ICE custody. Joseph then agreed with the Defense Attorney to engage in a ruse to enable A.S. to go downstairs to the lockup instead of releasing him through the front lobby. *Id.* ¶¶ 27, 32. When the Clerk reminded Joseph that there was an ICE officer in the courthouse "to visit the lockup," Joseph again rejected that idea, saying, "*I'm not gonna allow them to come in here.*" *Id.* ¶ 22 (emphasis added).

If true, these allegations prove that Joseph acted with corrupt intent whether or not the Chief Court Officer offered to let the ICE officer enter the lockup from the sally port before

Joseph overruled any such offer. Accordingly, any evidence that the Chief Court Officer either made or did not make the alleged offer, including the requested statements by the ICE officers, is not exculpatory. Therefore, Joseph's motion should be denied.

## CONCLUSION

For these reasons, the government respectfully requests that the Court deny Joseph's three motions to compel discovery.

Respectfully submitted,

ANDREW E. LELLING
UNITED STATES ATTORNEY

By:  */s/ Christine Wichers*
     Dustin Chao
     Christine Wichers
     Assistant U.S. Attorneys

## Certificate of Service

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on May 21, 2020.

*/s/ Christine Wichers*
Christine Wichers