UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No. 19-10141-LTS |
| | ) | |
| SHELLEY M. RICHMOND JOSEPH | ) | Leave to file granted on May 27, 2020 |
| | ) | |
| Defendant. | ) | |

**JUDGE JOSEPH'S REPLY TO GOVERNMENT'S OPPOSITION TO HER THREE
SUPPLEMENTAL MOTIONS TO COMPEL *BRADY* DISCOVERY
(ECF Nos. 127 and 130)**

**1.     THE COURT SHOULD ALLOW JUDGE JOSEPH'S FIRST SUPPLEMENTAL
MOTION TO COMPEL EVIDENCE OF BIAS (ECF No. 130)**

Contrary to government claims, Judge Joseph has laid out precisely *why* the search is
necessary, *how* the search should be conducted, *what* or *whom* to search, *where* to search, and
*what* to search for. *See* ECF No. 130 (letter request) at pages 1, 5-8 and again at ECF No. 131
(supporting memorandum) at page 7. The request for information supporting a claim of political
bias is specifically directed toward the topic areas of: (1) political bias as an impetus for this
prosecution overall, (2) political bias as a motivating force toward the government's decision to
charge Judge Joseph while completely immunizing the individual (the Defense Attorney) who
orchestrated his client's evasion of ICE, and (3) political bias toward sanctuary cities and their
leaders as a factor affecting every aspect of this prosecution.

The "search" question is very simple: Does the government, including but not limited to
the prosecution team, hold information from which, individually or in combination, any
reasonable juror might conclude government political bias influenced a relevant aspect of this
prosecution in a manner so as to affect the credibility of evidence offered or at issue?  The trial
areas in which that question will arise include but are not limited to: (1) the testimony of the

Defense Attorney; (2) the assessment of the Immunity Agreement and the Silent Witness (the clause in the Defense Attorney's Immunity Agreement insisting on "truthful" testimony); (3) the testimony of the Newton Presiding Justice concerning her ICE policies and her "investigation" after April 2, 2018; and (4) the testimony of the ICE agents present at the Newton District Court, who had to report to their superiors their failure to take custody of their target after an entire day's vigil.  If the government's answer is "yes" to any of the above, then that information must be produced.

The only remaining question is the *when*, or the time period to be used in the search for discoverable information. As to Judge Joseph, it necessarily begins on April 2, 2018 (the date of this offense), after ICE Acting Director Homan had announced on national television that the president supported him in calling for the indictment of officials from sanctuary cities and the day he sought to have charges brought on this matter according to his quote in the NY Times. The defense therefore seeks information about (1) Mr. Homan's attempts to influence the charging decisions; (2) the genesis of US Attorney Lelling's dramatic about-face with respect to the indictment of Judge Joseph; and (3) the genesis of the criticisms of Judge Heffernan, a material witness whom the government seems to view as guilty (although never charged) of the same type of offense alleged in this indictment.

The government's argument that any such information is protected from disclosure by the work product protection and deliberative process privilege is legally infirm. As Justice Breyer noted in his concurring opinion in *United States v. Armstrong*, 517 U.S. 456, 475 (1996): "Because *Brady* is based on the Constitution, it overrides court-made rules of procedure.  Thus the work-product immunity for discovery in Rule 16(a)(2) prohibits discovery under Rule 16 but it does not alter the prosecutor's duty to disclose material that is within *Brady*." Many courts and

commentators have since held and assumed that constitutional obligations override court-created or court-recognized rules and privileges.[1]

## 2.   THE COURT SHOULD ALLOW JUDGE JOSEPH'S THIRD SUPPLEMENTARY MOTION TO COMPEL *BRADY* INFORMATION REGARDING STATEMENTS OR NON-STATEMENTS BY TWO ICE OFFICERS (ECF No. 128)

The government must prove beyond a reasonable doubt several elements concerning the offenses charged.  **First**, among these elements it must prove that A.S.'s "escape" was objectively "likely" the natural and probable consequence of Joseph's actions.  *See United States v. Aguilar*, 515 U.S. 593, 599 (1995) ( "…the endeavor must have the " 'natural and probable effect' " of interfering with the due administration of justice). **Second**, the government must prove Judge Joseph subjectively *knew* of such nexus.  Or as stated by the court in *Aguilar*: "… as in *Pettibone, if the defendant lacks knowledge that [her] actions are likely to affect the judicial proceeding*" [she] lacks the requisite intent to obstruct" (emphasis added). *Id*.  That is, by inference, Judge Joseph must be shown to have known that her actions were *likely* to result in the "escape."

The basis for the instant request arises from a witness statement not provided the defense in automatic discovery.  In that statement, a Newton District Court officer said that just as A.S. was being led downstairs to the lockup area, one of the *two* ICE agents at court that day was

---

[1] *See e.g., U.S. v. Pacific Gas & Elec. Co*., 14-cr-00175-TEH, 2016 WL 3350326 at *6 n.12 (N.D. Cal. Jun. 16, 2016) (noting deliberative process and work product privileges "must yield if the underlying documents contain *Brady* material"); *Pennsylvania v. Ritchie*, 480 U.S. 39, 58 (1987) (directing lower courts to review whether information sought meets the *Brady* standard, and if so, must be produce notwithstanding privilege); *Mincey v. Head*, 206 F.3d 1106, 1133 n.63 (11th Cir. 2000) ("other courts and commentators have assumed that *Brady* requires disclosure," collecting authority); Wayne R. LaFave, 6 *Criminal Procedure*, § 24.3(b) (4th ed. 2019). In the alternative, many courts have limited the deliberative process in time and in scope by waiver.  See *Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 884 (1st Cir.1995); *See In re Keeper of Records (Grand Jury Subp. Addressed to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003) (disclosures involving third parties).

offered the opportunity *to go into the courthouse lockup through the rear sallyport* to take custody of A.S. but declined the offer.

This inquiry necessarily then focuses on the questions raised by *Aguilar*: **First**, given the now-known offer to ICE to enter the lockup from the rear courthouse sallyport, was it objectively "likely" that ICE would instead remain outside the courtroom front door while A.S went downstairs, rather than accept the offer; would not have a vehicle waiting at the sallyport just like all other state prisoner transports; or would have one ICE officer would wait outside the courtroom front door yet the other ICE officer (who is so far unaccounted for in the materials provided to the defense) would fail to either enter the lockup from the sallyport or simply wait outside the very sallyport door from which A.S. was released?   **Second,** these same questions (at least) must be asked concerning the subjective element. The defense theory is that the answers to all these questions are, of course, "not likely at all!"

The court officer's statement was clearly "material and favorable to the accused" (L.R. 116.(2)(a)) and "tend[ed] directly to negate the defendant's guilt concerning any count in the indictment …" It should have been produced. Local Rule 116.2(b)(A); *See also* F.R.Cr.P. 16(a)(1)(E) whose "materiality" standard is broader than the *Brady* standard. *See United States v. O'Brien*, No. 12-cr-40026, 2013 WL 1057929, at *9 (D. Mass. Mar. 13, 2013).

It follows that the statements made by the two ICE officers (who were present on April 2, 2018) to either the grand jury or to their immediate superiors and the statements between their immediate superiors and between the ICE National superiors containing the statements of the original two ICE officers, are also "material."  The statements will either undercut the government's claims of proof by confirming the offer to take the ICE agents to the rear sallyport, or if the ICE officers failed to disclose this offer to their superiors, it will provide additional

evidence of bias. Nothing could be more material, exculpatory and critical to Judge Joseph's defense then these ICE officers' statements in all their potential forms.

Respectfully submitted,

SHELLEY M. RICHMOND JOSEPH

/s/ Thomas M. Hoopes
THOMAS M. HOOPES, ESQ.
BBO No. 239340
/s/ Douglas S. Brooks
DOUGLAS S. BROOKS, ESQ.
BBO No. 636697
LibbyHoopes, P.C.
399 Boylston Street
Boston, MA 02116
617.338.9300
Email: thoopes@libbyhoopes.com

/s/ Elizabeth N. Mulvey
ELIZABETH N. MULVEY, ESQ.
BBO No. 542091
Crowe & Mulvey
77 Franklin Street, 3rd Floor
Boston, MA 02110
617.426.4488
May 27, 2020                          emulvey@croweandmulvey.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-participants on May 27, 2020.

/s/ Thomas M. Hoopes
Thomas M. Hoopes